# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

-----------------------------------------------------------------------X

ERICA ALMECIGA,

        Plaintiff,

   -  against -

CENTER FOR INVESTIGATIVE REPORTING, INC.,
UNIVISION COMMUNICATIONS, INC.,
UNIVISION NOTICIAS,
BRUCE LIVESEY, JOSIAH HOOPER,

        Defendants.

-----------------------------------------------------------------------X

**SUMMONS**

Index No. _____

IAS Part: \_\_\_\_\_

Justice: _____

Plaintiff Designates
New York County as
Place of Trial

      YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with the summons, to serve a notice of appearance on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service. If this summons is not personally served upon you, or if this summons is served upon you outside of the State of New York, then your answer or notice of appearance must be served within thirty (30) days. In case of your failure to appear or answer, judgment will be taken against you by default, for the relief demanded in the complaint.

      The basis of venue is where the Defendant Univision has an office, which is located at 605 Third Avenue, New York, NY 10158.

               Respectfully submitted,

               _____

               Kevin A. Landau
               The Landau Group, PC
               Attorneys for Plaintiff
               1221 Ave. of the Americas, 42nd Floor
               New York, NY 10020
               Phone: 212.537.4025
               Email: kevin@thelandaugroup.com

Dated: April 22, 2015

## SERVICE LIST

Center for Investigative Reporting, Inc. ("CIR"): 1400 65th Street #200 Emeryville, CA 94608; and Sacramento Office 925 L St., Suite 150 Sacramento, CA 95814

Registered Agent and Office for Service of Process: Christa Scharfenberg, 2130 Center Street, Suite 103, Berkeley, California 94704

Univision Communications, Inc.: 605 Third Avenue, New York, NY 10158

Registered Agent/DOS Process: C/o CT Corporation Systems 111 Eighth Avenue, New York New York 10011

Bruce Livesey (Producer with CIR): 232 Heath Street, West, Apt. 307, Toronto, Ontario, Canada, M5P 1N8

Josiah Hooper (Producer with CIR)

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY
----------------------------------------------------------------------X
ERICA ALMECIGA,

                  Plaintiff,

    **-**   against -

CENTER FOR INVESTIGATIVE REPORTING, INC.,
UNIVISION COMMUNICATIONS, INC.,
UNIVISION NOTICIAS,
BRUCE LIVESEY, JOSIAH HOOPER,

                  Defendants.
----------------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

Index No. _____

IAS Part: _____

Justice: _____

Plaintiff Designates
New York County as
Place of Trial

      Plaintiff, ERICA ALMECIGA ("Plaintiff" or "Ms. Almeciga") by her attorneys,

Kevin A. Landau, The Landau Group, PC, complains and alleges, upon information and

belief, as follows:

<u>**JURISDICTION AND PARTIES**</u>

    1.   This court has jurisdiction over this action because the amount in dispute exceeds

$500,000.00 and because Defendant Univision Communications, Inc. has offices located

at 605 Third Avenue, New York, New York 10158.

    2.   Defendant Center for Investigative Reporting ("CIR"), Inc., is a non-profit

(501(c)(3)) California corporation that transacts business within the County of New York,

State of New York. Defendant CIR conducts ongoing investigative reporting projects in

areas such as the environment, criminal justice, money and politics and government

oversight. CIR's report is then produced into multiple media formats and is published and

broadcast on CIR's website (e.g. I-Files), in newspapers, magazines, books, on radio,

television and other news websites, such as Univision Noticias' You Tube Channel.

1

3.   Defendant Univision Communications, Inc., is an international multi-media Corporation, and conducts business in the County of New York, State of New York, with offices located at: 605 Third Avenue, New York, New York 10158. Univision Noticias is an American Spanish language broadcast television network, and owned by Univision Communications.  The report and interview of Ms. Almeciga was published on Univision Noticias' You Tube Channel at: https://www.youtube.com/watch?v=kgxUK71_yH8. The network's programming is aimed at Hispanic Americans in the United States; its programming includes telenovelas and other drama series, sports, sitcoms, reality and variety series, news programming, and imported Spanish-language feature films. It has the largest audience of Spanish-language television viewers in the United States.

