UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ERICA ALMECIGA, :
: 15 Civ. 04319 (JSR) (FM)
                 Plaintiff, :
:
     -against- : ECF CASE
:
CENTER FOR INVESTIGATIVE :
REPORTING, INC., UNIVISION :
COMMUNICATIONS, INC., UNIVISION :
NOTICIAS, BRUCE LIVESEY, :
JOSIAH HOOPER, :
:
                 Defendants. :
----------------------------------------------------------------X

**DEFENDANTS UNIVISION COMMUNICATIONS INC. AND UNIVISION NOTICIAS'**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Univision Communications Inc. (sued herein as Univision Communications Inc. and Univision Noticias [1]) ("Univision") files this Memorandum in Support of Their Motion to Dismiss pursuant to N.Y. C.P.L.R. 3211(a)(1), (7) as follows:

### I. INTRODUCTION AND FACTUAL BACKGROUND

Univision moves to dismiss plaintiff's Count IV (the only count against it) which claims negligence and, therefore, the breach of a legal duty. *Pulka v. Edelman*, 40 N.Y.2d 781, 782, 358 N.E.2d 1019, 1020, 390 N.Y.S.2d 393, 394-95 (1976) ("It is well established that before a defendant may be held liable for negligence it must be shown that the defendant owes a duty to the plaintiff . . . .") (citations omitted). The existence of a legal duty is a matter of law for the court. *Eiseman v. State*, 70 N.Y.2d 175, 187, 511 N.E.2d 1128, 1134, 518 N.Y.S.2d 608, 613 (1987) ("[T]he duty owed by one member of society to another is a legal issue for the courts . . . .") (citation omitted).

---

[1] Univision Noticias appears to refer to the news division of the Univision Network (The Univision Network Limited Partnership, which is a subsidiary of Univision Network & Studios, Inc., which is a subsidiary of Univision Communications Inc.). It is not a separate legal entity.

Plaintiff alleges[2] that the other defendants, Center For Investigative Reporting ("CIR") and two of its producers, Livesey and Hooper (collectively "the Other Defendants"), procured an interview with plaintiff by promising to conceal her identity in their broadcast report ("The CIR Report") (Compl.[3] ¶¶ 14,16); that her identity was not concealed in the "few minutes" she was shown on the CIR Report entitled "I Was A Hitman For Miguel Trevino" which "featured Rosolio Reta ("Reta")", plaintiff's husband ( Compl. ¶¶ 5, 17); that her signature on a purported release was forged by the Other Defendants and used by them to "sell and/or license the (CIR) Report to Univision" (Compl. ¶ 46) and that Univision, after translating the CIR Report into Spanish, published it on a Univision channel. (Compl. ¶ 19).

The Complaint admits the CIR Report, at least as to plaintiff, was true ("[It] left her identity completely exposed") (Compl. ¶ 24) and was on a matter of public concern ("Univision focuses on subjects of interest to the Hispanic Community including... criminal justice and politics" (Compl. ¶ 4); and the CIR Report was about the Los Zetas drug cartel which "the U.S. government is quoted as saying (is) the most technologically advanced, sophisticated and dangerous cartel operating in Mexico" (Compl. ¶ 8 n.1). *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 769, 776 (1986) (articles on organized crime a matter of public concern); *Gay v. Williams*, 486 F. Supp. 12, 16 (D. Alaska 1979) ("[Plaintiff's] alleged involvement in smuggling drugs from Mexico through a border town in Arizona clearly relates to a matter of general public interest . . . .").

---

[2] For purposes of this motion only we accept as true plaintiff's version of her well pleaded facts as well as all reasonable inferences that may be gleaned from those facts. *Cron v. Hargro Fabrics, Inc.*, 91 N.Y.2d 362, 366, 694 N.E.2d 56, 58, 670 N.Y.S.2d 973, 975 (1998).

[3] For this Court's convenience, a copy of plaintiff's complaint ("Compl.") is attached as Exhibit A to the Affirmation of Laurie Berke-Weiss in Support of Defendants' Univision Communications Inc. and Univision Noticias' Motion to Dismiss ("Berke-Weiss Aff.")

Plaintiff alleges that Univision had a duty to verify she had given "her actual consent before disclosing her name and/or her identity and/or her story." (Comp. ¶ 77). There is no such duty under New York law and claims to the contrary have been uniformly rejected. Furthermore, the imposition of such a duty would violate the First Amendment to the United States Constitution and Article 1 Section 8 of the New York Constitution.

