UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERICA ALMECIGA,

        Plaintiff,

- against -

CENTER FOR INVESTIGATIVE
REPORTING, INC.,  UNIVISION
COMMUNICATIONS, INC.,
UNIVISION NOTICIAS,
BRUCE LIVESEY, JOSIAH HOOPER,

        Defendants.
------------------------------------------------------------X

Case No. 15-CV-04319

Hon. Jed S. Rakoff

Removed from the Supreme Court of
the State of New York, New York County,
Index No. 651354/2015

## PLAINTIFF ERICA ALMECIGA'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNIVISION'S MOTION TO DISMISS

Kevin A. Landau
The Landau Group, PC
1221 Ave. of the Americas, 42nd Floor
New York, New York 10020
212.537.4025

*Attorneys for Plaintiff Erica Almeciga*

# TABLE OF CONTENTS

|   |   | PAGE(S) |
|---|---|---|
| Table of Authorities Cited | | ii |
| I. Introduction And Factual Background | | 1 |
| II. Applicable Standard Of Review | | 3 |
| III. Argument. | | 3 |
| A. | Defendant Univision Owed Plaintiff A Duty As A Matter Of Law. | 3 |
| (I) | Cohen v. Cowles Media Co., 501 U.S. 663 (1991) Is Controlling. | 5 |
| **(ii)** | Defendant Univision's Reliance On Virelli v. Goodson-Todman Enterprises, Ltd., 142 A.D.2d 479 (1989), Is Misplaced. | 9 |
| B. | Imposing A Duty On Defendant Univision In This Case Would Not Be Unconstitutional; And The Instant Case Has Nothing To Do With The First Amendment, Nor Does The First Amendment Provide Any Protection To Defendant Univision. | 10 |
| C. | The Material Set Forth By Defendant Univsion Does Not Qualify As "Documentary" Under CPLR 3211(A)(1); And Plaintiff Has Not Waived Her Rights In Any Way. | 12 |
| IV. Conclusion | | 14 |

# TABLE OF AUTHORITIES CITED

| | PAGE(S) |
|---|---|
| *Anderson v. Strong Memorial Hosp.*, 151 Misc.2d 353 (1991) | 9-10 |
| *Cohen v. Cowles Media Co.*, 501 U.S. 663, 665 (1991) | 4-9, 10 |
| *Doe v. American Broadcasting Cos.*, 152 A.D.2d 482 (1st Dept. 1989) | 9 |
| *Fontanetta v John Doe 1,* 73 A.D.3d 78, 84 (2 Dept 2010) | 3, 12-14 |
| *Greenberg v. CBS Inc.*, 69 A.D.2d 693, 700 (2nd Dept. 1979) | 11, n4 |
| *Hendrickson v Philbor Motors, Inc.*, 102 A.D.3d 251, 258 (2nd Dept. 2012) | 12 |
| *Holman v. City of New York*, 853 N.Y.S.2d 512, 514 (2nd Dept. 2008) | 13-14 |
| *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) | 8 |
| *Lauer v. City of New York*, 95 N.Y.2d 95, 116 (2000) | 12,n5 |
| *Levine v City of New York*, 309 N.Y. 88, 92-93 (1955) | 3 |
| *Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 179 (1982) | 12 |
| *Palsgraf v Long Is. R.R. Co.*, 248 N.Y. 339, 341 (1928) | 4-5 |
| *Virelli v. Goodson-Todman Enterprises, Ltd.*, 142 A.D.2d 479 (1989 | 9 |
| *Waters v. New York City Hous. Auth.,* 69 N.Y.2d 225, 229, (1987) | 3 |
| *511 West 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 152 (2002) | 3 |

**COURT RULES**

| | |
|---|---|
| CPLR 3211(a)(1), (7) | 3, 12-14 |

Plaintiff Erica Almeciga ("Plaintiff" "Almeciga") files this Memorandum of Law in opposition to Defendant Univision Communications, Inc. ("Univision") Motion to Dimiss pursuant to N.Y. C.P.L.R 3211(a), (7), as follows:

