UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ERICA ALMECIGA,

               Plaintiff,

   -  against -

CENTER FOR INVESTIGATIVE
REPORTING, INC.,  UNIVISION
COMMUNICATIONS, INC.,
UNIVISION NOTICIAS,
BRUCE LIVESEY, JOSIAH HOOPER,

               Defendants.
-------------------------------------------------------------X

Case No. 15-CV-04319

Hon. Jed S. Rakoff

Removed from the Supreme Court of
the State of New York, New York County,
Index No. 651354/2015

 

## PLAINTIFF ERICA ALMECIGA'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNIVISION'S MOTION TO DISMISS

Kevin A. Landau (pro hac vice admitted)
The Landau Group, PC
1221 Ave. of the Americas, 42nd Floor
New York, New York 10020
212.537.4025

*Attorneys for Plaintiff Erica Almeciga*

## TABLE OF CONTENTS

**PAGE(S)**

Table of Authorities Cited                                                                ii-iii

a.      Plaintiff Has Rights Under The Partnership/Licensing Agreement Between
Defendant CIR And Defendant Univision.                                    1

b.      Plaintiff Can Prevail On Her Negligence Claim                          5
 Against Defendant Univision.

c.      Plaintiff Has Stated A Claim For Unjust Enrichment Against Univision.   10

d.      Plaintiff Does Not Have an Invasion Of Privacy Claim                   15
 Under New York Law.

e.      28 USC 1441(b)(2).                                                     15

f.      Conclusion.                                                            15

i

## TABLE OF AUTHORITIES CITED

PAGE(S)

*Alfano v. NGHT, Inc.*, 623 F.Supp.2d 355 (E.D.N.Y. 2009)                15

*Augeri v. Roman Catholic Diocese of Brooklyn*, 225 A.D.2d 1105 (1996)                3

*Cohen v. Cowles Media Co.*, 501 U.S. 663, 670-671 (1991)                5

*Corto v. Fujisankei Communications Intern. Inc.*,                11
177 A.D.2d 397 (1st Dept. 1991)

*County of Nassau v. Expedia, Inc.*, 120 A.D.3d 1178 (2014)                15, FN 5

*Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921 (2nd Cir. 1987)                8-10

*Dolphin Holdings, Ltd. v. Gander & White Shipping*, Inc.,                3
 122 A.D.3d 901 (2014)

*Duran v. Bautista*, 47 Misc.3d 1207(A), 2015 N.Y. Slip Op. 50507(U)                13-14
 (1st Dept. April 17, 2015)

*Georgia Malone & Co., Inc. v Rieder,* 19 NY3d 511 (2012)                10, 12-14

*Glanzer v Shepard*, 233 NY 236, 239 (1922)                1-2

*Hawks v. Record Printing and Pub. Co., Inc.*, 109 A.D.2d 972, 975 (1985)                6

*Landsman v. Tonawanda Pub. Corp.*, 186 A.D.2d 1028 (1992)                8

*Lauer v. City of New York*, 95 N.Y.2d 95, 116 (2000)                5

*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182 (2011)                10

*Mathurin v. Lost & Found Recovery, LLC*, 854 N.Y.S.2d 629,                3
affirmed as modified 884 N.Y.S.2d 462 (2008)

*Messenger ex rel. Messenger v. Gruner + Jahr Printing and Publ'g*,
94 N.Y.2d 436, 441 (2000)                15

*MDO Development Corp. v. Kelly*, 726 F Supp 79, 85 (S.D.N.Y. 1989)                10-11, 15

