F7CSALM1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ALMECIGA,

                    Plaintiff,

            v.                            16 Civ. 4319 (JSR)

CENTER FOR INVESTIGATIVE
REPORTING, UNIVISION
COMMUNICATIONS, INC.,

                    Defendants.

------------------------------x
                                        New York, N.Y.
                                        July 27, 2015
                                        4:10 p.m.

Before:

                        HON. JED S. RAKOFF,

                                        District Judge

                              APPEARANCES

THE LANDAU GROUP, PC
        Attorneys for Plaintiff
BY:  KEVIN LANDAU
     ZACH LANDAU

DAVIS WRIGHT TREMAINE LLP
        Attorneys for Defendant Center for Investigative Reporting
BY:  ALISON BROOKE SCHARY

JACKSON WALKER L.L.P.
        Attorneys for Defendant Univision Communications, Inc.
BY:  CHARLES L. BOBCOCK

BERK-WEISS LAW PLLC
        Attorneys for Defendant Univision Communications, Inc.
BY:  LAURIE BERKE-WEISS

```
 1                    (Case called)

 2            THE COURT:  All right.  We're here on the motion to

 3    remand, which is closely linked with the motion of Univision to

 4    dismiss.

 5            I think I want to hear first from plaintiffs' counsel

 6    on the motion to remand.  So we'll start there.

 7            MR. LANDAU:  Good afternoon, your Honor.  We're going

 8    to rest primarily upon what has already been indicated in our

 9    motion.  However, I would just like to highlight a couple of

10    different points.  Defendant CIR has indicated that it has

11    diversity jurisdiction in that it supposedly has no minimum

12    contacts to the state of New York.

13            However, with respect to --

14            THE COURT:  Hold on.  We're talking about diversity

15    here, are we not?  That doesn't relate to them.

16            MR. LANDAU:  Pardon me, your Honor?

17            THE COURT:  I thought -- maybe I misunderstood.  I

18    thought that the ground on which you were seeking to remand was

19    a lack of diversity.

20            MR. LANDAU:  Correct.

21            THE COURT:  So diversity has nothing to do with

22    minimum contacts.

23            MR. LANDAU:  Yes, your Honor.  If I may restate.

24            Defendant CIR has indicated that it has a claim for

25    diversity jurisdiction and, as a result, the federal court
```

1    shall retain such jurisdiction.

2          From what we understand -- and discovery has not

3    proven otherwise at this juncture -- is there has been a

4    partnership formed with Univision that has existed since 2012,

5    I believe since August of 2012, between the two parties,

6    covering similar stories as the one that is the subject of this

7    lawsuit.

8          In addition to that, there are reporting mechanisms,

9    investigations, and general work that's conducted on behalf of

10   CIR within the state of New York, as well as a variety of

11   donations that they had sought from contributors that reside in

12   New York understanding that CIR, again, as far as we are aware,

13   has conducted reports all over the country.

14         THE COURT:  I'm still missing the point.  You filed an

15   amended complaint I think it was yesterday --

16         MR. LANDAU:  Friday.

17         THE COURT:  Close enough.

18         MR. LANDAU:  Yes.

19         THE COURT:  And you said that Defendant CIR is a

20   California corporation.

21         MR. LANDAU:  Yes.

22         THE COURT:  So, for diversity purposes, if that were

23   the only defendant, that would be the end of the story.  I

24   thought your position was that there was no -- that diversity

25   had been destroyed because of Univision being a New York

 1  corporation.

 2          MR. LANDAU:  Correct.  But in addition to the

 3  partnership that was formed between Defendant CIR as well as

 4  Univision, CIR on its own also has personal jurisdiction

 5  because the New York long-arm statute is quite extensive.

 6          THE COURT:  Maybe I'm missing the point, or maybe it's

 7  been too long since I read your papers.

 8          What does personal jurisdiction have to do with

 9  diversity?

10          MR. LANDAU:  We're suggesting that the notion that

11  they don't have any type of business or contacts to the state

12  of New York is disingenuous in that given the nature of their

13  business as being a news agency, given the type of news that

14  they cover, the type of investigations that they investigate --

15          THE COURT:  You allege that they're a California

16  corporation.

17          Are you saying that their principal place of business

18  is not in California?

19          MR. LANDAU:  We're not suggesting that the principal

20  place of business is not in California, but we are suggesting

21  that they conduct business beyond --

22          THE COURT:  Yes, but what does that matter for

23  diversity purposes?  I understand that might matter for

24  personal jurisdiction purposes.  What does it matter for

25  diversity purposes?

1              MR. LANDAU:  We're suggesting that between the

2     partnership that's been established with CIR and Univision,

3     diversity is inapplicable.  In addition --

4              THE COURT:  Because?  What party, other than

5     Univision, is a New York corporation?

6              MR. LANDAU:  Between CIR and Univision, only Univision

7     is the corporation.

8              THE COURT:  So if your claim against Univision is an

9     improper joinder, then there is diversity, is there not?

