UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
ERICA ALMECIGA,                           :
                                          :
                                          :    15-cv-4319 (JSR)
          Plaintiff,                      :
                                          :    MEMORANDUM ORDER
          -v-                             :
                                          :
CENTER FOR INVESTIGATIVE REPORTING,       :
INC., UNIVISION COMMUNICATIONS, INC.,     :
UNIVISION NOTICIAS, BRUCE LIVESEY, and    :
JOSIAH HOOPER                             :
                                          :
          Defendants.                     :
------------------------------------------x

JED S. RAKOFF, U.S.D.J.

     On April 22, 2015, plaintiff Erica Almeciga filed this action

in New York Supreme Court against defendants Center for

Investigative Reporting, Inc. ("CIR"), Bruce Livesey, Josiah Hooper,

Univision Communications, Inc., and Univision Noticias, asserting

breach of contract and fraud claims against CIR, Livesey, and Hooper

and a claim of negligence against Univision Communications and

Univision Noticias (together, "Univision"). On June 4, 2015, CIR,

with the consent of Hooper and Livesey, removed the action to this

Court on the basis of diversity jurisdiction and the assertion that

Univision Communications and Univision Noticias, both of which are

citizens of the forum state, were fraudulently joined to this

action. See 28 U.S.C. § 1441(b)(2). Now before the Court are

Almeciga's motion to remand to state court and for attorneys' fees

and expenses pursuant to 28 U.S.C. § 1447(c) and Univision's motion

to dismiss Univision for failure to state a claim.

1

The relevant allegations, which the Court accepts as true for purposes of the pending motions, are as follows. Defendant CIR is an investigative reporting organization that creates video reports about, among other topics, criminal justice, money, politics, and government oversight. Notice of Removal, Ex. 1 ("Complaint"), ¶ 2. Defendant Univision Communications is a multi-media corporation and owner of defendant Univision Noticias, an American Spanish-language television network. Id. ¶ 3. In 2012, Univision and CIR entered into a "partnership" pursuant to which CIR "agreed to provide Univision with access to CIR stories and documentaries focusing on Latin America." Id. ¶ 4.

In March 2012, defendant Livesey contacted Almeciga in connection with Livesey's production of a video report for CIR entitled "I Was A Hitman For Miguel Trevino." Id. ¶ 9. The subject of the video was Almeciga's romantic partner, Rosolio Reta, an inmate at Woodville Penitentiary in Texas and a former member of the Los Zetas Drug Cartel (the "Zetas Cartel"), a drug trafficking organization that is "among the most brutal in all of Mexico." Id. ¶¶ 8, 27. Almeciga had initiated contact with Reta in 2008 through written correspondence, and what started as a friendship eventually blossomed into an "unlikely romance." Id. ¶¶ 7-8. As their relationship developed, Almeciga took charge of handling interview requests directed at Reta and also started participating in interviews herself. Id. ¶¶ 8, 11.

2

After some back and forth concerning logistics, id. ¶ 10, Almeciga met with Livesey and his co-producer, defendant Hooper, for an interview on August 14, 2012. Id. ¶ 15. Almeciga conditioned her participation "upon the explicit requirement" that Livesey and Hooper conceal her identity,[1] which they agreed to do. Id. ¶ 14. The interview, in which Almeciga "condemn[ed]" the Zeta Cartel and its leader, was later incorporated into the video report about Reta. Id. ¶¶ 22; 77.

Almeciga alleges that, notwithstanding Livesey's and Hooper's promise to keep her identity secret, CIR created a contractual release that allowed disclosure of Almeciga's identity and then forged her signature to it. Id. ¶ 46. The release was not notarized; Almeciga's name is spelled incorrectly; and the handwriting, as well as the ink used to sign the document, differs from section to section. Id. ¶ 76. According to the complaint, CIR created the forged release so that CIR could use the "unconcealed interview . . . and so that [it] could sell, and/or license, the Report to Univision." Id. ¶ 46.