4.   On or about August 14, 2012, Defendant CIR and Defendant Univision entered into a partnership to produce investigative stories for Spanish speaking viewers in the United States and Latin America. In partnering with Defendant Univision, Defendant CIR agreed to provide Univision with access to CIR stories and documentaries focusing on Latin America for all broadcast platforms. Univision News' investigative and documentary unit, Documentales Univision, focuses on subjects of interest to the Hispanic community including immigration, health, education, criminal justice and politics. The collaboration between the two organizations was on all aspects of programming, from selection of story topics to production and editing. Robert J. Rosenthal, Executive Director of CIR, stated as follows in regards to CIR's partnership with Univision:

"The partnership with Univision ties in with our strategy of reaching an ever growing and diverse audience. Univision's brand and huge audience across the U.S. and around the world makes this collarboration a no brainer for CIR and a natural fit for both

Organizations." See http://www.current.org/2012/08/center-for-investigative-reporting-univision-announce-partnership/.

5.   Defendant Bruce Livesey, ("Livesey") is an individual, who conducts business in the County of New York, State of New York.  Defendant Livesey was a Producer for CIR on the story entitled "I Was A Hitman For Miguel Trevino," (hereafter, "Report"), which featured Rosolio Reta ("Reta"), who the Report identified as being the "Hitman".

6.   Defendant Josiah Hooper ("Hooper"), is an individual, who conducts business in the County of New York, State of New York.  Defendant Hooper was a Producer for CIR on the story entitled "I Was A Hitman For Miguel Trevino," (hereafter, "Report") .

## STATEMENT OF FACTS

7.   Beginning in that latter part of 2008, Plaintiff and Reta developed a strong friendship existing primarily through written correspondence.

8.   Reta was a resident of the Woodville Penitentiary, located in Woodville, Texas.  It was an unlikely romance that evolved, until eventually, Reta developed strong affections for Ms. Almeciga, which permeated various aspects of her life, including, communications with reporters interested in conducting interviews of the former Los Zetas Drug Cartel enforcer. [1] Consequently Ms. Almeciga acted as Reta's power of attorney and fielded the requests he received for interviews.

---

[1] It cannot be understated how dangerous and violent the Los Zetas drug cartel is, and the danger, Ms. Almeciga has been placed in as a result of Defendants' reckless and fraudulent actions in plastering her face in their report denouncing Los Zetas.  For instance, in an August 6, 2009 CNN Article the U.S. government is quoted as saying that Los Zetas is "the most technologically advanced, sophisticated and dangerous cartel operating in Mexico." The article continues and states that Los Zetas with their "fierce weaponry and military expertise" are considered the most formidable enemy in the drug war. The Articles quotes Ralph Reyes, the U.S. Drug Enforcement Agency's Chief for Mexico and Central America as saying: "The Zetas have obviously assumed the role of being the No. 1 organization responsible for the majority of the homicides, the narcotic-

9.   On or about March 2012, Defendant Livesey contacted Plaintiff regarding Reta, specifically as it related to his experiences with Los Zetas drug cartel and its former leader, Miguel Trevino.

10. Over the course of the next several months Defendant Livesey, Reta, and the Plaintiff exchanged correspondence relative to logistics concerning Reta's interview, and media outlets for future broadcast.

11. Essentially simultaneous to communications with Defendant Livesey; Reta conducted an interview with the Canadian Broadcast Channel ("CBC"), which also featured Ms. Almeciga's concealed identity, per the Plaintiff's demand.  Said interview aired on the television network sometime in June or July 2012.

12. The necessity of discretion is properly represented by the CBC and reflected in its principled approached, whereby the CBC reporter plainly states that the network "…can't show her face for her own safety." *Id* at minute 12:48.  See

http://www.cbc.ca/news/world/mexican-drug-cartel-groomed-texas-teen-as-killer-at-13-1.1164119.

13**.** On or about July 2012, Defendant Livesey informed Reta and Ms. Almeciga that Defendant CIR agreed to produce the Report.

---

related homicides, the beheadings, the kidnappings, the extortions that take place in Mexico." Further, the Article notes that the American border makes no difference to Los Zetas: "It doesn't matter if violence is perpetrated on the Mexican or U.S. side of the border." Mr. Reyes further states that, with Los Zetas "mastery of combat", that the organized crime network "operates more like a U.S. infantry company patrolling the streets of Falluja, Iraq, than a street gang." Inside the United States, one of the instruments of assassination Los Zetas unleashed was teenager **Rosalio Reta**. Given six months of military training in Mexico, he was sent across the border to target rival drug gangs. He was 13 years old when he committed his first killing. U.S. officials have said there are many more like him. See:
http://www.cnn.com/2009/WORLD/americas/08/06/mexico.drug.cartels/index.html.