Finally, even if there were such a duty and it passed constitutional muster, the claim against Univision should be dismissed because her complaint coupled with the clear and unambiguous evidence attached hereto demonstrates plaintiff did not protect her name, identity, or life story before the CIR Report nor did she afterwards. On July 22, 2013, she posted the CIR Report including her interview on Twitter (available to the public) without masking her face or concealing her identity.[4]

## II.   ARGUMENT AND AUTHORITIES

### A.   Univision Owes No Duty to Plaintiff As A Matter of Law.

The Court of Appeals in *Pulka* discussed the concept of "duty" writing that, "In the absence of duty, there is no breach and without a breach there is no liability . . . . This requirement is expressed in the often-quoted remark: 'Negligence in the air, so to speak, will not do' . . . . The question of duty, however, is best expressed as 'whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.'" *Pulka*, 40 N.Y.2d at 782-83.

The Court continued that, "[f]oreseeability should not be confused with duty. . . . Neither should one be answerable merely because there are others whose activities are such as to cause one to envision damages or injuries as a consequence of those activities. In this respect, a moral duty should also be distinguished from a legal duty. The former is defined by the limits of conscience; the latter by the limits of law." *Id.* at 785-86 (citations omitted). Finally, the Court

---

[4] See Ex. B, attached to the Berke-Weiss Aff.

in *Pulka* instructed that the consequences of imposing a new or novel duty must be considered. *See id.* at 786.

Univision was a stranger to the production of the CIR Report. There is no allegation, nor could there be, that Univision solicited or participated in plaintiff's interview, made any promises to her or had any role in the investigation, production, or publication of the CIR Report. Indeed, plaintiff pleads the opposite: "(the CIR producer) Livesey contacted Plaintiff" (Compl. ¶ 9); over the course of several months they "corresponded relative to logistics … and media outlets for future broadcasts" (Compl. ¶ 10); in July 2012, "Livesey informed (Plaintiff) that CIR agreed to produce the Report" (Compl. ¶ 13); Almeciga travelled (to Texas) to meet Livesey and CIR co-producer Hooper" (Compl. ¶ 15); "CIR broadcast the Report on their YouTube channel" (Compl. ¶ 19); and "there was absolutely zero effort on the part of CIR, Livesey or Hooper to conceal Plaintiff's identity" (Compl. ¶ 25). The complaint alleges that when the Other Defendants had completed the CIR Report they presented it to Univision together with a forged release "so that CIR could sell and/or license the Report to Univision." (Compl. ¶ 46) At that point, Univision broadcast the CIR Report in Spanish. (Compl. ¶ 20).

Plaintiff claims that Univision, a subsequent or non-primary publisher, had a "duty to contact Ms. Almeciga and get her actual consent before disclosing her name and/or identity and/or story by visually airing the (CIR) Report." Compl. ¶ 77. A similar situation arose in *Vaill v. Oneida Dispatch Corp.*, 129 Misc. 2d 477, 478, 493 N.Y.S.2d 414 (Sup. Ct., Oneida County 1985) where the plaintiff claimed that the defendant newspaper had negligently failed to verify that a newspaper advertisement, purportedly from the plaintiff, "was authorized by her before publication . . . ." The Court dismissed the case holding that "[o]n the question of duty to verify, . . . [the] publishers' liability . . . , if imposed at all, is commonly imposed within the principles

of the law of defamation, with all the strictures -- constitutional and otherwise -- attendant on that body of law." *Id.* at 479.

There is no defamation asserted here, nor could there be: (i) plaintiff's true identity was revealed; (ii) there is no claim that false facts about her were in the CIR Report; and (iii) the one-year New York defamation statute of limitations ran before this lawsuit was filed. *See* N.Y. C.P.L.R. 215(3).

*Watson v. MTV Network Enter., Inc.*, No. 156523-12, 2013 N.Y. Misc. LEXIS 5099 (Sup. Ct., N.Y. County 2013) is also instructive. In that case the producer of a television program, True Life: I Am A Chubby Chaser, promised that plaintiff's identity and place of abode would be kept private but, instead, were "clearly available for viewing in the episode." *Id.* at *1. The Court dismissed the claim of negligence against the producer for failure to block the identity and address. The claim of negligence against MTV (which is more closely aligned with Univision here) was dismissed because it was not a party to the alleged agreement to mask the identity of the plaintiff. *See id.* at *1-9.

Likewise, in *Virelli v. Goodson-Todman Enterprises, Ltd.*, 142 A.D.2d 479, 536 N.Y.S.2d 571 (3d Dep't 1989), the original or primary publisher and defendant allegedly agreed not to disclose the plaintiffs' identities in exchange for an interview. The appeals court in reversing the trial judge found that "dismissal should have been granted as to plaintiffs' remaining cause of action, expressly grounded in negligence, . . . . Where, as here, recovery is sought against news media defendants for injuries to reputation and for emotional distress arising out of publication on a matter of public concern, ordinary negligence is a constitutionally insufficient basis upon which to impose liability." *Id.* at 485-86.