## I. INTRODUCTION AND FACTUAL BACKGROUND.

On or about August 14, 2012, Defendant Center for Investigative Reporting, Inc. ("CIR") and Defendant Univision entered into a partnership to produce investigative stories for Spanish speaking viewers in the United States and Latin America. Compl., ¶ 4. One of the stories CIR provided to Univision featured Ms. Almeciga and Rosalio Reta, a former enforcer for the Los Zetas Cartel. Compl., ¶ 8. Ms. Almeciga communicated with reporters who were interested in conducting interviews with Mr. Reta. Compl., ¶ 8. Such requests to interview Mr. Reta included the Canadian Broadcast Company ("CBC"), and Defendant CIR. The story published by the CBC, aired prior to the CIR story, and also featured Plaintiff, with her identity concealed, per the Plaintiff's demand. See Compl., ¶¶11-12. The interviews of Reta and Ms. Almeciga, with CIR, were expressly conditioned upon the Plaintiff's identity being concealed. Compl., ¶ 16.

Defendant CIR broadcast the Report on their YouTube channel, named "I-Files", sometime in late 2013. Compl., ¶ 19. Defendant Univision broadcast the Report on its Univision Noticias' You Tube Channel sometime in late 2013. Compl., ¶ 20. Ms. Almeciga did not become aware of the report's existence until on or about December 12, 2013. Compl., ¶ 21. Defendant Univision has made viewing of the interview available to the general public since at least December 2013 through the present. Compl., ¶ 23. To Ms. Almeciga's utter horror, the interview featured on both CIR and Univision's respective You Tube channels left her identity completely exposed. Compl., ¶ 24.

There was absolutely zero effort on the part of CIR, or Univision, to conceal Plaintiff's identity. Compl., ¶ 25-26.

Defendant Univision has accumulated in excess of 3,000,000 views of the Report, which continues to grow in viewership. Compl., ¶ 30.[1] Since the 2013 display of the Defendants unauthorized broadcast of Plaintiff, Ms. Almeciga has endured public humiliation, demeaning and often threatening remarks from the viewers, as well as the overwhelming fear that Los Zeta cartel, at any moment may take retribution against her. Compl., ¶ 31. Since 2013, Ms. Almeciga has also been forced to move to different locations in an effort to avoid interaction with outsiders. Compl., ¶ 32.

As such, in her Complaint, Plaintiff alleged a cause of action for Negligence against Defendant Univision based upon Defendant Univision owing her a duty: Defendant Univision owed a duty to Plaintiff. Compl., ¶74. Under the circumstances, Univision had a duty to exercise a reasonable degree of care before airing an interview of Ms. Almeciga denouncing Los Zetas, a ruthless drug cartel. Compl., ¶75.

- Los Zeta cartel is among the most brutal in all of Mexico, which logically applied, equates to being among the most violent in the world. The idea that Univision would agree to air the interview of Ms. Almeciga without concealing her identity, or properly verifying her consent, or informing her in any way before airing, is a breach of the duty Defendant Univision owed to Plaintiff, and casts doubt as to Univision's ability to effectively monitor the stories it airs, and the people contained within those stories. Compl., ¶79.

- Defendant Univision failed to take any reasonable measures before airing the Plaintiff's interview, and was negligent in its failure to take reasonable measures to prevent injury to Ms. Almeciga. Compl., ¶80.

---

[1] Neither CIR, nor Univision, have taken the offending story off their You Tube stations; to date, the story has been viewed nearly 4,000,000 times on Defendant Univision's You Tube station.

2

In response to Plaintiff's Complaint, Defendant Univision filed a Motion to Dismiss pursuant to CPLR 3211(a)(1) and (7), contending that Univision did not owe Plaintiff a duty as a matter of law. The question of the existence and scope of a tortfeasor's duty is a legal issue for the court to resolve. *Waters v. New York City Hous. Auth.,* 69 N.Y.2d 225, 229, (1987).

## II. APPLICABLE STANDARD OF REVIEW

In determining whether a complaint is sufficient to withstand a motion to dismiss pursuant to CPLR 3211(a)(7), the sole criterion is whether the pleading states a cause of action. If from the four corners of the complaint factual allegations are discerned which, taken together, manifest any cause of action cognizable at law, a motion to dismiss will fail. *511 West 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 152 (2002).