*Natoli v. Sullivan*, 159 Misc.2d 681 (1993)                15

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)                5

*Philips Intl. Invs., LLC v Pektor,* 117 A.D.3d 1 (1ˢᵗ Dept. 2014)   12-13

*Reliance Ins. Co. v Morris Assoc.*, 200 A.D.2d 728, 730 (1994)   4-5

*Simonds v. Simonds*, 45 N.Y.2d 233, 239, 242 (1978)   11, 15, FN 4

*Van Brunt v. Rauschenberg*, 799 F.Supp. 1467, 1472 (S.D.N.Y. 1992)   12

*White v Guarente,* 43 N.Y.2d 356, 364 (1977)   1-2

*Zucker v. Kid Gloves, Inc.,* 234 A.D.2d 598, 599 (1996)   3

**Statutes**

18 U.S.C. § 2511, 2520   15

28 USC 1441(b)(2)   15

**Other Authority**

Black's Law Dictionary, abr. 6ᵗʰ ed., 1998, p. 571   2

a. **Plaintiff Has Rights Under The Partnership/Licensing Agreement Between Defendant CIR And Defendant Univision.**

Defendant CIR has already admitted that it had a partnership Agreement with Univision over the offending story and film footage of Plaintiff (and Mr. Reta).  See CIR Answer, ¶ 4; Compl. ¶4.

The duty of reasonable care in the performance of a contract is not always owed solely to the person with whom the contract is made, but may inure to the benefit of others. *White v Guarente,* 43 N.Y.2d 356, 364 (1977) (internal citations omitted).

In *White*, the Court of Appeals found that the services of an accountant-Defendant (Arthur Anderson):

"were not extended to a faceless or unresolved class of persons, but rather to a known group possessed of vested rights, marked by a definable limit and made up of certain components." *White, supra* at 361-362.

Here, Plaintiff was a part of those in a "fixed, definable and contemplated group" under the partnership agreement between Defendant Univision and Defendant CIR. The licensing of the CIR Report, featuring Plaintiff, like Plaintiff's Release, as well as any additional film footage, is necessarily subject matter to be governed by the partnership agreement between CIR and Univision (as well as Univision being able to translate the story in Spanish, as it did).  Otherwise, CIR would not have had any right to license the offending story to Univision in the first place, nor would Univision have had any right to possess the offending story, and publish it on their You Tube station.

In *Glanzer v Shepard*, 233 NY 236, 239 (1922); a judgment in favor of the plaintiffs was upheld where the defendants, public weighers engaged by the seller of beans, reported negligently the weight of a quantity of the commodity thus causing plaintiffs, the buyers, to overpay the sellers. Thus, there was involved a negligent

1

misrepresentation which induced a third party to act to his disadvantage.

Judge Cardozo, distinguished *Glanzer* in this fashion:

"Here was something more than the rendition of a service in the expectation that the one who ordered the certificate would use it thereafter in the operations of his business as occasion might require. **Here was a case where the transmission of the certificate to another was not merely one possibility among many, but the 'end and aim of the transaction**,' * * *". *White, supra* at 362 (internal citations omitted)..

Based on the foregoing, the Court of Appeals in *White* concluded:

"Here, too, the furnishing of the audit and tax return information, necessarily by virtue of the relation, was one of the ends and aims of the transaction." *White, supra* at 363.

Likewise, in the instant case, the furnishing of the interviews and story featuring Plaintiff was one of the ends and aims of the transaction between CIR and Univision. Plaintiff was plainly a member of a limited class of people whose reliance on the agreement between CIR and Univision was, or at least should have been, specifically foreseen. See *White, supra* at 362.

In *White*, the defendant-Andersen made a similar argument that Defendant Univision now contends; namely, that Plaintiff "falls beyond the bounds of protected parties."  *Id* at 363.  The Court of Appeals addressed this argument and held as follows:

"This reasoning fails to recognize that **"(t)he duty of reasonable care in the performance of a contract is not always owed solely to the person with whom the contract is made * * * It may inure to the benefit of others**." *White, supra* at 363.

Black's Law Dictionary defines "inure" as "To take effect; to result. In property law, to come to the benefit of a person or to fix his interest therein." Black's, abr. 6th ed., 1998, p. 571.