10             MR. LANDAU:  There are a couple different parts.  With

11    respect to the diversity component, taking it on its face, if

12    CIR, which it is, is a California corporation and that they

13    didn't conduct business anywhere else and it was not

14    foreseeable, reasonably foreseeable, to conduct business

15    elsewhere, then I would agree.

16             THE COURT:  If an action is brought in this court --

17    we'll take it out of the facts of this case for a moment,

18    hypothetically.

19             MR. LANDAU:  Sure.

20             THE COURT:  A citizen of Utah sues a corporation from

21    California, but they bring action in this court because they

22    think the tort occurred here in my hypothetical.  There would

23    be complete diversity, would there not?

24             MR. LANDAU:  Yes.

25             THE COURT:  Even though, under the allegations of the

 1    complaint, the defendant did things in New York.  It has

 2    nothing to do with diversity.  It may have to do with personal

 3    jurisdiction, but it doesn't have to do with diversity;

 4    correct?

 5              MR. LANDAU:  Correct.

 6              THE COURT:  Okay.  So here we have the only reason

 7    there is not complete diversity is if Univision is properly in

 8    the case; right?

 9              MR. LANDAU:  Right.

10              THE COURT:  And you say Univision is properly in the

11    case because you have a claim for negligence.

12              MR. LANDAU:  Yes.  And now unjust enrichment as well.

13              THE COURT:  I was looking at your amended complaint.

14    I thought the -- I'm looking at page -- I see.  There's a Count

15    6 as well -- I missed that -- against Univision.  So if those

16    two claims are colorable, then there is not complete diversity.

17    If they are not colorable, then there is complete diversity.

18    Is that fair?

19              MR. LANDAU:  Yes.

20              THE COURT:  So, putting aside unjust enrichment for

21    one second because that's new, just talking about negligence,

22    what is the basis for saying that Univision has a duty to your

23    client that they breached?

24              The cases -- I think there were three cases that you

25    cited for that proposition.  One was Cohen v. Cowles Media

Company, a Supreme Court case, 501 US 663.  One was Doe v.

American Broadcasting Company, and the third was Anderson v.

Strong Memorial Hospital, which was a New York Supreme Court

case.

It looked to me like Cohen was concerned with First

Amendment claims under a Minnesota law and promissory estoppel,

that, Doe, which was a summary affirmance related to a

negligent infliction of emotional harm, and that in both cases

the defendants were alleged to have made direct promises of

confidentiality to the plaintiff.

The third case, which seemed to me more on point but

not to help you, which was Anderson, where the court allowed

the doctor and the hospital, which were the direct defendants

and who were being sued for invasion of privacy, to seek

contribution against the newspaper because of an express

promise of confidentiality that created an affirmative duty;

whereas, here there is no such promise.

MR. LANDAU:  Your Honor, if I may.

THE COURT:  Yes, please.

MR. LANDAU:  Taking the latter case first, with

respect to Anderson, that was decided prior to Cohen.  The

Court in Anderson specifically did not address several issues

that Cohen did address, including, as your Honor has stated

with respect to an unkept promise to a news source.

So, with respect to the opposition that that is a

1       controlling case and potentially detrimental to our argument,

2       that case, for the purposes of our matter, is largely

3       irrelevant.

4              THE COURT:  Although we are, of course, bringing your

5       negligence claim and your unjust enrichment claim under

6       New York law, yes?

7              MR. LANDAU:  True.  That is our case.  As far as

8       addressing the issue with respect to where you said that it

9       could be potentially damaging.

10             THE COURT:  So you think it was superseded in effect

11      by Cohen.  They were both decided in 1981.  I'm not sure which

12      was decided first, but let's go ahead.

13             MR. LANDAU:  The component of Anderson that is

14      consistent in Cohen has to deal with the general application of

15      law and that the press does not and should not enjoy special

16      immunity to such laws.

17             THE COURT:  First of all, I'm not totally sure that

18      that is true under New York law.  Neither side seems to have

19      dealt with the fact that New York law has a privacy statute

20      that limits causes of action for invasion of privacy to

21      essentially commercial situations such as someone misusing a

22      photograph of someone in a commercial without getting

23      permission.

24             Putting all that aside, what is it in Cohen that you

25      think supports the creation of the duty that you're arguing for

 1    here?

 2          MR. LANDAU:  Your Honor, with respect to page 6 of our

 3    opposition, Cohen held that the Court -- pardon me.  Strike

 4    that.

 5          In Cohen, the Court held as follows "It is therefore

 6    beyond dispute that the publisher of a newspaper has no special

 7    immunity from the application of general laws.  It has no

 8    special privilege to invade the rights and liberties of others.

 9    Accordingly, enforcement of such general laws against the press

10    is not subject to stricter scrutiny than would be applied to

11    enforcement against other persons or organizations."

12          THE COURT:  That's all about in the context of the

13    Minnesota Doctrine of Promissory Estoppel, as you go on, quite

14    fairly, to note in your next paragraph.

15          MR. LANDAU:  Right.

16          THE COURT:  What they're saying is that the First

17    Amendment does not forbid application of the Minnesota Doctrine

18    of Promissory Estoppel to the press.