CIR and Univision then posted the video report to their respective YouTube channels. Id. ¶¶ 19-20. It has since been viewed over 250,000 times on CIR's channel and over 3,000,000 times on Univision's. Id. ¶ 29. Almeciga alleges that, as a result of the

---

[1] Almeciga's complaint references one other video interview that she gave, and in that interview, her face was blurred to hide her identity. See Complaint ¶ 12.

disclosure of her identity, she now lives with fear of reprisal from the Zetas Cartel. Id. ¶ 31. She has "move[d] to different locations in an effort to avoid interaction with outsiders" and has developed paranoia, depression, and Post Traumatic Stress Disorder. Id. ¶ 32. CIR and Univision, relying on the release, have refused to take down the videos. Id. ¶¶ 33-34.

Turning now to Almeciga's motion to remand, removal of a state-court action on the basis of diversity jurisdiction requires not only diversity between the opposing parties but also that no "properly joined" defendant is a citizen of the forum state. See 28 U.S.C. § 1441(a),(b)(2). Here, there is no dispute that complete diversity exists: Almeciga is a citizen of Massachusetts, see Plaintiff's Rule 81.1 Notice of Domicile, ECF Dkt. No. 27; CIR and Hooper are citizens of California, see Notice of Removal ¶¶ 18-19; Livesey is a citizen of Canada, see id. ¶ 20; and Univision Communications and Univision Noticias are citizens of New York, see id. ¶ 13. The question for the Court, therefore, is whether the in-state defendants, Univision Communications and Univision Noticias, were "properly joined." 28 U.S.C. § 1441(b)(2).[2]

---

[2] CIR asserts that Almeciga waived her right to seek remand on the ground that Univision is a citizen of the forum state because she failed to specifically cite § 1441(b)(2) in her initial motion papers and asserted that Univision's presence "destroys diversity citizenship," Plaintiff Erica Almeciga's Reply to Defendants CIR and Univision Supplemental Memorandum of Law, ECF Dkt. No. 26, at 8, which CIR interprets as communicating an argument based on a lack of complete diversity. While Almeciga's word choice and citations leave something to be desired, the Court finds no waiver here. The thrust

Under the doctrine of "fraudulent joinder," courts will overlook the presence of a defendant who defeats removal only when "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against [that] defendant in state court." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460-61 (2d Cir. 1998). "The defendant bears the heavy burden of proving this circumstance by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff." Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 302 (2d Cir. 2004). Thus, Courts examining a complaint to determine whether a party has been "fraudulently" joined will subject the complaint "to less searching scrutiny than on a motion to dismiss for failure to state a claim." Intershoe, Inc. v. Filanto S.P.A., 97 F. Supp. 2d 471, 474 (S.D.N.Y. 2000).

After exercising such scrutiny, however, the Court determines that a finding of fraudulent joinder must be made because there is "no possibility" that Almeciga can assert a claim for negligence against Univision under New York law. See Pampillonia, 138 F.3d at 460-61. "The threshold question in any negligence action is whether the alleged tortfeasor owes a duty of care to the injured party, and the existence and scope of that duty is a legal question for the courts to determine." Sheila C. v. Povich, 781 N.Y.S.2d 342, 347 (1st Dep't 2004) (citations omitted); see also Pulka v. Edelman, 40

---

of Almeciga's motion was that Univision's presence "as a citizen of New York" precluded removal. See id.

N.Y.2d 781, 782 (1976) ("In the absence of duty, there is no breach and without a breach there is no liability."). "[T]he boundaries of duty are not simply contracted or expanded by the notion of foreseeability." Palka v. Servicemaster Mgmt. Servs. Corp., 83 N.Y.2d 579, 586 (1994). Rather, "courts traditionally and as part of the common-law process fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." Id.