14. As required with the CBC interview, the Plaintiff's involvement with CIR was also conditioned upon the explicit requirement that Ms. Almeciga's identity be concealed.

15. On or about August 14, 2012, Ms. Almeciga travelled to Woodville, Texas to meet Defendant Livesey and his CIR co-producer, Defendant Hooper..

16. The interviews of Reta and Ms. Almeciga, were expressly conditioned upon the Plaintiff's identity being concealed, similar to what CBC had done a few months earlier. Defendants' agreed and the parties proceeded accordingly.

17. Ms. Almeciga believes that Defendants have in their possession in excess of four (4) hours of video footage of her.  To her knowledge, only a few minutes has been broadcast, which has managed to already destroy her life.

18. Neither the Plaintiff nor Reta, received any financial compensation for the interviews.  Ms. Almeciga was supplied with an airline ticket, food and hotel, only.

19. Defendant CIR broadcast the Report on their YouTube channel, named "I-Files", sometime in late 2013.

20.  Defendant Univision broadcast the Report on its Univision Noticias' You Tube Channel sometime in late 2013.

21. Ms. Almeciga did not become aware of the report's existence until on or about December 12, 2013.

22. Ms. Almeciga initially became aware of the report due to a friend's concern who contacted the Plaintiff explaining that she was featured on "I-Files", which at that time had over hundred thousand views.

23. Defendant Univision has made viewing of the interview available to the general public since at least December 2013 through the present.

24. To Ms. Almeciga's utter horror, the interview featured on both I-Files and Univision Noticias' You Tube Channel left her identity completely exposed.

25. There was absolutely zero effort on the part of CIR, Livesey or Hooper to conceal Plaintiff's identity.

26. Similarly, there was absolutely zero effort on the part of Univision to conceal Plaintiff's identity.

27. Los Zeta cartel is among the most brutal in all of Mexico, which logically applied, equates to being among the most violent in the world.  The idea that Univision would agree to air the interview of Ms. Almeciga without concealing her identity, properly verifying her consent, or informing her in any way before airing was unconscionable. [2]

28. Nevertheless, the Defendants' collective decision to reveal her identity was done so for their own economic considerations, without any regard for Plaintiff's safety or well-being.  Such decision has destroyed Ms. Almeciga's life.

29. Defendant I-File has accumulated in excess of 250,000 views of the Report, which continues to grow in viewership.

30. Defendant Univision has accumulated in excess of 3,000,000 views of the Report, which continues to grow in viewership. See:

https://www.youtube.com/watch?v=kgxUK71_yH8.

---

[2] Plaintiff has never been involved with, or a part of, in any capacity whatsoever, Los Zeta cartel. She did not know Reta during his tenure with Los Zeta, nor has she ever been the subject of any criminal investigation in connection with Los Zeta's operations.  Her participation in the Report was in relationship to Reta's reformation while in prison and her observations as to how Reta's life was affected by Los Zeta.

6

31. Since the 2013 display of the Defendants unauthorized broadcast of Plaintiff, Ms. Almeciga has endured public humiliation, demeaning and often threatening remarks from the viewers, as well as the overwhelming fear that Los Zeta cartel, at any moment may take retribution against her.

32. Since 2013, Ms. Almeciga has been forced to move to different locations in an effort to avoid interaction with outsiders.  She has developed paranoia and has been treated for depression and Post Traumatic Stress Disorder ("PTSD"), specifically, symptoms which contributed to extreme anxiety, lack of sleep, constant nightmares, hypersensitivity and so forth.

33. In August 2014, Plaintiff's counsel sent Defendant CIR's attorneys a demand to Cease and Desist continuing to show Ms. Almeciga's interview without her identity being concealed.  Defendant CIR refused. Instead, in August 2014, Defendant CIR provided Plaintiff with a Release, which Defendant CIR represented was purportedly signed by Plaintiff.

34. Ms. Almeciga adamantly denied having ever seen the proffered Release, much less having signed it.  As such, Plaintiff submitted the proffered signature to a handwriting expert, who verified that it was indeed a forgery.

35. By this action, Ms. Almeciga challenges and confronts Defendants outrageous conduct and seeks to secure all legal and equitable remedies and relief to which she may be so entitled.

**<u>CAUSE OF ACTION ONE</u>**

**BREACH OF CONTRACT**
**Against Defendant Center for Investigative Reporting**

36. Plaintiff repeats, repleads and incorporates by reference each and every allegation of paragraphs 1 through 35 of this COMPLAINT as though fully set forth herein.