There is no question that here, as in *Virelli*, Univision is a media defendant, the CIR Report is on a matter of public concern, and plaintiff claims reputational harm ("public humiliation (and) demeaning and often threatening remarks" Compl. ¶ 83), as well as emotional distress. (Compl. ¶ 84). But this case is even stronger than *Virelli* because Univision was not the primary publisher and its duty is said to be only one of verification. If the primary publisher has no duty (as in *Verilli*) it is hard to imagine that the secondary publisher would be liable.

In analogous circumstances, New York courts have summarily denied recovery. *See, e.g., Rubinstein v. New York Post Corp.*, 128 Misc. 2d 1, 3-4, 488 N.Y.S.2d 331, 333 (Sup. Ct., N.Y. County 1985) (No negligence in publishing an obituary without checking with alleged decedent's family when the deceased turned out not to be dead); *Daniel v. Dow Jones & Co.*, 137 Misc. 2d 94, 96, 520 N.Y.S.2d 334, 336 (Civ. Ct., Bronx County 1987) ("[A] news service is not liable to its readers for negligent false statements." (citing *Jaillet v Cashman*, 115 Misc 383 [Sup Ct 1921], *aff'd* 202 App Div 805 [1st Dep't 1922], *aff'd* 235 NY 511 [1923])); *Daniel*, 137 Misc. 2d at 101 ("The First Amendment precludes the imposition of liability for nondefamatory, negligently untruthful news."); *Pressler v. Dow Jones & Co.*, 88 A.D.2d 928, 928-29, 450 N.Y.S.2d 884, 885 (2d Dep't 1982) ("[A] newspaper has no duty to investigate each of the advertisers who purchases space in its publication . . . ."); *Lacoff v. Buena Vista Pub., Inc.*, 183 Misc. 2d 600, 611, 705 N.Y.S.2d 183, 192 (Sup. Ct., N.Y. County 2000) (dismissing plaintiff's claim because publisher of investment news service had no duty to plaintiff and, thus, could not be liable for negligent misstatements in the publication); *see also* 2 R. Sack, Libel, Slander and Related Problems, ¶ 13.8 at 13-65 (4th ed. 2015) ("As a general proposition, disseminators of news and other information have no liability for negligent publication of erroneous information under this theory.").

Courts in other jurisdictions have reached the same conclusion on similar facts. *See, e.g., Does v. KTNV-Channel 13*, 863 F. Supp. 1259, 1265 (D. Nev. 1994) (Police vice officers sued for negligence when they appeared on a TV program after being assured that their anonymity would be preserved. The claim was dismissed because plaintiffs "failed to demonstrate the existence of any legally cognizable duty . . . ."); *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 961 (9th Cir. 2013) (Police informant claimed he had been promised by TV producer that his face would be concealed. The case was dismissed with the court holding that plaintiff "fail[ed] to cite any authorities demonstrating that Defendants had a legal duty not to reveal private facts about him during the broadcast."); *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1225 (10th Cir. 2007) (former undercover police officers sued a TV station for revealing their identities in connection with a news report. The trial court's dismissal was affirmed.); *McNutt v. New Mexico State Tribune Co.*, 1975-NMCA-085, 88 N.M. 162, 169, 538 P.2d 804, 811 (N.M. App. 1975) (Police officers sued over newspaper's publication of their names and home addresses after a gun battle. The trial judge dismissed and was affirmed.).

In deciding whether Univision, the secondary publisher, has a duty the court should, under *Pulka*, "conceive of the bounds to which liability logically would flow." *Pulka*, 40 N.Y.2d at 786. Would a television syndicator have a duty to check every program it offers for syndication? Would a local television station be under a duty to verify every detail of every syndicated program it purchases and then broadcasts? Would a book publisher need to verify that every character in a book has, in plaintiff's words, "consent(ed) before disclosing her name and/or identity and/or her story"? Would this duty extend to fictional books as well as non-fiction? *See* Dan Rosen & Charles L. Babcock, *Of and Concerning Real People and Writers of*

*Fiction,* 7 Com. & Ent. L.J. 221-263 (1985). As one can see "the liability potential would be all but limitless." *Pulka,* 40 N.Y.2d at 786.

**B.     Even If There Is A Duty, Imposing It In This Case Would Be Unconstitutional.**

Univision is a media defendant. The publication at issue here is on a matter of public concern, was truthful, and legally obtained. The First Amendment to the United States Constitution and the broader Article I Section 8 of the New York Constitution allow no room for liability under these circumstances. *Daniel v. Dow Jones & Co.,* 137 Misc. 2d 94, 101, 520 N.Y.S.2d 334, 339 (Civ. Ct., Bronx County 1987) ("The First Amendment guarantees that society will be able to receive news limited, if at all, only by the most carefully imposed, narrowly constructed, finely drawn, restraints . . . .")