A motion to dismiss pursuant to CPLR 3211(a)(1) will be granted only if the "documentary evidence resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim." *See Fontanetta v John Doe 1,* 73 A.D.3d 78, 84 (2 Dept 2010).

## III. ARGUMENT.

### A. Defendant Univision Owed Plaintiff A Duty As A Matter Of Law.

"Negligence is not a stereotyped thing, but, as courts have wisely said, it is a matter of time, place and circumstance." *Levine v City of New York*, 309 N.Y. 88, 92-93 (1955).

In the instant case, Defendant Univision published a story featuring Plaintiff denouncing a ruthless and notorious drug cartel, and it's leader, for the entire world to see. Defendant Univision did not protect Plaintiff's identity before publishing this story, did not inform her that they would be publishing this story, did not seek her consent, nor

3

conduct any due diligence before airing the story. Therefore, Defendant Univision's position is that they did not owe a duty to Plaintiff before publishing her story on its YouTube station under the facts and circumstances of the instant case. Defendant Univision's contention is without merit as stated in *Cohen v. Cowles Media Co.*, 501 U.S. 663, 665 (1991).

Defendant Univision cites a litany of cases from all over the country that have nothing to do with the circumstances of the instant case. All of the cases Univision cites center around a news organization publishing negligent or defamatory statements; or 1st Amendment concerns. Defendant Univision also fails to address *Cohen v. Cowles Media Co.*, 501 U.S. 663, 665 (1991), which is the controlling case under the facts and circumstances presented in the instant case.

First, the instant case has nothing to do with a news organization publishing false or defamatory statements about Plaintiff. In fact, the opposite is true. Plaintiff's case centers around Univision publishing a story that places her in an unreasonably dangerous situation because of the truth of the publication, and the retribution that this particular drug cartel is known to enact.[2] Therefore, Defendant Univision negligently created the dangerous circumstance that Plaintiff now finds herself in because Univision failed to receive Plaintiff's consent, failed to protect her identity, and failed to inform her in any way, or conduct even a minimal amount of due diligence, before airing the story of Plaintiff denouncing a ruthless drug cartel, and its leader. Under these circumstances, the law imposes a duty upon Defendant Univision, which they breached.

"The plaintiff sues in her own right for a wrong personal to her, and not as the

---

[2] And of course without receiving Plaintiff's consent, protecting her identity, or informing her in any way before airing the story.

4

vicarious beneficiary of a breach of duty to another." *Palsgraf v Long Is. R.R. Co.*, 248 N.Y. 339, 341 (1928).

What the plaintiff must show is "a wrong" to herself, i. e., a violation of her own right, and not merely a wrong to some one else, nor conduct "wrongful" because unsocial, but not "a wrong" to any one. *Id* at 344.

Plaintiff's safety, and her sense of well being and liberty (not having to constantly look over her shoulder), are her own personal rights – a media company does not have the right to decide when such rights may be violated or even considered - therefore violations of Plaintiff's own personal rights, enable her to sue in her own right because the wrong is personal to her, as was the dangerous situation created by Univision by violating Plaintiff's liberty (and airing the offending story, without protecting her confidentiality or checking with her first).

### (i)    *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991) Is Controlling.

In *Cohen v. Cowles Media Co.*, 501 U.S. 663, 665 (1991), the Respondents advanced a similar argument that Defendant Univision attempts to advance in their instant motion.

In *Cohen*, the question presented before the Court was whether the First Amendment prohibited a plaintiff from recovering damages, under state promissory estoppel law, for a newspaper's breach of a promise of confidentiality given to the plaintiff in exchange for that information. The Court held that it did not. *Cohen, supra* at 665.

The facts in *Cohen* are substantially similar to the facts of the instant case.