In the instant case, Plaintiff's interest in the CIR Report was fixed by the partnership/licensing agreement between CIR and Univision, and as a result of this agreement, her identity was exposed and she was left unprotected on Univision's You

2

Tube station. <u>Therefore, the performance of the agreement between CIR and Univision clearly inured to Plaintiff's detriment, which plainly means that Defendant Univision not only had obligations to Plaintiff under their partnership Agreement with Defendant CIR, but that Plaintiff also had rights under that agreement as well.</u>

For instance, in *Zucker v. Kid Gloves, Inc.,* 234 A.D.2d 598, 599 (1996), the Court found that even if the artist was not a third–party beneficiary of the contract between the gallery and the carrier hired to transport the artist's work, such fact did not bar the artist's negligence claim against the carrier alleging that the artwork was damaged during shipping. *Id. See Dolphin Holdings, Ltd. v. Gander & White Shipping*, Inc., 122 A.D.3d 901 (2014). See also *Augeri v. Roman Catholic Diocese of Brooklyn*, 225 A.D.2d 1105 (1996), where the plaintiffs' complaint against a cemetery stated a cause of action for negligent infliction of emotional distress because the alleged negligence of the cemetery interfered with the proper disposal of a family member's remains. Also, *Mathurin v. Lost & Found Recovery, LLC*, 854 N.Y.S.2d 629, affirmed as modified 884 N.Y.S.2d 462 (2008), where a vendor's complaint stated claims against a lender for fraud and gross negligence in underwriting a mortgage in connection with a "foreclosure rescue" scheme.  In *Mathurin*, the vendor was stripped of equity in her property; and the complaint alleged that the lender failed to take any measures to prevent the subject transaction.

Here, Plaintiff was stripped of her equity and all rights in the CIR Report, even though she was featured in it, through the agreements between CIR and Univision. Plaintiff alleged that Univision failed to take any reasonable measures before airing the Plaintiff's interview, and was negligent in its failure to take reasonable measures to

prevent injury to Ms. Almeciga. Compl. ¶80. Univision failed to verify that it, or that

CIR, had any right to even possess the interview of Plaintiff in its present form, much less

license it, and actually translate it into Spanish and air it on its You Tube station. It seems

almost impossible that the licensing agreement between CIR and Univision was devoid of

language requiring CIR to act in a legal fashion in collection of content, as opposed to

application of its intentional and untruthful acts in the instant matter. Provided that terms

to this effect are explicitly or reasonably inferred based upon the context of the

defendants' agreement, then Univision's culpability is necessary, for it was a vehicle by

which the story was exclusively displayed to millions. Univision was not merely a party

approached by CIR for a random story, they were partners (in crime as it turns out) and

bonded by the mutual expectation that CIR's stories would be relevant to their Latin

demographic. CIR forged a Release, which Univision was in possession of, prior to their

decision to broadcast.  Neither CIR nor Univision had the legal right to publish the

interview in the manner they elected.  The question then becomes, how often does

Univision require releases for dangerous subject matter?  Has Univision required certain

supporting documents, such as an ID, notarized, for other releases in the past?  Has

Univision ever *rejected* a report from whomever, because the documents provided were

suspect?  If this is fairly standard for Univision, then why were such protocols ignored

under the circumstances of this case? Conversely, if Univision does not require releases,

then why were they particularly interested in having one for this specific interview?  The

facts unique to this case reveal more questions, than answers. As the foregoing

demonstrates, Univision cannot hide behind the representations of CIR and/or that it was

a "stranger to the publication" since it's well settled that an agent can be held liable for

his own negligent acts. *Reliance Ins. Co v Morris Assoc.*, 200 A.D.2d 728,730 (1994).

### b. Plaintiff Can Prevail On Her Negligence Claim Against Defendant Univision.

"Fixing the orbit of duty may be a difficult task…Time and again [the Court] has required 'that the equation be balanced; that the damaged plaintiff be able to point the finger of responsibility at a defendant owing, not a general duty to society, but a specific duty to him.'" *Lauer v. City of New York*, 95 N.Y.2d 95, 116 (2000) (citations omitted).