19          Well, that's all fine, but does that have to do with

20    the creation of a duty, not by the defendants who are alleged

21    here to have made the promise of confidentiality but on the

22    part of the third party, if you will, Univision, who you say

23    had a duty under New York law to investigate whether,

24    for example, the form that the plaintiff had signed was a

25    forgery or a real one, and, failing to carry out that duty,

1    they are guilty of negligence?

2          Where are you getting that from?

3          MR. LANDAU:  Your Honor, provided that -- let me refer

4    to -- your Honor, consistent with each of the cases that we

5    have cited, the duty is established based upon the

6    circumstances.

7          The circumstances were such that in this particular

8    situation, you had an individual that was made promises by one

9    of the defendants being CIR.  CIR had a relationship with

10   Univision.

11         A component of that relationship -- again, we have to

12   go through discovery to ultimately determine the extent of

13   Univision's actual knowledge.

14         But nevertheless, the type of documentation that was

15   presumably provided to Univision was so deficient to suggest

16   that had Univision, by extension through CIR and based upon

17   their own wrongdoing of the voiceover of the Spanish and then

18   later the broadcast that yielded over 4 million views, had they

19   had done just a little bit of due diligence, they would have

20   easily recognized that the signature provided on this purported

21   release was signed by a person whose name was misspelled and

22   not used by our client.

23         In addition to that, had Univision ventured to conduct

24   any type of investigation of their own, again, because of the

25   relationship they have with CIR and I would imagine others,

1   then they would have also recognized the fact that this was not

2   her handwriting and she never did consent.  Rather, the

3   opposite is true.

4          So we're not suggesting that there was some type of

5   misappropriation of the facts of the actual story or the

6   interview.  That was all conceded.

7          THE COURT:  All of this is premised and concluding

8   against the other defendants on publicizing her name; correct?

9          MR. LANDAU:  No.  Her identity.

10          THE COURT:  Her identity.  Excuse me.  Which is

11   another way of saying what?  Invasion of privacy.

12          MR. LANDAU:  No.  It's a bit more than that,

13   your Honor.  A document was manufactured giving CIR a right to

14   do something that they didn't have, and that document was this

15   release that was forged.

16          THE COURT:  The reason they didn't have that right you

17   say is because she had a right to privacy.

18          MR. LANDAU:  Well, she had an understanding with them,

19   an oral agreement, whereby she agreed to consent to the

20   interview on condition that her identity be concealed.

21          THE COURT:  So that's why you have a breach of

22   contract claim, for example.

23          MR. LANDAU:  Right.

24          THE COURT:  But now we're talking about negligence and

25   unjust enrichment.  You have no breach of contract claim

1    against Univision, and I don't see how you possibly could.  So

2    you were right not to bring that claim.

3           I don't think you're arguing that a third party can be

4    held negligent because it fails to do sufficient due diligence

5    to know that the party it's dealing with has breached a

6    contract with another party.

7           You're not claiming that, are you?  I didn't see

8    anything like that anywhere in your papers.

9           MR. LANDAU:  I'm sorry.  Can you --

10          THE COURT:  You're not claiming that the negligence

11   consists of a failure to detect a breach of contract.

12          MR. LANDAU:  No.

13          THE COURT:  So the negligence comes about because you

14   are asserting, as I understand it, that she had, in your view,

15   a right to confidentiality, a right to privacy, which, if

16   Univision had done their job as you view it, they would have

17   detected what was being invaded through this sham of a forged

18   agreement, yes?

19          MR. LANDAU:  Yes and beyond that.  So, for instance --

20          THE COURT:  What's beyond that?  The reason I raised

21   it that way is, aside from the lack of any case law that I

22   think directly supports that, New York has a privacy statute --

23   New York's fundamental law is there's no common law right of

24   privacy on which you would bring a negligence claim, but it has

25   a statute that says when you can bring a claim for invasion of

1   privacy, and I don't see how that statute applies to this case.

2          MR. LANDAU:  Your Honor, consistent with the three

3   cases cited as well as in this case, there were affirmative

4   actions that were taken on behalf of each and every one of

5   those defendants.

6          They had intentionally broke promises in some regard.

7   With respect to Cohen, they published the individual's name.

8   With respect to Doe, the victims of rape were recognizable.

9   With respect to even Anderson, there were issues with the HIV

10  patient where you could see that person's face rather clearly.

11         It's really no different in this case.  Because there

12  was a document that was created by the defendants, because this

13  document was --

14         THE COURT:  Not by Univision.

15         MR. LANDAU:  Pardon?

16         THE COURT:  Not by Univision.

17         MR. LANDAU:  Not by Univision, but Univision was

18  complacent in its creation because --

19         THE COURT:  That's the issue.  Did they have a duty of

20  inquiry or care with respect to that document; and, more than

21  that, it's not the document per se because that would be

22  meaningless if it was only a breach of contract.

23         But you say there's an underlying tort, which, it

24  seems to me, has to be an invasion of privacy if it's anything.

25         MR. LANDAU:  They created the dangerous situation, and

1    by creating the dangerous situation, they themselves had

2    participated in the general wrongdoing.