Here, Almeciga's complaint alleges that Univision owed a "duty to exercise a reasonable (or high) degree of care before airing an interview of Ms. Almeciga denouncing Los Zetas" and a "duty to contact Ms. Almeciga and get her actual consent before disclosing her name and/or identity and/or her story." Complaint ¶¶ 75, 77. Phrased as such, Almeciga asserts not so much a duty of care as an absolute duty to obtain "actual consent." Nevertheless, the Court takes Almeciga to be arguing that the subject matter of the report, a criticism of a dangerous drug cartel and its leader, should have put Univision on notice that disclosure of Almeciga's identity would potentially subject her to physical violence and that, under such circumstances, Univision owed her a duty to exercise reasonable care to ensure that she had, in fact, consented to appear in the report. Had Univision exercised such care, Almeciga asserts, it would have

6

discovered the allegedly obvious signs of forgery -- the misspelling of Almeciga's name and the different handwriting, Complaint ¶ 76 -- and sought to contact Almeciga directly.

Almeciga offers minimal support for her request that the Court impose this duty on Univision. Apart from a general appeal to the danger in which Univision allegedly placed her, but cf. Pulka v. Edelman, 40 N.Y.2d 781, 786 (1976) ("[A] moral duty should also be distinguished from a legal duty. . . . A person may have a moral duty to prevent injury to another, but no legal duty."), Almeciga primarily relies on three cases that she claims show that courts have imposed a duty on defendants in similar circumstances. See Cohen v. Cowles Media Co., 501 U.S. 663 (1991); Doe v. American Broadcasting Cos., 543 N.Y.S.2d 455 (1st Dept. 1989); Anderson v. Strong Memorial Hosp., 573 N.Y.S.2d 828 (Sup. Ct. 1991). Two of these cases do not discuss the issue at hand: Cohen addressed the First Amendment implications of a claim "under Minnesota law on a promissory estoppel theory," 501 U.S. at 666, and Doe is a summary affirmance related to a negligent intentional infliction of emotional distress claim that contains no legal analysis of whether a duty exists, see 543 N.Y.S.2d at 455. Further, the defendants in both cases held roles analogous to that of CIR, Hooper, and Livesey, that is, they were the ones who made the alleged promise of confidentiality to the plaintiff or plaintiffs harmed by the eventual disclosure. See Cohen, 501 U.S. at 667; Doe, 543 N.Y.S.2d at 455 (dissenting opinion).

The third case, Anderson v. Strong Memorial Hospital, does
address the existence of a duty, but, as in Cohen and Doe, the
defendants had made a promise to keep the plaintiff's identity
confidential. Anderson, who was HIV positive, agreed to allow his
picture to be taken for use in a news story about an AIDS research
center after a reporter and photographer promised him and his doctor
that the newspaper in which the story was to appear would conceal
Anderson's identity. See 573 N.Y.S.2d at 830. After the story was
published, Anderson contended that the newspaper failed to
adequately mask his identity, and he sued, among others, his doctor,
the hospital, and the newspaper for invasion of privacy and breach
of the physician-patient privilege. See Anderson v. Strong Mem'l
Hosp., 531 N.Y.S.2d 735, 737 (Sup. Ct. 1988).[3] The court dismissed
the causes of action against all defendants for invasion of privacy,
but the doctor and hospital were found liable for breaching the
physician-patient relationship. See Anderson, 573 N.Y.S.2d at 354.
The court then allowed the doctor and hospital to seek contribution
against the newspaper because the newspaper's "promise [of
confidentiality to Anderson and his doctor]. . . created an
affirmative duty to [the doctor and hospital]." 573 N.Y.S.2d at 830
(emphasis added). Because there are no allegations that Univision

---

[3] The court in Anderson handled the plaintiff's claims against the
defendants in one opinion, see Anderson v. Strong Mem'l Hosp., 531
N.Y.S.2d 735, 737 (Sup. Ct. 1988), and the doctor's and hospital's
claims against the newspaper in a separate opinion, see Anderson v.
Strong Memorial Hosp., 573 N.Y.S.2d 828 (Sup. Ct. 1991).

made any similar promise to Almeciga or to CIR,[4] <u>Anderson</u> lends

Almeciga no support.