37. Plaintiff and Defendant CIR entered into a legally binding agreement, whereby Plaintiff agreed to participate in an interview, provided, that, her identity be concealed.

38. Plaintiff did in fact participate in said interview, however, Plaintiff's identity was not concealed by Defendant CIR as they had promised.

39. Plaintiff agreed to participate in the interview on the condition that her identity be concealed (as it had been in the CBC Report months earlier).  Plaintiff bargained with Defendant CIR for this condition, which the parties mutually agreed to and accepted.

40. Plaintiff fully performed her services under this contract.

41. Defendant CIR's failure to conceal Plaintiff's identity in the interview, and subsequent report, was a breach of contract.

42. Plaintiff has suffered damages as a result of Defendant CIR's breach.

WHEREFORE, Plaintiff respectfully requests the following relief:

A.      Actual and compensatory damages in excess of $500,000.00, plus all interest, attorney fees and costs incurred herewith;

B.       Disgorgement of all profits;

C.      That a constructive trust be placed over all film footage and material shot and obtained relative to the Report "I Was A Hitman for Miguel Trevino", and the project "Narco America", for Plaintiff's sole benefit, and that said footage be granted to Plaintiff for her to use in her discretion;

D.      Private 24-hour security for Plaintiff's protection; and

E.       For such other relief that the court deems proper.

8

## CAUSE OF ACTION TWO

### FRAUD

### Against Defendants'
### Center for Investigative Reporting, Bruce Livesey and Josiah Hooper

43. Plaintiff repeats, repleads and incorporates by reference each and every allegation of paragraphs 1 through 42 of this COMPLAINT as though fully set forth herein.

44. Defendants' proffering of the forged document entitled "Release", evidences that the Defendants intent was to benefit economically through either their direct use of the film footage of Plaintiff, or through the sale of such footage to a third party, such as Univision, and/or both.

45. Defendants breached the parties' agreement through fraud and dishonesty.

46. Defendants illegally obtained a signature by someone other than the Plaintiff, and offered said signature as if Ms. Almeciga had signed it herself. This forgery was purportedly then used by Defendant CIR as authorization to use the unconcealed interview of Plaintiff in their Report, and so that Defendant CIR could sell, and/or license, the Report to Univision.  Therefore, Defendant CIR, and subsequently Defendant Univision who conducted absolutely no due diligence regarding the purported Release, both benefitted substantially by using the Release as justification to air the interview of Plaintiff without concealing her identity or protecting her in any way.

47. Defendants' willfully deceived Ms. Almeciga.

48. Defendants willfully deceived Ms. Almeciga with the intent to induce her to alter her position to her injury or risk.

49. Defendants willfully deceived Plaintiff so that Reta would agree to conduct the interview and Ms. Almeciga would in turn appear in the Report as well.  This calculation

9

was done so in an attempt to materially benefit the Defendants, regardless of the risk or injuries to Ms. Almeciga.

50. Defendants assured Plaintiff and Reta, that Ms. Almeciga's identity would be protected, and that her face would be blocked out in their Report. However, Ms. Almeciga's identity was not protected, and her face was not, and is not, blocked out in the Defendants' Report.

51. Defendants willfully deceived Plaintiff by suppressing the fact that Ms. Almeciga's identity would not be protected, and that her face and identity would appear unadulterated in their Report for public consumption.

52. Defendants were legally bound to disclose this fact to Plaintiff.

53. Defendants provided Plaintiff and Reta with intentionally misleading information, such as promises to conceal her identity (as CBC had done), which the Defendants were reasonably certain promoted Ms. Almeciga's reliance and ultimate participation.

54. Defendants promise to Plaintiff that her identity would be protected, and that her face would not appear in their Report, was made without any intention of performance.

55. As such, Defendants made an intentional misrepresentation to Plaintiff.

56. This misrepresentation was made with Defendants' knowledge of its falsity.

57. Defendants made the misrepresentation to Plaintiff with an intent to defraud her, that is, to induce reliance, so both her and Reta would appear in Defendants' Report (Reta's involvement was conditioned upon the Defendants concealing Plaintiff's identity).

58. Plaintiff justifiably relied on the Defendants' representations to her detriment.

59. Plaintiff has suffered damages as a result of the Defendants' fraudulent deceit.

60. By the aforesaid acts and omissions of Defendants, collectively, and each of them individually, Plaintiff has been directly and legally caused to suffer actual and compensatory damages including, but not limited to, loss of earnings and future earning capacity, moving expenses and related fees, medical expenses, attorneys fees, litigation expenses, costs of suit and other pecuniary loss not presently ascertained.