Indeed "[s]tate action to punish the publication of truthful information seldom can satisfy constitutional standards." *Smith v. Daily Mail Pub. Co.,* 443 U.S. 97, 102 (1979). Nor can Univision be liable since it obtained the CIR Report lawfully "by purchase or license" Compl. ¶ 46. *See Bartnicki v. Vopper,* 532 U.S. 514, 527-28 (2001) ("[T]his Court has repeatedly held that 'if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need . . . of the highest order.'").

What plaintiff pleads is a novel duty that has no limits and enormous unforeseen and dangerous consequences and would, if allowed, impinge on the publisher's constitutional rights in an unacceptable way.

**C.     Even If There Is A Duty And It Is Constitutional, Plaintiff Has Waived Her Right Or Is Estopped From Asserting It.**

In deciding whether plaintiff has stated a claim, "[a] court may, however, consider evidentiary material submitted by a defendant in support of a CPLR 3211(a)(7) motion to dismiss a complaint or other pleading . . . ." *Hendrickson v. Philbor Motors, Inc.*, 102 A.D.3d 251, 257, 955 N.Y.S.2d 384 (2d Dep't 2012).

Plaintiff made no effort to hide her identity from the Other Defendants prior to broadcast of the CIR Report as her complaint demonstrates ("Ms. Almeciga acted as Reta's power of attorney and fielded requests for interviews" Compl. ¶ 8; "Livesey contacted Plaintiff regarding Reta" Compl. ¶ 9; "Over the course of ...several months Livesey, Reta and Plaintiff exchanged correspondence" Compl. ¶ 10).

Her identity as Reta's friend and then wife was the subject of internet articles and comment prior to broadcast. In fact, in an internet chatroom called PRISONTALK, plaintiff identifies herself as "Eryca," Reta's wife ("Reta's Wifey") and states that her "husband is locked up in Texas and he is a very high profile inmate. His old lawyer said it would be great if we did an interview together so we did and now every1 (sic) is saying horrible things about me online.") The date of this post, which includes her picture, is November 20, 2012, a year before the alleged date ("sometime in late 2013" Compl. ¶ 20) of the Univision Broadcast.[5] In another online chat she writes: "yes I did marry him and I am not hiding my face that's just wjat (sic) the (CBC) producers decided to do."[6] She is thus estopped from proceeding. *See Nassau Trust Co. v. Montrose Concrete Products Corp.*, 56 N.Y.2d 175, 184, 436 N.E.2d 1265 (1982)

---

[5] See Ex. C, attached to the Berke-Weiss Aff.
[6] See Ex. D, attached to the Berke-Weiss Aff. The Canadian Broadcast Channel ("CBC") apparently broadcast an interview with plaintiff where her face was concealed. Compl. ¶¶ 11-12.

Shortly after the broadcast, plaintiff posted the CIR Report on her twitter account.[7] She did not mask her face or hide her identity. *Id.* She thus waived her rights. *See generally City of New York v. State*, 40 N.Y.2d 659, 669, 357 N.E.2d 988 (1976) (defining waiver). Finally, rather than filing as a Jane Doe, plaintiff is prosecuting this suit in her own name. *See Duran v. Detroit News, Inc.*, 504 N.W.2d 715, 720 (Mich. App. 1993) (Colombian judge who was involved in the prosecution of Pablo Escobar and moved to the United States after death threats had no claims against the media that revealed her name and where she lived because "[p]laintiffs' identities in the United States were open to the public eye" when she did not change her name, had a business card that she distributed, and leased, dined, and shopped in her own name).

## IV. CONCLUSION AND PRAYER

Univision had no duty to verify under these circumstances and without a duty there is no liability. Even if there was such a duty the U.S. and New York Constitutions would not allow it to be enforced under these circumstances. And, in any event, plaintiff has not taken sufficient safeguards to protect her identity before the CIR Report and is thus estopped from claiming against Univision now and, by suing in her own name and posting the interview with her after the CIR Report, she has waived any rights she might have had.

---

[7] See Ex. B, attached to the Berke-Weiss Aff.

The Motion to Dismiss should be granted.

Respectfully submitted,

By: *[signature]*
Laurie Berke-Weiss
State Bar No. 1934041
Maria W. Wong
State Bar No. 4701041
Berke-Weiss Law PLLC
7 Times Square
18th Floor
New York, NY 10036
Telephone: (212) 894-6784
Facsimile: (646) 395-1669

By: *[signature]* Charles L. Babcock / LBW
Charles L. Babcock
*Pro hac vice pending*
Nancy Hamilton
*Pro hac vice pending*
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221

*ATTORNEYS FOR DEFENDANTS UNIVISION COMMUNICATIONS INC. AND UNIVISION NOTICIAS*