In *Cohen*, during the closing days of the 1982 Minnesota gubernatorial race, the plaintiff, Dan Cohen, an active Republican associated with Wheelock Whitney's

5

Independent–Republican gubernatorial campaign, approached reporters from the St. Paul Pioneer Press Dispatch (Pioneer Press) and the Minneapolis Star and Tribune (Star Tribune) and offered to provide documents relating to a candidate in the upcoming election. *Id.* Cohen made clear to the reporters that he would provide the information only if he was given a promise of confidentiality. Reporters from both papers promised to keep Cohen's identity anonymous and Cohen turned over copies of two public court records concerning Marlene Johnson, the Democratic–Farmer–Labor candidate for Lieutenant Governor. *Id.*

After consultation and debate, the editorial staffs of the two newspapers independently decided to publish Cohen's name as part of their stories concerning Johnson. *Id* at 666. In their stories, both papers identified Cohen as the source of the court records, indicated his connection to the Whitney campaign, and included denials by Whitney campaign officials of any role in the matter. The same day the stories appeared, Cohen was fired by his employer. *Id.*

Thereafter, Cohen sued the respondents, the publishers of the Pioneer Press and Star Tribune, in Minnesota state court, alleging fraudulent misrepresentation and breach of contract. The trial court rejected the respondents' argument that the First Amendment barred Cohen's lawsuit, and a jury returned a verdict in Cohen's favor, awarding him $200,000 in compensatory damages and $500,000 in punitive damages.

In *Cohen*, the Court held as follows:

"It is, therefore, beyond dispute that '[t]he publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to invade the rights and liberties of others.'. Accordingly, enforcement of such general laws against the press is not subject to stricter scrutiny than would be applied to enforcement against other persons or organizations." *Cohen, supra* at 670-671 (internal citation omitted).

6

"There can be little doubt that the Minnesota doctrine of promissory estoppel is a law of general applicability. It does not target or single out the press. Rather, insofar as we are advised, the doctrine is generally applicable to the daily transactions of all the citizens of Minnesota. The First Amendment does not forbid its application to the press." *Cohen, supra.*

Here, the truthful information published by Defendant Univision was not lawfully acquired. Further, Defendant Univision had no special immunity from the application of general laws, and had no special privilege to unlawfully invade the rights and liberties of Plaintiff without consequence or liability. Moreover, Negligence is of course a law of general applicability to the transactions of all the citizens of New York, and the First Amendment does not forbid its application to the press.

"Minnesota law simply requires those making promises to keep them. The parties themselves, as in this case, determine the scope of their legal obligations, and any restrictions that may be placed on the publication of truthful information are self-imposed…" *Cohen, supra* at 671.

Here, Defendant Univision did in fact publish Plaintiff's story on its You Tube station without protecting her confidentiality, and without informing her that they would be publishing this story, seeking her consent, or conducting any due diligence before airing the story. Therefore, Defendant Univision self-determined that it had the right to unlawfully invade the rights and liberties of Plaintiff without consequence or liability, and published the offending story that has turned Plaintiff's life upside down, and forced her to live with the constant fear that at any moment a ruthless drug cartel may take retribution against her. Defendant Univision did not have that right, and therefore, Plaintiff may enforce her cause of action for Negligence against Defendant Univision.

The Court in *Cohen*, also noted the following fact (eerily similar to the instant case), where it stated:

"[T]he equally well-established line of decisions holding that generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news. As the cases relied on by respondents recognize, the truthful information sought to be published must have been lawfully acquired. The press may not with impunity break and enter an office or dwelling to gather news. Neither does the First Amendment relieve a newspaper reporter of the obligation shared by all citizens to respond to a grand jury subpoena and answer questions relevant to a criminal investigation, even though the reporter might be required to reveal a confidential source." *Cohen, supra* at 668.

"Also, it is not at all clear that respondents obtained Cohen's name "lawfully" in this case, at least for purposes of publishing it. Unlike the situation in Florida Star, where the rape victim's name was obtained through lawful access to a police report, respondents obtained Cohen's name only by making a promise that they did not honor. The dissenting opinions suggest that the press should not be subject to any law, including copyright law for example, which in any fashion or to any degree limits or restricts the press' right to report truthful information. The First Amendment does not grant the press such limitless protection." *Cohen, supra* at 671.

Here, Defendant Univision did not obtain the use of Plaintiff's identity or story lawfully, at least for purposes of publishing it.