Here, Plaintiff can point her finger at Defendant Univision.  Defendant Univision is responsible for damage that Plaintiff has sustained, and for damage that she will continue to sustain.  Defendant Univision did not owe a general duty to society, but a specific duty to Plaintiff under the unique facts and circumstances presented by the instant case.  And it makes no difference if Defendant Univision was a media Defendant because generally applicable laws apply to media Defendants – media Defendants have "no special privilege to invade the rights and liberties of others." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 670-671 (1991).

Univision's position in its Motion was that as a media Defendant it had no duty to any subjects appearing in its stories, even if they were promised confidentiality, and that such conduct is protected by the First Amendment.  This line of case law and First Amendment protection is guided by the iconic decision in  *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).  In her response, Plaintiff demonstrated that *Sullivan* had absolutely no application to the instant case, and that *Cohen v. Cowles Media Co.*, 501 U.S. 663, 670-671 (1991) was controlling for the issues raised in Univision's Motion.

Univision then changed directions, and in their reply, and at oral argument, focused, on what appears to be there present contention, that they did not have a duty to verify Plaintiff's Release (or consent), and that New York law has never imposed such a duty on a media Defendant.  As demonstrated by the foregoing, this issue is irrelevant in

5

the instant case.  Moreover, it is simply not true.

New York law has imposed a duty to verify upon a media Defendant in a number circumstances and causes of action.

For instance, in *Hawks v. Record Printing and Pub. Co., Inc.*, 109 A.D.2d 972, 975 (1985), evidence that a newspaper reporter picked a first name off of a list of jail employees, with a last name, that matched a name in a notice of claim for alleged false arrest and police brutality, and where reporter listed that individual in his article, without checking other sources, was sufficient to present material issue of whether conduct was "grossly irresponsible", precluding summary judgment in action by the named individual.

The Court in *Hawks*, also noted that a wide variety of factors may enter into the determination of the "grossly irresponsible" standard of preparation of a news report, to allow recovery when the content is arguably within sphere of legitimate public concern, such as whether sound journalistic practices were followed, normal procedures were followed, editor reviewed copy, there was any reason to doubt the accuracy of the source relied upon so as to produce a further duty to verify information, and whether truth was easily accessible. *Id* at 974.

Here, Plaintiff alleged that:

"A minimal amount of due diligence would have reflected that the document [the Release] presented [to Univision] was not notarized, that Plaintiff's name was spelled incorrectly, and that the actual handwriting on the Release was different in sections (as well as in different colors).  Any of the foregoing issues, should have raised suspicion in Univision to confirm Plaintiff's consent. Compl. ¶76.

The Release presented to Univision demonstrated that there was a reason to doubt its accuracy, so as to produce a further duty to verify Plaintiff's information and consent before airing the offending story, when such information was easily accessible.

6

However, Univision failed to take any reasonable measures before airing Plaintiff's interview, and was negligent in its failure to take measures to prevent injury. Compl. ¶80.

Univision relied on the Release presented from CIR as its justification to lawfully publish the offending story (and translate it into Spanish), when the Release raised all sorts of suspicions, as indicated above, so as to produce a duty on the part of Univision to verify Plaintiff's information before publishing the interview of Plaintiff denouncing a ruthless drug cartel. In her Complaint, Plaintiff also alleged that:

"Los Zeta cartel is among the most brutal in all of Mexico, which logically applied, equates to being among the most violent in the world.  The idea that Univision would agree to air the interview of Ms. Almeciga without concealing her identity, or properly verifying her consent, or informing her in any way before airing, is a breach of the duty Defendant Univision owed to Plaintiff, and casts doubt as to Univision's ability to effectively monitor the stories it airs, and the people contained within those stories." Compl. ¶79.

In the CIR Report, see https://www.youtube.com/watch?v=OBcTsbWPqFQ (at minute 0:08 of 2:58), where it states as follows:

"The following is an excerpt from an exclusive interview with one of the few people who has met Miguel Trevino and lived to talk about it."