3            THE COURT:  The dangerous situation arises from her

4    being identified.

5            MR. LANDAU:  Yes.

6            THE COURT:  So it again traces back to privacy, yes?

7    If I was a notorious witness, I was Whittaker Chambers about to

8    testify against Alger Hiss -- I'm taking an example that I'm

9    the only one old enough in this room to remember it -- and some

10   newspaper ran a big story about Whittaker Chambers, there's no

11   tort committed there even though that might have led to a

12   thousand people sending hate letters to Whittaker Chambers or

13   even some nut trying to kill him.

14           But what she had was her privacy, which she sought to

15   maintain through the agreement with CIR, yes?

16           MR. LANDAU:  Yes, but in this case the conduct was

17   more egregious than just simply an invasion of privacy.  The

18   conduct was such that they created the dangerous event

19   themselves.

20           The second CIR --

21           THE COURT:  In what way?  Again, if instead of it

22   being a confidential matter everyone knew before any of this

23   aired that she was the one who was the relevant witness or

24   relevant informant, you couldn't say that this created -- or,

25   if they did, it was only by exercising their First Amendment

1    right to publicize something that was obviously newsworthy.

2         So it still seems to me it traces back to, A, a breach

3    of contract; B, an invasion of her privacy where I'm not seeing

4    how Univision has liability under these facts and circumstances

5    under New York law.

6         MR. LANDAU:  Beyond just what your Honor has stated,

7    there's also fraud.

8         THE COURT:  I'm sorry?

9         MR. LANDAU:  There's also fraud.

10        THE COURT:  Fraud by?

11        MR. LANDAU:  Fraud by CIR, manufacturing the document.

12        THE COURT:  Yes, but that's CIR.

13        MR. LANDAU:  Right.  But based upon Univision's

14   partner, which is CIR, based upon their relationship, based

15   upon the dangerous situation that was created in tandem between

16   the two companies, Univision has an explosion of views.

17        That was presumably as a result of creating an

18   exclusive interview because no one else has ever had an

19   interview with her identity, and no one else will.

20        It's beyond just a tacit complacency.  It goes to the

21   relationship that was created, the danger that was established

22   and reinforced by Univision's act.

23        THE COURT:  I have held your feet to the fire for a

24   few minutes.  Let me turn to your adversary.  We'll come back

25   to you in a few.

1                    MR. LANDAU:  Thank you, your Honor.

2                    THE COURT:  I'm not sure I need to hear from CIR.  Why

3    are you standing up?

4                    MS. SCHARY:  We were the ones opposing the remand by

5    arguing --

6                    THE COURT:  I really think the real party in interest

7    here is Univision; right?  If there is a claim against

8    Univision, then you would agree, would you not, there has to be

9    a remand?

10                   MS. SCHARY:  If there is a possibility of recovery on

11   a claim, yes.  I would say also, yes.  The standards are not

12   quite the same.  If there is no claim against them for

13   fraudulent joinder purposes, that would also take care of that.

14                   THE COURT:  I think that part of your argument is

15   undisputed, undisputable.  You have the great pleasure then of

16   sitting down.

17                   MS. SCHARY:  Thank you, your Honor.

18                   MR. BABCOCK:  Your Honor, on the remand very briefly,

19   I don't know what this all means except that there was a

20   document filed in early July.  It's document 27.

21                   In that the plaintiff indicated that at the time of

22   this lawsuit and at the time of the removal, actually at all

23   times until the present, the plaintiff was a resident of the

24   Commonwealth of Massachusetts.

25                   They concede that CIR is a California corporation and

1   that Univision is a New York corporation.  Actually, it's

2   Delaware with principal place of business here, and that the

3   removal papers indicate Livesey, an individual producer for

4   CIR, is a Canadian, and Hooper, another producer is California.

5          THE COURT:  The whole issue is whether Univision has

6   been properly joined or whether that is just a make-way that

7   would defeat diversity.

8          MR. BABCOCK:  Except the Court -- whether we were

9   fraudulently joined or not, they can't defeat diversity.  You

10  have complete diversity.  You have subject matter diversity.

11         THE COURT:  No.  Let's look at 28 U.S. Code, Section

12  1441.

13         MR. BABCOCK:  I hate it when we have to look up the

14  law, Judge.

15         THE COURT:  I know.  It says, 1441(b), removal based

16  on diversity of citizenship, subsection 2, "A civil action

17  otherwise removable solely on the basis of the jurisdiction

18  under Section 1332 of this title may not be removed if any of

19  the parties in interest properly joined and served as

20  defendants, is a citizen of the state in which such action is

21  brought."

22         MR. BABCOCK:  By removal jurisdiction.  Correct.

23         THE COURT:  So maybe I'm missing your point.  If

24  Univision is a citizen of the state in which this action is

25  brought --

1          MR. BABCOCK:  We did not remove it.

2          THE COURT:  So you're saying -- I'm sorry.  I'm a

3    little slow.  You're saying that since the purpose of that

4    section that I just read is that a party who's a resident of a

5    state can't complain that the plaintiff has placed this action

6    in that state, they can't remove it.