In the absence of an express or implied contractual promise, if

any duty to maintain confidentiality is to be imposed, it should

stem from the relationship between the producer of the content and

the person demanding the right to consent, not solely from whether

the subject matter of the publication is sensitive.[5] <u>Cf.</u> <u>Watson v.</u>

<u>MTV Network Enter., Inc.</u>, No. 156523-12, 2013 N.Y. Misc. LEXIS 5099

at *8 (Sup. Ct. 2013) ("The complaint [for negligence] must be

dismissed against MTV for the independent reason that MTV was not a

party to the agreements [guaranteeing confidentiality] between

plaintiffs and [the production company]."). This places a reasonable

---

[4] Relatedly, the argument raised in Almeciga's supplemental brief
that the partnership agreement between CIR and Univision somehow
imposed on Univision a duty of care owes to Almeciga lacks merit.
See Plaintiff Erica Almeciga's Supplemental Memorandum of Law in
Opposition to Defendant Univision's Motion to Dismiss ("Pl.'s Supp.
Br."), ECF Dkt. No. 41 at 1-5. While it is true that a party to a
contract may owe a duty of care to a third party where the contract
"inure[s] to the benefit of" that third party, see White v.
Guarente, 43 N.Y.2d 356, 363 (1977) (internal citations omitted) --
and indeed that is arguably the implicit reasoning of the court in
Anderson -- the partnership agreement, as far as the allegations in
the Complaint show, is unconcerned with Almeciga. It is simply an
agreement pursuant to which CIR would create journalistic content
and Univision would have the right to purchase or license such
content; confidentiality, as far as the Complaint discloses, was not
a part of the agreement.

[5] This is not to say that such a duty does exist, a determination
that the Court need not make in this instance since Almeciga does
not assert that CIR was negligent. Nevertheless, the Court notes
that it would raise serious First Amendment concerns to, in effect,
allow the subject of a truthful report to hold a veto over the
dissemination of his or her identity where his or her identity is a
matter of public interest.

limit on to whom the duty applies -- only producers of content -- and a clear limit -- a duty that applies whenever an entity uses content produced by another that is "sensitive" or "risks danger" would necessarily yield uncertainty. Restricting the duty in this fashion would also impose it on the party in the best position to ensure consent: the producer, in most cases, will have access to the individual whose consent is needed and can, in turn, condition the purchase or licensing of the content on a similar, but contractual, duty of confidentiality.

The duty that Almeciga envisions, in contrast, would be unduly expansive. Any media entity reusing previously produced content would be forced to take steps to secure consent from all participants in the original production. Cf. Vaill v. Oneida Dispatch Corp., 493 N.Y.S.2d 414, 416 (Sup. Ct. 1985) ("With the volume of classified ads printed daily . . . a need for pre-publication telephone authentication -- surely involving multiple calls to make contact in at least some instances -- would impose an unreasonable burden."). Such a duty would not only substantially expand liability, but also result in considerable inefficiency, as each publishing entity would have to separately contact the source for consent.[6]

---

[6] This would, of course, burden the sources of information as well. Pity the person who gives a quote on the record to a news service such as the Associated Press or Reuters.