61. As a further direct and legal result of the acts and conduct of the Defendants, collectively, and each of them individually, as aforesaid, Plaintiff has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, discomfort, anxiety, and related symptoms, grossly disrupted sleep, intense fear, suspicion, paranoia, pervasive anxiety at times accompanied by panic attack, depression, Post Traumatic Stress Disorder, decreased appetite, decreased energy, sadness. The exact nature and extent of said injuries is presently unknown to Plaintiff. Ms. Almeciga does not know at this time the exact duration or permanence of said injuries, but is informed and believe, and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

62. Defendants, collectively and each of them individually, by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of the rights, welfare and safety of Ms. Almeciga, thereby justifying the award of punitive and exemplary damages to punish these Defendants and deter others from acting in a similar manner.

WHEREFORE, Plaintiff respectfully requests the following relief:

A.  Actual and compensatory damages in excess of $500,000.00, plus all interest, attorney fees and costs incurred herewith;

B.  Disgorgement of all profits;

C.  That a constructive trust be placed over all film footage and material shot and obtained relative to the Report "I Was A Hitman for Miguel Trevino", and the project "Narco America", for Plaintiff's sole benefit, and that said footage be granted to Plaintiff for her to use in her discretion;

D.  Private 24-hour security for Plaintiff's protection;

E.  Punitive Damages in an amount to be determined at trial; and

F.  For such other relief that the court deems proper.

## CAUSE OF ACTION THREE

### FRAUDULENT CONCEALMENT

**Against Defendants**
**Center for Investigative Reporting, Bruce Livesey and Josiah Hooper**

63. Plaintiff repeats, repleads and incorporates by reference each and every allegation of paragraphs 1 through 62 of this COMPLAINT as though fully set forth herein.

64. Defendants knowingly concealed or suppressed a material fact from Plaintiff with an intent to defraud her.

65. Defendants were under a duty to disclose this fact to Plaintiff based upon their relationship with Ms. Almeciga regarding her appearance in the Report.

66. The information that Defendants' gave to Plaintiff was likely to mislead her for want of communication of that fact.

12

67. Defendants' had exclusive knowledge of material facts regarding publication of the Report, and Ms. Almeciga's appearance in it, that were not otherwise known to Plaintiff until after the broadcast.

68. Plaintiff was unaware of the fact that her identity was not protected, and that her face was not blocked out in the Report, had she been aware that this was the result, she would have never agreed to participate with the interview.

69. Defendants' concealment or suppression of the facts set forth above has caused Ms. Almeciga to sustain damages that are continuing and ongoing.

70. By the aforesaid acts and omissions of Defendants collectively, and each of them individually, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings and future earning capacity, moving expenses and related fees, attorneys fees, costs of suit and other pecuniary loss not presently ascertained.

71. As a further direct and legal result of the acts and conduct of Defendants collectively, and each of them individually, as aforesaid, Plaintiff has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, discomfort, anxiety, and related symptoms, grossly disrupted sleep, intense fear, suspicion, paranoia, pervasive anxiety at times accompanied by panic attack, depression, Post Traumatic Stress Disorder, decreased appetite, decreased energy, sadness. The exact nature and extent of said injuries is presently unknown to Ms. Almeciga.  Plaintiff does not know at this time the exact duration or permanence of said injuries, but is informed and believe, and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

13

72. Defendants collectively, and each of them individually, by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of the rights, welfare and safety of Ms. Almeciga, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests the following relief:

A. Actual and compensatory damages in excess of $500,000.00, plus all interest, attorney fees and costs incurred herewith;

B. Disgorgement of all profits;

C. That a constructive trust be placed over all film footage and material shot and obtained relative to the Report "I Was A Hitman for Miguel Trevino", and the project "Narco America", for Plaintiff's sole benefit, and that said footage be granted to Plaintiff for her to use in her discretion;

D. Private 24-hour security for Plaintiff's protection;

E. Punitive Damages in an amount to be determined at trial; and

F. For such other relief that the court deems proper.

## CAUSE OF ACTION FOUR

### NEGLIGENCE
### Against Defendant Univision

73. Plaintiff repeats, repleads and incorporates by reference each and every allegation of paragraphs 1 through 72 of this COMPLAINT as though fully set forth herein.