Further, in *Cohen*, the Court noted the following (also substantially similar to the instant case):

"Nor is Cohen attempting to use a promissory estoppel cause of action to avoid the strict requirements for establishing a libel or defamation claim. As the Minnesota Supreme Court observed here, 'Cohen could not sue for defamation because the information disclosed [his name] was true.' Cohen is not seeking damages for injury to his reputation or his state of mind. He sought damages in excess of $50,000 for breach of a promise that caused him to lose his job and lowered his earning capacity. Thus, this is not a case like *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988), where we held that the constitutional libel standards apply to a claim alleging that the publication of a parody was a state-law tort of intentional infliction of emotional distress." *Cohen, supra.*

Here, likewise, Plaintiff is not attempting to avoid a defamation claim. In fact, Plaintiff could not sue for defamation because the information disclosed was true. As such, Plaintiff's case is not a case like *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988), or any of the cases Univision cites, or references, because all of those cases center

8

around a news organization publishing false or defamatory statements; or 1st Amendment concerns. Plaintiff's case centers around Univision publishing a story that places her in an unreasonably dangerous situation because of the truth of the publication, and the retribution that this particular drug cartel is known to enact.[3]

### (ii) Defendant Univision's Reliance On *Virelli V. Goodson-Todman Enterprises, Ltd.*, 142 A.D.2d 479 (1989), Is Misplaced.

*Virelli* was decided before *Cohen*. In *Anderson v. Strong Memorial Hosp.*, 151 Misc.2d 353 (1991) citing, *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991), the *Virelli* decision was discussed. In *Anderson,* the court noted that *Virelli* was determined before *Cohen*, and did not discuss, among other things, that "an unkept promise to a news source makes the press' conduct unlawful. *Anderson, supra* at 358.

In any event, in *Anderson*, the Court noted that it was not bound by *Virelli*, a 3rd Department case, because of the conflict created by the decision in the First Department of *Doe v. American Broadcasting Cos.*, 152 A.D.2d 482 (1st Dept. 1989), where the court in July, 1989, six months after the decision in *Virelli*, affirmed the denial of a motion for summary judgment in actions for breach of contract and negligence. In *Doe*, the plaintiffs, including two rape victims, agreed to participate in a television broadcast upon the promise that neither their faces nor their voices would be recognizable. The failure to keep this promise, the court held, was a cognizable claim.

*Anderson,* was a third party action. In *Anderson*, (Gannett) a Newspaper publisher's liability was to physicians in a hospital, and was not barred by the First Amendment or State Constitution. The physicians had previously been found liable to a

---

[3] And of course without receiving Plaintiff's consent, protecting her identity, or informing her in any way before airing the story.

9

patient, for a breach of the confidential patient-physician privilege, when the physicians failed to comply with their promise to the patient, that the HIV positive patient would not be recognizable in a newspaper photograph. *Anderson, supra* 361.

In *Anderson*, in the first action, the Court determined that Strong and Valenti (the physicians) had breached their independent duty to maintain the confidentiality of the plaintiff's identity, and that such breach was a proximate cause of the first-party plaintiff's damages. *Anderson, supra* 361.

In *Anderson*, the Court also noted that:

"Had Anderson or the third-party plaintiffs known the promise to them would be broken, permission for the photograph would not have been granted. The absence of permission under such circumstances makes Gannett's conduct unlawful…" *Anderson, supra* at 358.

As such, Defendant Univision owed Plaintiff a duty as a matter of law.

B. **Imposing A Duty On Defendant Univision In This Case Would Not Be Unconstitutional; And The Instant Case Has Nothing To Do With The First Amendment, Nor Does The First Amendment Provide Any Protection To Defendant Univision.**

"[T]he equally well-established line of decisions holding that generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news. As the cases relied on by respondents recognize, the truthful information sought to be published must have been lawfully acquired. The press may not with impunity break and enter an office or dwelling to gather news. Neither does the First Amendment relieve a newspaper reporter of the obligation shared by all citizens to respond to a grand jury subpoena and answer questions relevant to a criminal investigation, even though the reporter might be required to reveal a confidential source." *Cohen, supra* at 668.