As such, Univision was aware of how dangerous and violent the Los Zetas cartel is, and the dangers that Ms. Almeciga could be placed in as a result of Defendants reckless actions in plastering her face in their report denouncing Los Zetas.  Compl. ¶8. [1]

Under these circumstances, Univision had a duty to verify Plaintiff's information, and the extremely suspicious Release provided to Univision from CIR, before airing Plaintiff's interview (and translating it into Spanish). Univision's failure to take any reasonable measures before airing Plaintiff's interview was grossly irresponsible, and precludes dismissal, and presents a question of fact for the jury. Compl.  ¶80.

---

[1] It seems almost unbelievable that Univision was unaware of the CBC story featuring Plaintiff, with her identity concealed and protected. See Compl. ¶12.

7

Other New York cases confirm this conclusion as well.

In *Landsman v. Tonawanda Pub. Corp.*, 186 A.D.2d 1028 (1992), the Court held that the record failed to establish, as a matter of law, that defendant was not grossly irresponsible in publishing the news story at issue.  In *Landsman*, the defendant's reporter averred that she obtained her information from a Detective, who had provided reliable information in the past. However, the Detective testified, that he did not provide the information in the news story to the reporter, and that he did not recall ever giving information to anyone at the defendant's newspaper. Because of this disputed evidence regarding the manner in which the defendant acquired its information, the court properly determined that the defendant's conduct should be evaluated by a jury.

Here, Plaintiff contests that she ever signed the purported Release advanced by CIR, and contends that Univision used this purported Release as its justification to lawfully publish the offending story on their You Tube station.  Further, the CIR report featured Plaintiff, which Univision translated into Spanish!  Therefore, for Univision to contend that they were unaware of the report and/or a "stranger" to it is patently absurd.

Because of this disputed evidence regarding the manner in which Defendant Univision acquired its information from Defendant CIR, (i.e. the purported Release and interview of Plaintiff), the Court, at the very least, should allow for a discovery period to answer these questions and to determine if Defendant Univision's conduct should be evaluated by a jury.  *Landsman, supra.*

For instance, in *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921 (2nd Cir. 1987), the Second Circuit Court of Appeals found that an Adult magazine's publication of a "swinger's ad" that was placed by a third party, and which used the woman's maiden

name and contained a lewd description of the woman wrongly suggesting that she was promiscuous, and which named the small town where she was born and still resided, while doing nothing to verify the statement, was grossly irresponsible.

In *Dalbec*, the Court noted that the Adult magazine had admittedly known that the woman did not sign consent or submit the ad which was published, and that a summons and libel complaint relating to an earlier statement had been served on the magazine at least one month before the statement was published.

Here:

- In August 2014, Plaintiff's counsel sent Defendant CIR's attorneys a demand to Cease and Desist continuing to show Ms. Almeciga's interview without her identity being concealed.  Defendant CIR refused. Instead, in August 2014, Defendant CIR provided Plaintiff with a Release, which Defendant CIR represented was purportedly signed by Plaintiff. Compl. ¶ 33.

- Ms. Almeciga adamantly denied having ever seen the proffered Release, much less having signed it.  As such, Plaintiff submitted the proffered signature to a handwriting expert, who verified that it was indeed a forgery.   Compl. ¶34.

Plaintiff, through counsel, sent Defendant CIR all of this information and documentation demonstrating the falsity of the Release, and demanding that the CIR Report be removed from its You Tube station immediately, and that the CIR Report not be transferred or licensed to any other party.

It seems almost unbelievable that Defendant CIR would not share this with Defendant Univision, considering their partnership agreement, and that the CIR Report had over 3,000,000 views at this point, and was one of the most successful and highly viewed stories on Univision's You Tube Station.

With this information, Univision obviously had "reason to doubt the accuracy of the source relied upon so as to produce a duty to make further inquiry to verify the

9

information ..., and whether the truth was easily accessible...." *Dalbec, supra* at 924-925. However, Defendant Univision admittedly did nothing to verify the purported Release, or the contents of the CIR Report whatsoever. *Id.* Therefore, a jury can conclude that Defendant Univision's conduct was grossly irresponsible. *Dalbec, supra* at 925.)