7          But, in a case where there is complete diversity and a

8    party that is from out of state, fearing all the issues that

9    gave rise to diversity jurisdiction removes, that cannot be

10   defeated by remand on the basis of 1441(b)(2) if they were not

11   the party that removed them.

12         MR. BABCOCK:  I would go one step further and say that

13   it especially cannot be remanded if the plaintiff, in seeking

14   to remand, doesn't mention in any way 1441(b)(2).

15         In other words, the issue has not been joined.  That

16   seems to me it might have been waived.  It doesn't affect the

17   subject matter of this Court because there is complete

18   diversity.

19         THE COURT:  I must admit that I didn't think that all

20   through.  That's a very interesting point.  I'll hear from

21   plaintiff in a few minutes on that.

22         So if that's the case, the motion to dismiss is really

23   separate from the issue of remand so that even if I were to

24   determine that there was some at least colorable claim against

25   Univision, I would still not remand.

1          MR. BABCOCK:  Correct.  That's what I believe.

2          THE COURT:  So I will hear from plaintiffs' counsel in

3  a minute.  Let's go to your motion then.

4          MR. BABCOCK:  Yes, your Honor.  The Court said to

5  counsel where are you getting the negligence.  I thought the

6  Pulka decision out of the Court of Appeals where it said

7  negligence in the air won't due.

8          And it seems to me that under these facts, that's

9  where they're trying to get it, saying up here somewhere

10  there's negligence, because the pleadings are quite specific

11  that all of the negotiations that took place in this case were

12  between the plaintiff and CIR, either through one or the other

13  of the producers.

14          It says that they contacted them; that they went down

15  to Texas and met with her; that all the communications were

16  with them.  And under these circumstances, it doesn't seem to

17  me that there can be a negligence cause of action.

18          We've cited the Court more than three cases, three

19  New York cases, and a bunch of other cases.  It may be that if

20  we were the person making the promise or allegedly making the

21  promise, there might be some issue.

22          But we're not.  The pleading doesn't say we're the

23  person making the promise.  In fact, they plead that they took

24  this fraudulent, allegedly fraudulent, concept form and peddled

25  the program to us by using this fraudulent concept form.

1          THE COURT:  They seem to be alleging in their amended

2     complaint, not in these words, a closer relationship between

3     your client and CIR.

4          I think their argument is this was a situation fraught

5     with very nature potential physical harm; that the harm

6     ultimately would be caused by the widespread distribution that

7     was accomplished through your client; and that in a

8     circumstance of such grave potential, literally life-and-death

9     potential, you had a duty to at least make some modest

10    inquiries which, under their theory, if you had done, you would

11    have seen immediately that she hadn't consented.

12         What about all that?

13    MR. BABCOCK:  Well, it all gets back to whether we had

14    a duty in the first place.  What if there hadn't been a consent

15    form?  What if they had just, as is typical in a syndicated

16    television program arrangement, we just get the product, and we

17    translate it into Spanish and put it on our network.

18         There's certainly no duty that we have obtained a

19    consent form.  So if we don't have a duty to obtain a consent

20    form, we don't have a duty to read the consent form and make

21    sure the ink is of the same color, which is one of their

22    complaints.

23         THE COURT:  I just barely looked at the new cause of

24    action.  What about the unjust enrichment cause of action?  I'm

25    going to give both sides a chance to do a little briefing on

1    that.  I thought since you were all here today, we might as

2    well at least raise it.

3            MR. BABCOCK:  Yes, your Honor.  I think that the

4    unjust enrichment cause of action is predicated on the

5    negligence.

6            As the Court knows, there are three elements that the

7    defendant was enriched at the plaintiff's expense, and the

8    circumstances are such that an equity and good conscience the

9    defendant should be compensating the plaintiff.

10           I believe you said in one of your opinions, TPT CCNY,

11   the way you satisfied, from a pleading standpoint, the third

12   element is that is there a contract between the plaintiff and

13   Univision or is there at least a disputed contract.  There's

14   not one here.

15           Did the plaintiff perform services for Univision?  No.

16   Did the plaintiff not perform services at Univision's behest?

17   Did Univision assume an obligation to pay for services?  None

18   of those are even pled here.

19           Something is very interesting.  They've added an

20   unjust enrichment against both CIR and us.  If you look at

21   paragraph 89, which is the unjust enrichment claim against CIR,

22   they say that it was done at the behest of CIR, which is one of

23   the things that typically you see the in New York cases about

24   unjust enrichment.

25           But then when you get over to the amended complaint,

1    paragraph 107, which is the unjust enrichment claim against

2    Univision, you see that that language has been omitted.  It has

3    been eliminated.  Instead they say that we were negligent.

4            Even assuming that negligence would invoke the Court's

5    equitable powers in what is essentially a quasi-contract cause

6    of action --

7            THE COURT:  I want to hear from plaintiff on this too.

8    As I say, I will give both sides to put in some briefing on

9    this.  The common-law term for unjust enrichment was quasi

10   contract.