The Court's conclusion is also informed by the fact that New York does not recognize common law claims based on invasion of privacy. See, e.g., Delan by Delan v. CBS, Inc., 458 N.Y.S.2d 608, 612 (2d Dep't 1983). In lieu of a general common law cause of action, the legislature has crafted a narrow statutory right to seek redress for "[a]ny person whose name, portrait, picture or voice is used . . . for advertising purposes or for the purposes of trade without . . . written consent first obtained." N.Y. Civ. Rights Law § 51. Section 51 of the Civil Rights Law, as its text indicates, is aimed at proscribing the non-consensual use of a person's name or likeness for commercial reasons, and courts therefore recognize a "broadly construed" "newsworthiness exception" to its reach. See Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub., 94 N.Y.2d 436, 442 (2000) (per curiam). Courts have, as a result, rejected claims brought directly under Section 51 in factual circumstances similar to those here, see, e.g., Delan, 458 N.Y.S.2d at 614 ("Since the use of plaintiff's name and image was not for advertising purposes, or for purposes of trade, but rather was used in a documentary addressing a subject of legitimate public interest, the written consent of the plaintiff was not required."); Weil v. Johnson, No. 119431/02, 2002 WL 31972157, at *4 (N.Y. Sup. Ct. Sept. 27, 2002) (rejecting claim under privacy statute for allegedly non-consensual use of an interview),[7] and Almeciga concedes that she

---

[7] Although many cases in which plaintiffs claim a violation of § 51 involve situations in which there was no opportunity to give or

cannot maintain such an action. See Pl.'s Supp. Br. at 15. Allowing
her to pursue a negligence cause of action premised on a duty to
exercise reasonable care in obtaining consent would risk
circumventing Section 51. Cf. Valeriano v. Rome Sentinel Co., 842
N.Y.S.2d 805, 806 (4th Dep't 2007) (internal quotation marks and
alterations omitted).

    Thus, the Court concludes that no reasonable possibility exists
that Almeciga may recover against Univision based on the Univision's
alleged negligence in failing to secure her consent.

    The same day that briefing on Almicega's motion to remand was
completed, Almicega filed an amended complaint in which she asserts
a claim for unjust enrichment against Univision. See Amended
Complaint, ECF Dkt. No. 36, at 21. In the context of assessing
fraudulent joinder, courts frequently refuse to analyze "post-
removal filings . . . 'when or to the extent that they present new
causes of action or theories not raised in the controlling petition
filed in state court.'" Segal v. Firtash, No. 13 Civ. 7818, 2014 WL

refuse consent to the particular use, see, e.g., Lemerond v.
Twentieth Century Fox Film Corp., No. 07 Civ. 4635, 2008 WL 918579,
at *1 (S.D.N.Y. Mar. 31, 2008) (holding that newsworthiness
exception applied to plaintiff who was approached, without warning,
for on-street interview and ran away from the interviewer), that
only reinforces that it would be inappropriate to employ a different
rule in the circumstances presented here, where Almeciga was
afforded a clear opportunity to either obtain a guarantee of
confidentiality or decline to participate. Indeed, it is of some
significance that individuals in Almeciga's situation are not
without a remedy: Almeciga still retains an opportunity to seek
recovery from CIR, Hooper, and Livesey for fraud and breach of
contract.

12

4470426, at *4 (S.D.N.Y. Sept. 9, 2014) (quoting MBIA Ins. Corp. v.
Royal Bank of Canada, 706 F. Supp. 2d 380, 395 (S.D.N.Y. 2009)). But
even on the merits, Almeciga's unjust enrichment claim fails as
well. A plaintiff asserting unjust enrichment "must show that (1)
the other party was enriched, (2) at that party's expense, and (3)
that it is against equity and good conscience to permit [the other
party] to retain what is sought to be recovered." Mandarin Trading
Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (2011) (internal quotation
marks omitted). To plead the third prong, a plaintiff must allege
facts showing a sufficient relationship "between the parties that
could have caused reliance or inducement." Id.; see also Philips
Int'l Investments, LLC v. Pektor, 982 N.Y.S.2d 98, 100 (1st Dep't
2014).