74. Defendant Univision owed a duty to Plaintiff.

14

75. Under the circumstances, Univision had a duty to exercise a reasonable (or high) degree of care before airing an interview of Ms. Almeciga denouncing Los Zetas, a ruthless drug cartel.

76. A minimal amount of due diligence would have reflected that the document presented was not notarized, that Plaintiff's name was spelled incorrectly, and that the actual handwriting on the Release was different in sections (as well as in different colors).  Any of the foregoing issues, should have raised suspicion in Univision to confirm Plaintiff's consent.

77. Defendant Univision had a duty to contact Ms. Almeciga and get her actual consent before disclosing her name and/or identity and/or her story, and visually airing the Report, with her condemning a notorious drug cartel and its leader.

78. Defendant Univision has accumulated in excess of 3,000,000 views from airing the Report See: https://www.youtube.com/watch?v=kgxUK71_yH8.

79. Los Zeta cartel is among the most brutal in all of Mexico, which logically applied, equates to being among the most violent in the world.  The idea that Univision would agree to air the interview of Ms. Almeciga without concealing her identity, or properly verifying her consent, or informing her in any way before airing, is a breach of the duty Defendant Univision owed to Plaintiff, and casts doubt as to Univision's ability to effectively monitor the stories it airs, and the people contained within those stories.

80. Defendant Univision failed to take any reasonable measures before airing the Plaintiff's interview, and was negligent in its failure to take reasonable measures to prevent injury to Ms. Almeciga.

81. As such, Defendant Univision's breach was a proximate cause of the injuries and damages Ms. Almeciga has sustained.

82. Plaintiff's injuries were a reasonably foreseeable consequence of Defendant Univision's conduct.

83. Since Defendant Univision aired the interview of Plaintiff, Ms. Almeciga has endured public humiliation, demeaning and often threatening remarks from the viewers, as well as the overwhelming fear that Los Zeta cartel, at any moment may take retribution against her.

84. Further, Ms. Almeciga has been forced to move to different locations.  She has developed paranoia and has been treated for depression, anxiety and Post Traumatic Stress Disorder ("PTSD"), specifically, symptoms which contribute to extreme anxiety, lack of sleep, constant nightmares, panic attacks, hypersensitivity and severe emotional and mental distress.

85. By the aforesaid acts and omissions of Defendant Univision, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings and future earning capacity, moving expenses, medical expenses and treatment, and related fees, attorneys fees, costs of suit and other pecuniary loss not presently ascertained.

86. As a further direct and legal result of the negligence of Defendant Univision, Plaintiff has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, discomfort, anxiety, and related symptoms, grossly disrupted sleep, intense fear, suspicion, paranoia, pervasive anxiety at times accompanied by panic attack, depression, Post Traumatic

Stress Disorder, decreased appetite, decreased energy, sadness. The exact nature and

extent of said injuries is presently unknown to Ms. Almeciga.  Plaintiff does not know at

this time the exact duration or permanence of said injuries, but is informed and believes,

and thereon alleges, that some, if not all of the injuries are reasonably certain to be

permanent in character.

    WHEREFORE, Plaintiff respectfully requests the following relief:

A.     Actual and compensatory damages in excess of $500,000.00, plus all interest,
attorney fees and costs incurred herewith;

B.     Disgorgement of all profits;

C.     That a constructive trust be placed over all film footage and material shot and
obtained relative to the report "I Was A Hitman for Miguel Trevino", and the
project "Narco America", for Plaintiff's sole benefit, and that said footage be
granted to Plaintiff for her to use in her discretion;

D.     Private 24-hour security for Plaintiff's protection;

E.     Punitive Damages in an amount to be determined at trial; and

F.     For such other relief that the court deems proper.

        Respectfully submitted,

        **THE LANDAU GROUP**

By:

        Kevin A. Landau
        Attorneys for Plaintiff
        1221 Ave. of the Americas, 42nd Floor

17

New York, NY 10020
Phone: 212.537.4025
Email: kevin@thelandaugroup.com

Dated: April 22, 2015

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Plaintiff ERICA ALMECIGA hereby demands a trial by jury.

Respectfully submitted,

**THE LANDAU GROUP**

By: _____

Kevin A. Landau
Attorneys for Plaintiff
1221 Ave. of the Americas, 42nd Floor
New York, NY 10020
Phone: 212.537.4025
Email: kevin@thelandaugroup.com

Dated: April 22, 2015

18