"It is, therefore, beyond dispute that '[t]he publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to invade the rights and liberties of others.'. Accordingly, enforcement of such general laws against the press is not subject to stricter scrutiny than would be applied to enforcement against other persons or organizations." *Cohen, supra* at 670-671 (internal citation omitted).

As demonstrated by the foregoing, imposing a duty on Defendant Univision under the facts and circumstances of the instant case is not - in any way – unconstitutional; and a duty has been imposed on a defendant under similar circumstances.  See *Cohen*, *Anderson* and *Doe* above.  Further, the instant case has nothing to do with the First Amendment, and the First Amendment does not provide Defendant Univision with any protection or immunity under the facts and circumstances of the instant case.

Neither Defendant CIR, nor Defendant Univision, lawfully obtained, or lawfully published the offending story.  In their Motion, Defendant Univision even admits that it was a stranger to the CIR Report, yet still published the story featuring Plaintiff without concealing her identity, or verifying her consent, or informing her in any way before airing. See Motion, p. 4; Compl., ¶ 79. As such, Defendant Univision placed Plaintiff in an unreasonably dangerous situation, and failed to take any reasonable measures before airing the Plaintiff's interview, and was negligent in its failure to take reasonable measures to prevent injury to Ms. Almeciga." [4]  See Compl., ¶ 80.

Defendant Univision contends that imposing a duty under the circumstances of this case would "impinge on the publisher's constitutional rights in an unacceptable way." Motion, p. 8.

If Defendant Univision is worried about a duty creating a chilling effect, or impinging on their constitutional rights in an unacceptable way, then Univision's remedy is simple:

---

[4] "'Hit and run' journalism is no more protected under the First Amendment, than speeding on a crowded sidewalk is permitted under a valid driver's license.." *Greenberg v. CBS Inc.*, 69 A.D.2d 693, 700 (2nd Dept. 1979) quoting *Rosenblatt v. Baer,* 383 U.S. 75, 92 concurring opn..

- Don't publish stories of people denouncing ruthless drug cartels on You Tube, for millions of people to see, including the drug cartels, without ensuring the speakers safety, concealing their identity, seeking their consent, or conducting a minimal amount of due diligence, first!

As such, under the foregoing facts and circumstances, Defendant Univision owed a duty to Plaintiff. [5]

### C. The Material Set Forth By Defendant Univsion Does Not Qualify As "Documentary" Under CPLR 3211(A)(1); And Plaintiff Has Not Waived Her Rights In Any Way.

"Accordingly, consideration of such evidentiary materials will almost never warrant dismissal under CPLR 3211 (a) (7) unless the materials " 'establish conclusively that [the plaintiff] has no [claim or] cause of action'" *Hendrickson v Philbor Motors, Inc.*, 102 A.D.3d 251, 258 (2nd Dept. 2012).

"[I]f the court does not find [their] submissions 'documentary', it will have to deny the motion." *See Fontanetta v John Doe 1,* 73 A.D.3d 78, 84 (2 Dept 2010).

Since the material relied on by Defendant Univision does not qualify as "documentary" their motion pursuant to CPLR 3211(a)(1) and(7) must be denied. *Id* at 84.

First, the internet chatroom/post that Defendant Univision relies on in support of this argument is not documentary evidence under CPLR 3211(a)(1), nor does Defendant Univision cite any case where a record of this type constituted the type of documentary evidence contemplated by the legislature when it enacted CPLR 3211(a)(1). Further, the case that Defendant Univision cites to in support, *Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 179 (1982), was a foreclosure action, based upon a summary judgment motion, which was actually reversed "because the pleadings and

---

[5] "Time and again we have required that the equation be balanced; that the damaged plaintiff be able to point the finger of responsibility at a defendant owing, not a general duty to society, but a specific duty to him." *Lauer v. City of New York*, 95 N.Y.2d 95, 116 (2000) (internal citations omitted).

affidavits create[d] a triable issue…" Moreover, the internet chatroom/posts, and Tweets, that Defendant Univision points to are questionable, and were likely not written by Plaintiff. For instance, the post identifies Plaintiff as Mr. Reta's wife, however, Plaintiff is not married to Mr. Reta. Moreover, Plaintiff's Twitter account was hacked, which is indicated on the Exhibit included by Univision. See **Exhibit B** from Defendant's Motion.