### c. Plaintiff Has Stated A Claim For Unjust Enrichment Against Univision.

It is well established that to successfully plead unjust enrichment "[a] plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." *Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182 (2011).

A claim for Unjust Enrichment essentially arises in two situations: 1) where the plaintiff confers a benefit upon the defendant; and 2) from the defendants acts to take or receive what rightfully belongs to the plaintiff.

In the first situation, there must be some connection or relationship between the parties that induced the plaintiff to act or caused reliance on the plaintiff's part. *Georgia Malone & Co., Inc. v Rieder,* 19 NY3d 511 (2012). Although privity is not required, the plaintiff must show a relationship between the plaintiff and the defendant or at least an awareness by the defendant of the plaintiff's existence. The claim will not be supported if the connection between the parties is too attenuated. *Mandarin, supra at* 182-183. In the second situation, the claim can be asserted against persons in addition to the defendant. *MDO Development Corp. v. Kelly*, 726 F Supp 79, 85 (S.D.N.Y. 1989). The logic is simple - a person who shares in what is improperly taken is accountable for unjust enrichment. *Id.* Plaintiff's claim for unjust enrichment against Defendant Univision is a mix of both situations as demonstrated herein.

First, Defendant Univision can hardly argue that they were unaware of Plaintiff, or that their relationship with Plaintiff was too attenuated – Plaintiff was featured in the

story that Univision licensed from CIR, Plaintiff's interview and film footage was a

subject of the licensing/partnership agreement between Univision and CIR, and

Defendant Univision translated Plaintiff's interview into Spanish (as well as being aware

of the highly suspicious Release). See CIR Answer, ¶4, Compl. ¶¶3-4, 20, 23-24, 26, 28,

30-31. Conversely, Plaintiff's claim for unjust enrichment fits neatly into the second

situation as well, because Defendant Univision took or received what rightly belonged to

Plaintiff unlawfully and/or shared in what was improperly taken by CIR. Compl. ¶¶ 16-

17, 20, 23-24, 26, 28, 30-31. Under this scenario, Plaintiff's claim for Unjust Enrichment

is fairly straightforward. Univision can be held liable for unjust enrichment arising from

their licensing and publishing of Plaintiff's interview, which was obtained unlawfully.

Compl. ¶ 107-108, 115. For example, a wife could be held liable for unjust enrichment

arising from her ownership of a residence, which her husband purchased with embezzled

funds. *MDO, supra* at 85.

"Unjust enrichment does not require the performance of any wrongful act by the one enriched…Innocent parties may frequently be unjustly enriched. What is required, generally, is that a party hold property "under such circumstances that in equity and good conscience he ought not to retain it." *See Simonds v. Simonds*, 45 N.Y.2d 233, 239(1978).

For instance, in *Corto v. Fujisankei Comm. Intern. Inc*., 177 A.D.2d 397 (1st Dept.

1991), a television producer ("plaintiff") alleged that she presented a program proposal to

a foreign broadcaster through its United States representative.  The plaintiff alleged that

she performed various acts on behalf of the broadcaster, and that the broadcaster, which

purportedly was not informed that the producer was the creator and producer of the

program, broadcast the program **without her consent,** and without compensation or

credit, as agreed, sufficed to make out a cause of action for unjust enrichment. *Id* at 397.

Here, Plaintiff alleged that she performed various acts on behalf of the CIR

Report featured on Univision's You Tube station. Univision licensed and produced this story in partnership with CIR, and even translated it into Spanish. However, Univision, was purportedly not informed of Plaintiff's acts and conditions for airing the story, and instead broadcast the program without Plaintiff's consent, as agreed.