11           Its whole common-law development was there will be

12   situations where technically it doesn't qualify for breach of

13   contract.  There wasn't adequate consideration or there was a

14   statute of frauds problem or whatever, but there has been the

15   functional equivalent of a breach of contract.  So equity, in

16   all its glory -- we'll give you some money for that.

17           This is clearly not quasi contract in any sense.

18   There was no contract involving even a hypothetical equitable

19   contract between your client and the plaintiff.  I leave that

20   for plaintiff to respond to in a minute.

21           Is there anything else you want to raise?

22           MR. BABCOCK:  The only thing I want to say about the

23   Cohen v. Cowles Media, which counsel relied on pretty heavily,

24   that was a case, as the Court indicated, where Minnesota Law of

25   Equitable Estoppel faced a First Amendment challenge.

```
 1              And the United States Supreme Court said that the

 2    First Amendment had nothing to say about this because laws of

 3    general application don't get trumped by the First Amendment

 4    just because the media is a defendant.  It really has nothing

 5    to say about this situation.

 6              The court in Cohen said there's another

 7    well-established line of cases that when a claim is

 8    masquerading as a defamation, correction, or for privacy in

 9    other states, Minnesota, not New York, but masquerading as a

10    defamation case, as this one is really, because their damages

11    they say are humiliation and emotional distress, then you can't

12    circumvent the First Amendment protections that New York Times

13    v. Sullivan and Gertz v. Welch and all those First Amendment

14    cases attach to common law state-created torts.

15              That is more the line of cases that we are on here

16    than the Cohen case, at least in Univision's position, because,

17    again, as the Court pointed out to plaintiff's counsel,

18    Univision made no promises to anyone.

19              So the Anderson case doesn't apply because there the

20    garnett reporter in Rochester made a promise to the patient,

21    just as the hospital did.

22              In Cohen, the reporter, the defendant reporter, made a

23    promise to the PR guy of the political candidate, but that's

24    not what Univision did here.

25              So the cases that they rely on -- Doe v. ABC, the same
```

1    thing.  The reporters allegedly made the promise.  That

2    distinguishes that from what Univision faces here.  That's all

3    I have, your Honor.  Thank you.

4           THE COURT:  All right.  Thank you so much.

5           Let me hear from plaintiff's counsel.

6           MR. LANDAU:  Your Honor, I like and respect

7    Mr. Babcock.  I have no idea where some of those arguments were

8    just coming from.  They were not included in the motion or the

9    response.

10          THE COURT:  As I say, I'm going to give both sides --

11          MR. LANDAU:  I can't speak as to what he just stated.

12   All I can speak to is to what was previously alleged.

13          THE COURT:  Let me say I will give, to repeat again,

14   full opportunity for everyone to put in additional briefing.

15          When he talked about 1441(b)(2), it frankly struck a

16   vague memory.

17          MR. LANDAU:  With respect to 1441(b)(2), CIR -- I'm

18   sorry.  Counsel for CIR has accepted receipt and is apparently

19   duly defending Bruce Livesey and Josiah Hooper.  Those are

20   other defendants that were producers.

21          THE COURT:  The question is in a case where there is

22   complete diversity because each of the parties is from

23   different states, which is the situation here, and a party that

24   is not located in the forum removes, then in that case, the

25   argument is he says it can't be remanded.

 1                Now, I'm not sure he's right.  The words of the

 2     statute don't play that way.  But it says a civil action

 3     otherwise removable solely on the basis of jurisdiction under

 4     Section 1332(a) of this title may not be removed -- it doesn't

 5     talk about remand -- may not be removed if any of the parties

 6     in interest properly joined and served as defendant is a

 7     citizen of the state in which such action is brought.

 8                So, on the plain language, he would seem to be wrong.

 9     It would seem to be that it was improperly removed, albeit it

10     was CIR that removed it.

11                His argument, at least as I'm perhaps recharacterizing

12     it, is that the purpose of that section is to make sure that a

13     party that's resident in the forum state doesn't remove because

14     why should that party have any basis to complain that the

15     action was brought in their own state when, after all, the

16     ultimate purpose of diversity jurisdiction is to do away with

17     the problem of local prejudice.

18                So his argument is if someone other than the New York

19     party removes the action, then it can't be remanded,

20     notwithstanding that one of the parties could not have removed

21     it because of they were in the forum state.

22                Now, I think we need briefing on this.  I don't recall

23     this being briefed in the papers.  Maybe it was.  I had assumed

24     from the plain language of the statute that removal was

25     improper in this case unless the claims against Univision were

1    not frivolous, certainly sufficiently close to frivolous that

2    the fraudulent joinder type of doctrine would come into play so

3    that it was closely linked with his motion to dismiss though

4    not the same standard.

5          At least we have to address that issue now that he's

6    raised it.

7          MR. LANDAU:  Your Honor, with respect to 1441(b)(2),

8    it is an interesting issue.  I'm happy to brief it.  I'd prefer

9    not to comment in open court.

10          THE COURT:  That's fine.  As I said, I don't think it

11    was raised earlier.  If it was, I missed it.  If I missed it,

12    you might have missed it.