　　　The New York Court of Appeals' decision in Georgia Malone & Co.
v. Rieder is nearly on all fours with the case here and counsels
rejection of Almeciga's claim. See 19 N.Y.3d 511 (2012). There,
plaintiff Georgia Malone & Co. ("Malone"), a real estate brokerage
and consulting firm, provided due diligence materials related a real
estate development deal to CenterRock Realty ("CenterRock"), a
developer. Id. at 514. In exchange, CenterRock agreed to keep the
diligence materials confidential and to pay a fee to the Malone if
CenterRock consummated the deal. Id. at 514. The deal fell apart,
and CenterRock subsequently sold the diligence materials, in
violation of the confidentiality agreement, to a different broker,
Rosewood Realty Group ("Rosewood".; Rosewood, in turn, used the

materials to facilitate a deal for the same properties and earned a

fee as a result, prompting the Malone's claim for unjust enrichment.

Id. at 515. The Court of Appeals affirmed the dismissal of the

unjust enrichment claim on the basis of a lack of a "sufficient

relationship" between Malone and Rosewood and, in a passage

particularly informative to the case at bar, explained its reasoning

as follows:

> [T]he relationship between Malone and Rosewood is too
> attenuated because they simply had no dealings with each
> other. . . . In particular, the complaint does not assert
> that Rosewood and Malone had any contact regarding the
> purchase transaction. And, although the complaint states
> that Rosewood "knew at all times" that Malone produced the
> due diligence reports and provided them to CenterRock with
> the expectation that it would be compensated in the event
> a purchase agreement was reached, there is no allegation
> that Rosewood was aware that Malone and CenterRock had
> agreed to the confidential nature of the due diligence
> information or that Rosewood knew that CenterRock had
> failed to pay Malone before the documents were conveyed to
> Rosewood. . . .
>
> Contrary to Malone's contentions, there is no claim that
> Rosewood had anything other than arm's length business
> interactions with CenterRock . . . . The pleadings do not
> implicate Rosewood in [CenterRock's] alleged wrongdoing.

Id. at 517-18 (footnote omitted) (emphasis added).

Almeciga asserts that the partnership between Univision and CIR

renders Georgia Malone distinguishable, but the allegations in the

Complaint (which, for these purposes, are the same as in the Amended

Complaint) preclude this argument. Just as in Georgia Malone, "there

is no allegation that [Univision] was aware that [Almeciga] and

[CIR] had agreed to the confidential nature" of Almeciga's

14

appearance. Id. at 518. Likewise absent is any allegation "that [Univision] and [Almeciga] had any contact regarding" the creation of the video report or was "implicate[d]" in CIR's "alleged wrongdoing." Id. Indeed, this case, notwithstanding the allegation concerning the existence of a partnership, is arguably even less amenable to a finding that Univision's enrichment was "unjust" because there is no allegation that Univision "'knew at all times'" that Almeciga participated in the interview "with the expectation that [she] would be compensated." Id. Hence, the Court concludes that there is no possibility that Almeciga could maintain an unjust enrichment claim against Univision.

Finally, Almeciga offers two alternative grounds to grant her motion to remand, both of which lack merit. First, she claims that CIR waived its right to remove this action when Univision filed a motion to dismiss in state court. See generally Hill v. Citicorp, 804 F. Supp. 514, 517 (S.D.N.Y. 1992) (addressing waiver of the right to removal). But Almeciga cites no authority for the proposition that a fraudulently joined defendant can, by seeking to extricate itself from a lawsuit in which it has no proper role, waive the removal rights of the remaining defendants, and the Court rejects it. Second, Almeciga argues that CIR, a citizen of California, qualifies as an in-state defendant whose presence precludes removal under 28 U.S.C. § 1441(b)(1) because New York's long-arm statute allows a New York court to exercise personal jurisdiction over CIR. Novel, but patently incorrect.

15

Accordingly, for the foregoing reasons, the Court denies
Almeciga's motion to remand the action to state court. A fortiori,
the Court denies Almeciga's request for attorneys' fees and expenses
and grants Univision's motion to dismiss with prejudice the claims
against defendants Univision Communications, Inc., and Univision
Noticias. The case against the remaining defendants will proceed in
accordance with the previously-entered Case Management Plan.

SO ORDERED

Dated:   New York, NY
         August 14, 2015

JED S. RAKOFF, U.S.D.J.

16