In *Holman v. City of New York*, 853 N.Y.S.2d 512, 514 (2nd Dept. 2008), the moving Defendants failed to cite any case where a medical record, which contained the notes of a doctor recording comments by the Plaintiff, constituted the type of documentary evidence contemplated by the legislature when it enacted CPLR 3211(a)(1). In *Holman*, the court was unable to locate any cases where a document prepared by a third party which contained notes of a conversation with a party was the basis of a dismissal finding. Plaintiff has also exhaustively tried to locate any cases where a document like the one offered in *Holman*, and by Defendants Univision herein, could possibly qualify as "documentary" under CPLR 3211(a)(1), much less than actually forming the basis for dismissal under CPLR 3211(a)(1). Quite frankly, there are none.

The Appellate Division, Second Department, in *Fontanetta,* provided a concise history of CPLR 3211(a)(1), and the applicable case law under it. Aside from affidavits, and deposition testimony, not qualifying as "documentary" under a 3211(a)(1) motion, emails and trial testimony were found not to be the types of documents contemplated by the Legislature when it enacted CPLR 3211(a)(1). *See Fontanetta*, 73 A.D.3d at 85.

In *Fontanetta,* the action was by an orthopedist denied privileges at a hospital, suing those claimed to be responsible for it, with defamation charges included. The defendants had conducted the required peer review and included various printed matter in

their CPLR 3211(a)(1) motion to dismiss. The court held that the material did not qualify as documentary because it did not pose an "essentially undeniable" defense but can be characterized at best as letters, summaries, opinions, and/or conclusions of the defendants and/or the Hospital's agents and employees. Thus, the documents were not considered "documentary evidence" within the intendment of CPLR 3211 (a)(1). *See Fontanetta*, supra at 87; Practice Commentary C3211:10.

In the instant case, the material presented by Defendant Univision simply does not qualify as "documentary" under CPLR 3211(a)(1) and applicable case law. Moreover, the material presented does not pose an "essentially undeniable" defense, but can best be described as statements that Plaintiff may or may not have made to an unidentified third party in a chatroom, and that are questionable, and probably did not even come from her – her Twitter account was hacked, which is indicated on the document presented by Univision. Therefore, this is simply not the type of material that is considered "documentary evidence" within the intendment of CPLR 3211(a)(1) and controlling case law, especially when as here, the Defendants contend not to owe any duty to the Plaintiff.

In *Holman*, the court found that the medical records submitted in support of the motion was not "documentary evidence," as it raised issues of credibility that were for a jury to decide. As in *Holman*, the material presented by Defendant Univision in support of their motion may raise issues of credibility, but that is for a jury to decide. Therefore, Defendant Univision's motion pursuant to CPLR 3211(a)(1) must be denied.

### III. CONCLUSION

As demonstrated by the foregoing, Plaintiff respectfully submits that Defendant Univision's Motion to Dismiss pursuant to CPLR 3211(a)(1) and (7), must be denied in

its entirety. Plaintiff should be entitled to proceed with discovery and develop her case against Defendant Univision.

Dated: July 14, 2015

Respectfully submitted,

**THE LANDAU GROUP, PC**

By: _____

Kevin A. Landau (pro hac vice pending)
1221 Ave. of the Americas, 42nd Floor
New York, NY 10020
Phone: 212.537.4025/248.671.0884 (fax)
Email: kevin@thelandaugroup.com
*Counsel for Plaintiff Erica Almeciga*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing papers have been electronically filed with the Clerk of the Court on July 14, 2015. Notice of this filing is sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's ECF System.

23

Respectfully submitted,

**THE LANDAU GROUP, PC**

By: _____

Kevin A. Landau
1221 Ave. of the Americas, 42nd Floor
New York, NY 10020
Phone: 212.537.4025/248.671.0884 (fax)
Email: kevin@thelandaugroup.com
*Counsel for Plaintiff Erica Almeciga*