Also, in *Van Brunt v. Rauschenberg*, 799 F.Supp. 1467, 1472 (S.D.N.Y. 1992), the plaintiff stated a cause of action, against a famous artist, for unjust enrichment, where the plaintiff alleged that the artist used plaintiff's photographs, audiotapes, and videotapes, and thus contributed to the creation of art that provided the artist with vast sums of money and that the plaintiff was never properly compensated for use of that property. *Id* at 1472-1473.

Here, likewise, Plaintiff alleged that Univision used Plaintiff's interview, story, translated her statements into Spanish, which was featured in a story that over 4,000,000 people have viewed on Univision's You Tube station. Compl. ¶107-110. Thus, Plaintiff contributed to the creation of a story that provided Univision with vast sums of money and exposure and Plaintiff was never properly compensated for such use.

Plaintiff anticipates that Univision will rely heavily on *Georgia Malone.* It is important for the Court to be aware of what *Georgia Malone* did, and did not hold.  First, *Georgia Malone* did not change the law on unjust enrichment.  This was made clear in *Philips Intl. Invs., LLC v Pektor,* 117 A.D.3d 1 (1st Dept. 2014), which was one of the first cases to analyze *Georgia Malone*. In *Philips*, the First Department Supreme Court stated as follows:

"[T]he Court in *Georgia Malone* was merely restating that a plaintiff must plead some relationship between the parties that could have caused reliance or inducement and that the relationship cannot be too attenuated."  *Philips, supra* at 4.

In *Philips*, the Court found that the plaintiff alleged a sufficient relationship with the partnership defendants to survive a motion to dismiss their unjust enrichment claim. *Philips, supra* at 7-8. In finding this, the *Philips* Court noted that the partnership defendants joint venturers, the Pektors, created the partnership defendants as vehicles to appropriate the venture's business opportunity of buying viable properties. *Philips, supra* at 7-8. All of the joint venturers' knowledge and scheming was under this theory, and therefore, imputable to the partnership defendants. *Id.*[2]

In the recent case of *Duran v. Bautista*, 47 Misc.3d 1207(A), 2015 N.Y. Slip Op. 50507(U) (1st Dept. April 17, 2015), Class-plaintiffs were seeking to recover against assets that were identified and recovered in a criminal trial of Vilma Bautista ("Bautista"), the personal secretary to Imelda Marcos.[3] *Bautista, supra* at *1. Bautista was criminally charged with having illegally conspired to possess and sell valuable works of art acquired by Imelda Marcos during her husband's presidency and keeping the proceeds for herself. *Bautista, supra* at *1. Bautista had allegedly come into possession of many other highly valuable paintings from the Marcos's before the end of the regime in 1986. *Bautista, supra* at *2. In September of 2010, Bautista sold a Monet Water Lily Painting to a London buyer for approximately $32 million. *Bautista, supra* at *2. The Class alleged that Bautista had been unjustly enriched at the expense of the Class as

---

[2] Defendants CIR and Univision created their partnership as a vehicle for Univision to license the stories of CIR on Univision's You Tube Station, including, one of the first stories, featuring Plaintiff, which Univision even translated into Spanish on its own initiative. Compl. ¶¶3-4. Thus, the partnership was essentially created as "vehicles to appropriate" the venture's business opportunity of buying commercially viable properties (i.e. a story that could generate millions of views on You Tube).

[3] Ferdinand E. Marcos served as the president of the Philippines until he was removed from power in 1986, whereupon he fled to Hawaii with his family. During his reign, he was responsible for grave human rights violations and corruption. Subsequent to Marcos' removal from power, scores of his victims and families commenced actions against him. *Id* at *1.

judgment creditors of Imelda Marcos, and that it would be inequitable for Bautista to retain the proceeds derived from the sale of the Painting. *Bautista, supra* at \*16.

Citing *Georgia Malone,* the defendants argued that the Class-plaintiffs failed to allege some dealing with each other to have been unjustly enriched. *Bautista, supra* at \*16. The First Department Court disagreed and held that the Class-plaintiffs had sufficiently pled such a relationship. See *Bautista, supra* at \*16-17.