13          MR. LANDAU:  Exactly.

14          THE COURT:  So now we're back to the issue that has

15    been raised before.  Do you want to say anything on unjust

16    enrichment?  I'm going to give you a chance to brief that too.

17          This much I feel quite confident about, which does not

18    mean it's the entire story, but it's certainly a quasi

19    contractual cause of action.

20          MR. LANDAU:  Your Honor, there was a basis for us

21    bringing it.  I do not have the case law in front of me.

22    However, provided that there is another motion to dismiss,

23    we're happy --

24          THE COURT:  It's not another motion.  I'm going to

25    deem the existing motion to be addressed to the amended

 1    complaint as well.

 2            MR. LANDAU:  Okay.

 3            THE COURT:  I'll give both sides a chance to fully

 4    brief the new issues.

 5            MR. LANDAU:  Thank you, your Honor.  What I would say

 6    is that the arguments asserted today by defense counsel follow

 7    a bit different line or theory than the actual allegations

 8    reflect.

 9            The nature that Univision's liability or culpability

10    is attenuated as unjust enrichment as it is if negligence is

11    established, they're not mutually exclusive claims.  An

12    innocent party can be enriched just as much as a party that

13    commits wrongdoing.

14            So, as far as that's concerned, it's a bit different,

15    as far as what the argument was by defense counsel as opposed

16    to what's actually pled in the amended complaint.

17            THE COURT:  Unless there is anything further you want

18    to say now, I want to ask CIR's counsel something.

19            MR. LANDAU:  Your Honor, may I just address one thing?

20            THE COURT:  Yes.  Go ahead.

21            MR. LANDAU:  There were a couple of issues that were

22    not briefed by defense counsel in their arguments to the Court.

23    There were also a few things that were borderline

24    misrepresentations as to what was actually alleged in the

25    complaint and the amended complaint for that matter.

 1            Defense counsel indicated that their negligence does

 2    not spawn from anything internal.  What I would suggest is then

 3    how did they even become aware of the story.  If they didn't do

 4    anything, if they didn't have any conversations, if they

 5    weren't knowledgeable, then how did they get the story.

 6            They got the story because they have an affirmative

 7    relationship whereby they are actually participating in the

 8    decision-making process to broadcast a variety of news

 9    programs.

10            THE COURT:  I'm not sure I follow that argument.  So

11    every day you'll see in newspapers throughout the land, in both

12    their print and online editions, stories that were written by

13    the AP or by Reuters.

14            Are you saying that the mere fact that the

15    Philadelphia Inquirer publishers a story that was written by

16    the AP and then picked up throughout a long-term contract by

17    the Philadelphia Inquirer or the Chicago Tribune or the San

18    Francisco Chronicle or whatever -- that that creates -- that

19    fact creates --

20            MR. LANDAU:  No, your Honor.  We're suggesting that,

21    because of the unique relationship between CIR and Univision,

22    because there was a deliberative process that took place

23    between these two news organizations, because there was the

24    additional activity of Spanish voiceovers, the additional

25    activity of promoting viewership for a particular report, that

1    they created the duty based on the circumstances.

2        In Cohen, which they themselves cited in their

3    response brief, they indicated -- and I quote -- "The parties

4    themselves, as in this case, determined the scope of their

5    legal obligations, and any restrictions that may be placed on

6    the publication of truthful information are self-imposed."

7        Well, if the Court is inclined to accept their

8    argument, then basically what their suggesting is that

9    Univision can do whatever they want.  It's just all

10    discretionary.  We vigorously oppose that notion.

11        The fact that even if we were to accept, which we

12    don't, even if we were to accept that Univision had no idea

13    what was going on, then that's negligence also because of the

14    type of relationship they had and the type of dangerous

15    situation they created.

16        So to have a hypothetical of generality doesn't

17    necessarily do this particular situation justice, and what we

18    are alleging is one of specificity, that in these particular

19    circumstances, in these particular facts, there was negligence

20    and unjust enrichment.

21        It's easy to make the philosophy ambiguous because

22    there isn't a bright line area of law that addresses this

23    specifically, but you're dealing with a situation that was

24    created by the defendants, not the other way around.

25        So to suggest that the premise or the underlying

 1   claims that the Court had questioned earlier, as far as

 2   invasion of privacy, this case doesn't deal specifically with

 3   invasion of privacy.

 4           It deals with the fraud.  It deals with the breach of

 5   contract.  It deals with the type of damages that have been

 6   alleged.  That goes well beyond the just happenstance that

 7   invasion of privacy seeks to address.  These were deliberate

 8   acts by each and every one of the defendants.

 9           THE COURT:  Thank you very much.

10           MR. LANDAU:  Thank you, your Honor.

11           THE COURT:  Let me turn to counsel for CIR.

12           So you were the ones who actually removed this action,

13   yes?

14           MS. SCHARY:  Yes, your Honor.

15           THE COURT:  It wasn't your position that it didn't

16   matter that one of the parties was a New York party if a

17   non-New York party was removing.

18           Your position, at least as I understood it, was you

19   could still remove because the New York party had been

20   fraudulently joined or something equivalent to that; correct?