Here, Plaintiff has made allegations that Univision and CIR entered into an agreement relative to the offending interview and story, thus showing that Univision was aware of CIR's existence and their relationship to Plaintiff, and the interview as, purportedly, owner. Compl. ¶ 3-4. Further, Univision translated Plaintiff's interview into Spanish, thus clearly showing that Univision was aware of Plaintiff, and her interview. Compl. ¶ 3, 20. Moreover, Univision published the CIR Report on its You Tube Station, and over 4,000,000 people have viewed the CIR Report, with Plaintiff completely exposed, thus Univision has greatly benefitted as a result of the CIR Report featuring Plaintiff. Compl. ¶¶109-110. Finally, Plaintiff alleged that there was a forged Release that was presented to Univision, from CIR, stating that CIR could essentially offer and negotiate on Plaintiff's behalf the sale of her interview (without her identity being concealed), and to sign agreements transferring and licensing the sale of the story and Plaintiff's rights thereto. Compl. ¶ 76.[4] Further, Plaintiff alleged that Univision was in possession of Plaintiff's Release and would thus have knowledge of the facts therein, especially when the documents and material were actually presented to Univision in order for the agreement with CIR to move forward.

---

[4] See *Simonds, supra* at 239.

As such, Plaintiff has sufficiently pled a claim for unjust enrichment as to

Defendant Univision. See Compl. ¶¶ 106, 117; *Bautista, supra* at *18. [5]

### d. Plaintiff Does Not Have anInvasion Of Privacy Claim Under New York Law.

Unlike Plaintiff's common law claims for Negligence and Unjust Enrichment, a

claim for Invasion of Privacy is strictly statutory under New York Law.  However, New

York Civil Rights Law § 50-51 "do[es] not apply to reports of newsworthy events or

matters of public interest". *Messenger ex rel. Messenger v. Gruner + Jahr Print.,* 94

N.Y.2d 436, 441 (2000). See *Alfano v. NGHT, Inc*., 623 F.Supp.2d 355 (E.D.N.Y. 2009).

Conversely, Plaintiff may have a statutory claim against Univision under the

Federal Wiretap Act 18 U.S.C. § 2511, 2520. See *Natoli v. Sullivan*, 159 Misc.2d 681

(1993).  Likewise, Plaintiff may have an additional cause of action for Conversion

against Univision if Plaintiff can establish that Univision's interference with her

possessory rights in the interview was intentional. See, *Van Brunt, supra* at 1473.

### e. 28 USC §1441(b)(2).

Plaintiff is unclear as to Univision's position under §1441(b)(2), and will

therefore, reserve its response until Plaintiff has the opportunity to review Univision's

Memorandum.

### f. Conclusion.

As demonstrated by the foregoing, Plaintiff respectfully submits that Defendant

Univision's Motion to Dismiss must be denied in its entirety.  Plaintiff is able to maintain

her claims for Negligence and Unjust Enrichment against Defendant Univision, and

therefore, should be entitled to proceed with discovery and develop her case against

Defendant Univision.

---

[5] See also *County of Nassau v. Expedia, Inc*., 120 A.D.3d 1178 (2014).

Dated: August 3, 3015

Respectfully submitted,

**THE LANDAU GROUP, PC**

By:

_____
Kevin A. Landau (pro hac vice admitted)
1221 Ave. of the Americas, 42nd Floor
New York, NY 10020
Phone: 212.537.4025/248.671.0884 (fax)
Email: kevin@thelandaugroup.com
*Counsel for Plaintiff Erica Almeciga*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing papers have been electronically filed with the Clerk of the Court on August 3, 2015. Notice of this filing is sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's ECF System.

23

Respectfully submitted,

**THE LANDAU GROUP, PC**

By:

_____
Kevin A. Landau
1221 Ave. of the Americas, 42nd Floor
New York, NY 10020
Phone: 212.537.4025/248.671.0884 (fax)
Email: kevin@thelandaugroup.com
*Counsel for Plaintiff Erica Almeciga*

23

16