21           MS. SCHARY:  Yes, your Honor.  I would also point out

22   that, as Mr. Babcock had noted, at the time the complaint was

23   filed, plaintiff didn't actually indicate where her domicile

24   was.  So we could not say necessarily that she was not a

25   New York citizen at the time.

 1          THE COURT:  You don't agree with Univision's new

 2   argument?

 3          MS. SCHARY:  I would like the opportunity to look into

 4   it further.  It certainly is a boon to us if that is correct.

 5   I am certainly not going to disagree.  I would certainly

 6   welcome the opportunity to look into it.

 7          THE COURT:  You're going to have that opportunity.

 8          Now let me go back finally to Univision's counsel.

 9   When I look again at the language of 1441(b)(2), I don't see

10   any language referring to remand.

11          What I see is that you can't remove, may not be

12   removed, if any of the parties in interest properly joined and

13   served as defendant is a citizen of the state of which such

14   action is brought.

15          Isn't the plain language contrary to the argument you

16   just made?

17          MR. BABCOCK:  Your Honor, it does sound like it.  I

18   probably wandered into an area I probably shouldn't have.  The

19   way this whole thing developed is what has led me to say what I

20   said, because when the motion to remand was filed -- that's

21   document 26, which was filed on July 1 -- they were taking the

22   position -- the plaintiff was taking the position then at page

23   8 of 13 that there wasn't a dispute Univision as a citizen of

24   New York is "a proper party to the action, its presence

25   destroys diversity citizenship and thereby deprives the

1    district court of subject matter jurisdiction."

2            THE COURT:  So it doesn't destroy diversity.  It

3    destroys, it would seem, based on the plain language of what we

4    just referred to, the ability to remove.

5            MR. BABCOCK:  Yes.  I think it's the difference

6    between subject matter jurisdiction and removal jurisdiction.

7    The statute, 1441(b)(2), is -- I've seen it referred to as

8    removal jurisdiction.

9            I think the reason why CIR couched their removal the

10   way they did was because they didn't know the citizenship of

11   the plaintiff.  It wasn't alleged, and we didn't know.  So they

12   couched it the way they did.

13           Seven days after this document that I just read, which

14   is questioning the Court's subject matter jurisdiction, they

15   file something that says, oh, she's been a Massachusetts

16   resident, a citizen of Massachusetts, all along.

17           So we do have complete diversity.  So the Court has

18   subject matter jurisdiction.  I say that they waived the

19   1441(b)(2) argument because they didn't raise it.  I think that

20   that is something that is waivable.

21           THE COURT:  So your argument now, as I understand it,

22   is they could have objected to removal on the basis of

23   1441(b)(2).  They did not object on that ground.  They objected

24   on 1332 grounds.  1332 grounds are not waivable, but they are

25   wrong on that, you say.

 1                MR. BABCOCK:  Right.

 2                THE COURT:  But 1441(b)(2) is waivable, and they

 3     waived it by not raising it at the time of removal.

 4                MR. BABCOCK:  Yes, sir.

 5                THE COURT:  That's an interesting argument.  All

 6     right.  I have another matter that I have to get back to.  So

 7     let me call a halt to this interesting argument and say I will

 8     allow each of the parties to put in additional -- I'm going to

 9     deem this motion as a motion directed towards the amended

10     complaint.

11                Each side can put in papers of no more -- the initial

12     papers of no more than 15 double-spaced pages on any subject

13     you want to address of the innumerable ones that have come up

14     today.

15                But, by keeping to 15 pages, you'll hopefully take

16     your best shots.  And then there will be everyone can file

17     reply papers.  So we need -- the reply papers will be ten

18     pages, double spaced.  So we need two dates.

19                I'd like to suggest -- but tell me if this presents a

20     problem -- that the first set of papers, the 15-page papers,

21     would be by the end of this week and that the answering papers,

22     responsive papers, would be by Wednesday of the following week.

23                So to put dates on that, that would be the 15-page

24     papers by July 29.  The responding papers by August 3.  That

25     would allow me, because I think -- I always hate to have these

1    kinds of motions hanging out there to decide the many

2    interesting issues presented by no later than August 10.  I

3    would propose to stay everything but just through August 10.

4          So does that work for everyone?  I'm looking at a 2016

5    calendar.  Yes.  I'm sorry.  So it's the 31st and the 5th.  I

6    would decide it by the 12th.

7          MR. LANDAU:  Your Honor, may we have the weekend and

8    say due by Monday or Tuesday?

9          THE COURT:  Okay.  That's fine.  I'll call them your

10   moving papers, the 15-page papers, by August 3.  In that case,

11   answering papers, the 10-page papers, by August 7.  And I will

12   decide the motions by August 14.

13         MR. LANDAU:  Thank you, your Honor.  Are we going to

14   reschedule oral arguments?

15         THE COURT:  No.

16         MR. LANDAU:  Okay.  Thank you.

17         THE COURT:  Does anyone have any other problems with

18   anything?  Very good.  Thanks so much.

19         MR. BABCOCK:  Thank you, your Honor.

20         MS. SCHARY:  Thank you, your Honor.

21         (Adjourned)

22

23

24

25