UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

―――――――――――――――――――――――――― x

ERICA ALMECIGA,                                    :
                                                   :
                    Plaintiff,                     :
                                                   :
         - against -                               :        Case No.: 1:15-cv-04319-JSR
                                                   :
CENTER FOR INVESTIGATIVE                            :
REPORTING, INC., UNIVISION                         :        Hon. Jed. S. Rakoff
COMMUNICATIONS, INC., UNIVISION                    :
NOTICIAS, BRUCE LIVESEY, JOSIAH                    :
HOOPER,                                            :
                                                   :
                    Defendants.                    :
―――――――――――――――――――――――――― x

## MEMORANDUM IN SUPPORT OF CIR'S MOTION FOR SANCTIONS

Thomas R. Burke (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 400
San Francisco, CA 94111
Phone:  (415) 276-6552
Fax:  (415) 489-9052

Jeremy A. Chase
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY  10020
Phone:  (212) 489-8230
Fax:  (212) 489-8340

Alison Schary
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006
Phone:  (202) 973-4248
Fax:  (202) 973-4448

*Attorneys for Defendants Center for Investigative
Reporting Inc., Bruce Livesey, and Josiah Hooper*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 4

ARGUMENT ...................................................................................................................... 12

I.   Legal Standard ........................................................................................................... 12

   A.   Rule 11 Allows the Imposition of Sanctions for Bringing Claims That Are Objectively
Unreasonable and for Failure to Conduct a Reasonable Inquiry ...................................... 12

   B.   The Court's Inherent Powers Permit the Imposition of Sanctions for Fraud Upon the
Court, Including Dismissal of the Action ........................................................................ 14

II.   This Court Should Impose Sanctions Against Both Plaintiff and Plaintiff's Counsel ......... 15

   A.   Sanctions against Plaintiff are appropriate because she has made knowingly false
allegations of fact and pursued claims that she knows to be baseless ............................ 15

   B.   Sanctions are appropriate against Plaintiff's counsel for failing to undertake a
reasonable investigation and for failing to withdraw this action when faced with clear
evidence of its frivolity ................................................................................................. 18

   CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brady v. United States*,
   877 F. Supp. 444 (C.D. Ill. 1994) ........................................................................14

*Brazilian Inv. Advisory Servs., Ltda. v. United Merchs. & Mfrs., Inc.*,
   123 F.R.D. 477 (S.D.N.Y. 1989) ..........................................................................18

*Brown v. Primerica Life Ins. Co.*,
   No. 02 C 08175, 2006 WL 5153076 (N.D. Ill. Apr. 29, 2006)..............................15

*Caisse Nationale de Credit Agricole-CNCA v. Valcorp*,
   28 F.3d 259 (2d Cir. 1994) ...................................................................................13

*Calloway v. Marvel Entertainment Group*,
   138 F.R.D. 646 (S.D.N.Y. 1991), *aff'd in relevant part*, 9 F.3d 237 (2d Cir.
   1993) .............................................................................................................16, 17, 19

*Ceglia v. Zuckerberg*,
   600 F. App'x 34 (2d Cir. 2015) ............................................................................17

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991).................................................................................................14

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990)..........................................................................................12, 13

*Dracz v. Am. Gen. Life Ins. Co.*,
   426 F. Supp. 2d 1373 (M.D. Ga.) *aff'd*, 201 F. App'x 681 (11th Cir. 2006) ...........15

*Eastway Constr. Corp. v. City of N.Y.*,
   762 F.2d 243 (2d Cir. 1985) ..................................................................................13

*Gambello v. Time Warner Commc'ns, Inc.*,
   186 F. Supp. 2d 209 (E.D.N.Y. 2002) ..................................................................13

*Gurary v. Winehouse*,
   235 F.3d 792 (2d Cir. 2000)..................................................................................18

*Healey v. Chelsea Resources, Ltd.*,
   947 F.2d 611 (2d Cir. 1991)..................................................................................18

*Jimenez v. Madison Area Tech. Coll.*,
   321 F.3d 652 (7th Cir. 2003) ................................................................................17

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*,
    191 F. Supp. 2d 440 (S.D.N.Y. 2002)..............................................................................14, 17

*NHL v. Metropolitan Hockey Club, Inc.*,
    427 U.S. 639 (1976)......................................................................................................14

*O'Brien v. Alexander*,
    101 F.3d 1479 (2d Cir. 1996)........................................................................................13

*Passlogix, Inc. v. 2FA Tech., LLC*,
    708 F. Supp. 2d 378 (S.D.N.Y. 2010)............................................................................14

*Pavelic & LeFlore v. Marvel Entm't Grp.*,
    493 U.S. 120 (1989)......................................................................................................17

*Perry v. S.Z. Rest. Corp.*,
    45 F. Supp. 2d 272 (S.D.N.Y. 1999)..............................................................................19

*Pope v. Fed. Express Corp.*,
    974 F.2d 982 (8th Cir. 1992) .........................................................................................18

*Rodriguez v. U.S. Bank, N.A.*,
    Civ. No. SA-12-CV-345-XR, 2013 WL 3146844 (W.D. Tex. June 18, 2013) ....................15

*Routh v. Bank of Am., N.A.*,
    No. SA-12-CV-244-XR, 2013 WL 4040753 (W.D. Tex. Aug. 7, 2013) ..............................15

*Scholastic, Inc. v. Stouffer*,
    221 F. Supp. 2d 425 (S.D.N.Y. 2002), *aff'd*, 81 F. App'x 396 (2d Cir. 2003)......................17

*Shangold v. Walt Disney Co.*,
    275 F. App'x 72 (2d Cir. 2008) .....................................................................................17

*Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*,
    186 F.3d 157 (2d Cir. 1999)..........................................................................................13

*Wheeler v. Olympia Sports Ctr., Inc.*,
    No. 03-265-P-H, 2004 WL 2287759 (D. Me. Oct. 12, 2004)..............................................15

**State Cases**

*Abdin v. Abdin*,
    94 Ark. App. 12, 223 S.W.3d 60 (2006)..........................................................................15

*Brown v. State*,
    No. 05-97-00289-CR, 1999 WL 61858 (Tex. App. Feb. 9, 1999) .........................................16

**Rules**

Fed. R. Civ. P. 11 ................................................................................................... *passim*

Fed. R. Civ. P. 12(c) ...........................................................................................18, 19

Defendant Center for Investigative Reporting, Inc. ("CIR") respectfully submits this Memorandum in Support of its Motion for Sanctions pursuant to Fed. R. Civ. P. 11(c).

## PRELIMINARY STATEMENT

This case centers on a 2012 interview that Plaintiff arranged, participated in, and promoted – and apparently now regrets. Now, several years later, she is trying to claim that CIR breached an "oral agreement" to conceal her identity in published footage of that interview. As Plaintiff is well aware, she never made any such request and there was no such agreement; to the contrary, she signed a general release of all claims (the "Release") in connection with her interview. Moreover, court records filed publicly by Plaintiff a year after the CIR interview – and shortly before the CIR Report was published – bear Plaintiff's signature in handwriting identical to the signature on the Release, confirming that her claims in this case are wholly fabricated.

Plaintiff's tale of a forged release and an express agreement to interview her while concealing her identity simply does not pass the smell test. Starting from the video itself, it is plain that Plaintiff's interview was recorded in full light – not behind a screen, in shadow, or with any indication whatsoever that reflected a prearranged understanding to conceal her identity. During the nearly 45 minutes of video footage from Plaintiff's interview, there is no reference whatsoever to concealing Plaintiff's face, or to Plaintiff's fears about being identified. To the contrary, early in the interview, when asked whether she is frightened of retribution from the cartel for her affiliation with Reta, she declares: "I am not scared about it, because I didn't commit the crimes.… I have no ties to the cartel, the only tie I have to the cartel is I married a former cartel member and for them to come and hurt me I don't believe I would be even worth their time . . . ." In the course of the interview, Plaintiff is reminded several times to look at the

interviewer while responding to questions, rather than the camera – hardly instructions that would be necessary if Plaintiff's face was going to be concealed in the published interview.

When the CIR Report was published nearly a year later, in July 2013, both Mr. Livesey and Mr. Hooper emailed Plaintiff a link to the final published report.  Plaintiff then shared a link to the video on her Twitter page, exhorting her followers to watch the "new interview of myself and my husband Rosalio Reta."  Nearly another year went by before Plaintiff first contacted CIR in June 2014 to claim that her face and name should not have been revealed in the report.  Within a few weeks, she had hired counsel who began sending legal demands to CIR.

At every turn, when faced with evidence plainly undercutting her story, Plaintiff has responded with yet another falsehood.  Before this lawsuit was filed, when CIR provided the signed Release to her counsel, Plaintiff and her counsel claimed that it was forged.  When CIR and Univision confronted Plaintiff with her tweet (which featured her full name and her photograph) sharing the link to the CIR report, she claimed that her account was "hacked" (and then proceeded to change the name of the account from "ERYCA LEE" to "hacked").  When CIR and Univision confronted Plaintiff with additional social media comments in which she denied that she was "hiding her face" in the CBC's earlier report and told online critics that "if [people] wanna [see] my face they can go [to] twitter," she claimed that the comments were all impersonations.  When CIR sent certified copies of the Georgia court documents to Plaintiff and her counsel, pointing out the identical signatures, Plaintiff claimed that she never filed those papers and did not know the man who was the subject of the restraining order.

There is no basis for Plaintiff's claims and for her various excuses of forgery, hacking, and impersonation.  Instead, there is copious evidence that she is concocting false narratives and making false allegations under oath and to this court.  Moreover, at this point Plaintiff's counsel

is equally – and independently – to blame for perpetuating this fraudulent suit upon the court. Plaintiff's counsel was responsible for hiring a handwriting "expert" to claim to CIR that Plaintiff's own signature was a "forgery," based on signatures that were created expressly for the expert's review and dated (if at all) within a week of his analysis.  Plaintiff's counsel clearly did not do his own investigation into publicly available court records containing his client's signature, nor seek any other contemporaneous evidence that would have demonstrated the falsity of her claims.  And when CIR provided Plaintiff's counsel with the Georgia court documents in connection with its Notice of Motion for Rule 11 sanctions, Plaintiff's counsel responded by jettisoning his original expert on the eve of the deadline for expert disclosures, and hiring a *new* "handwriting expert" instead.  ***Yet even with the Georgia court documents now in hand, Plaintiff's counsel chose not to provide them to the new "expert."***  Instead, the new "expert's" report once again relies only on the same five signatures that were created expressly for the purposes of obtaining a favorable report of forgery from the first "expert."

Plaintiff's motivation in bringing this suit appears to be that she would now like to scrub her prior association with Reta from the Internet.  But she cannot rewrite history by asserting false claims in this Court.  Moreover, CIR has been forced to spend considerable time and money defending itself against these false claims.  Given the clear evidence that this claim is based upon false allegations, CIR served notice of this motion on August 14, 2015.  More than twenty-one days have elapsed since service, and Plaintiff has not withdrawn the Amended Complaint. Instead, Plaintiff has doubled down on her falsehoods, providing CIR with an affidavit in which she claims she did not file the Georgia documents that bear her name, address, phone number, and the identical signature that appears in the Release.

Under Rule 11, parties and their counsel are independently responsible for the content of pleadings filed in this Court.  It is clear that Plaintiff's claims have no basis in fact, much less law.  By pursuing this knowingly baseless action, and repeatedly making false claims under oath, Plaintiff has committed a fraud on this Court.  Moreover, her counsel has been a willing participant in this fraud.  Plaintiff's counsel cannot willfully blind himself to his client's misrepresentations; under Rule 11, he is required to make a "reasonable investigation" of his client's factual allegations.  He has not done so on his own, and has refused to do so even when presented with clear evidence putting his client's narrative into doubt.  By continuing to press this case, he is complicit in her fraud and sanctions are appropriate for both parties.

For the reasons set forth below, CIR asks this Court to impose sanctions on Plaintiff and her counsel pursuant to Rule 11, including but not limited to dismissing all claims in this action and awarding CIR costs and attorney fees, and any other relief the court deems proper.

## STATEMENT OF FACTS

Defendant CIR is a California-based non-profit organization that conducts ongoing journalistic and investigative news reporting projects on a wide variety of topics in multiple mediums.  Am. Compl. ¶ 2.  Defendants Bruce Livesey and Josiah Hooper are two freelance producers who with CIR produced a video news story titled "I Was a Hitman for Miguel Treviño," which featured interviews with Plaintiff and her then-husband Rosalio Reta, a resident of Woodville Penitentiary and a former "enforcer" for the Los Zetas drug cartel.[1]  Am. Compl. ¶¶ 5-6, 8.

---

[1] Plaintiff has served responses to CIR's interrogatories in which she now swears under oath, for the first time, that she was never married to Reta but was instead simply his "close friend."   This claim is at odds with Plaintiff's numerous references to Reta as her "husband," including during her recorded interview, as well as in contemporaneous emails with CIR – who described Plaintiff as Reta's wife because both she and Reta consistently represented her as such.  *See* Burke Decl. ¶ 26.

On or about August 14, 2012, Plaintiff travelled to Woodville, Texas, for the interview with CIR and Reta.  The interview took place on August 15, 2012.  At no time did Plaintiff request that her identity be obscured or concealed in any way, nor was any such promise conveyed to her.  To the contrary, Plaintiff executed the Standard Appearance Release she was provided in connection with her interview.  By executing the Release, Plaintiff authorized CIR to record and use her persona (including her name, image and voice) and released "any and all claims whatsoever" in connection with the use of her persona.  Livesey Decl. ¶ 3; Hooper Decl. ¶ 3; Burke Decl. Ex. 2.

The interview was conducted in a hotel room with standard lighting.  Plaintiff was not placed behind a screen, nor was she interviewed in shadow.  Livesey Decl. ¶¶ 2, 4; Hooper Decl. ¶¶ 2, 4; Burke Decl. Ex. 3.  During the interview, Plaintiff is reminded several times to look at the interviewer while giving her responses, rather than looking directly at the camera – a direction that would be irrelevant had the parties intended to conceal Plaintiff's face or identity in the final footage.  Burke Decl. ¶ 4.  The interviewer also asks Plaintiff if she is at all frightened about repercussions from the cartel.  Plaintiff responds on camera:

> I am not scared about it, because I didn't commit the crimes.  I don't have blood on my hands I have no ties to the cartel, the only tie I have to the cartel is I married a former cartel member and for them to come and hurt me I don't believe I would be, even worth their time to come hurt because it's not going to do anything for them, what is hurting me, what are they going to get out of that?

Burke Decl. ¶ 4, Exs. 3 & 4.

The CIR Report was published nearly a year later, on July 16, 2013.  Burke Decl. ¶ 5.  On July 17, 2013, Mr. Livesey and Mr. Hooper each emailed Plaintiff a link to the video online.  Burke Decl. ¶ 5, Exs. 5 & 6.  Mr. Hooper also sent a second email to Plaintiff on July 17 to

"apologize[] for the misspelling of [her] name" in the Spanish version of the report, which identified her as "Eryka" Reta.  Burke Decl. Ex. 7.[2]

On July 22, 2013, Plaintiff tweeted a link to the YouTube video on her Twitter profile, ERYCA LEE (@eryca_reta), exhorting her followers to watch the "new interview of myself and my husband Rosalio Reta."  The @eryca_reta Twitter account had a profile picture of Plaintiff, taken as a "selfie" in a mirror.[3]  When CIR notified Plaintiff about the tweet on June 12, 2014 – nearly a year later, and shortly after she first began to raise the allegations that are the subject of this lawsuit – Plaintiff claimed that the account was made by "someone else."  Shortly after that conversation, Plaintiff attempted to bolster her story by changing the name of her Twitter account from "ERYCA LEE" to "hacked" and removing her picture from the account.  Her Twitter handle remains @eryca_reta and the July 22, 2013 tweet remains on her profile.  The tweet has been brought to Plaintiff's attention on numerous occasions in the course of this action; in response, Plaintiff now claims that she "has not had a Twitter account and has never posted anything under the user handle @eryca_reta."  To date, Plaintiff has produced absolutely no evidence that the Twitter account did not belong to her or was "hacked."  Burke Decl. ¶¶ 6-9.

On July 11, 2014 – nearly a year after the CIR Report was published – CIR received a demand letter from Kevin Landau, counsel for Plaintiff in this matter.  In that letter, Mr. Landau claimed that Ms. Almeciga had only agreed to participate in the August 2012 interview "on the

---

[2] This email is yet another piece of contemporaneous evidence demonstrating that there was no agreement between the parties not to identify Plaintiff in the report; otherwise, there would be no reason to apologize for the misspelling of Plaintiff's name.  Burke Decl. ¶ 5.

[3] Other social media accounts associated with Plaintiff use a similar profile image.  For example, Plaintiff's LinkedIn profile as "Eryca Reta" has an identical profile picture to the Twitter account, and her current Google-Plus account under the name "alxyianna duarte" uses a picture that appears to have been taken in the same series, with Plaintiff wearing the same outfit and striking a similar pose in the mirror.  *See* Burke Decl. Exs. 25, 26.  (According to Plaintiff's produced documents, "Alxyianna Duarte" is the name associated with Plaintiff's current Gmail account, from which she emailed CBC producer Carmen Merrifield in the run-up to this litigation.  *See* Burke Decl. Ex. 23.)

condition of anonymity, for preservation of her personal safety and that of her family members." Mr. Landau demanded that CIR "remove all photos, videos and references of any kind of Ms. Almeciga that appear online or any other media forums," and instructed CIR to contact his office to discuss settlement.  Burke Decl. ¶ 10.

On August 5, 2014, counsel for CIR spoke with Mr. Landau by phone concerning his demand letter and informed him that CIR had a signed Release from Ms. Almeciga.  Mr. Landau stated that he was not aware of the Release and requested a copy, which CIR sent by email later that day.  Burke Decl. ¶ 11.  The next time CIR heard from Plaintiff's counsel was on August 28, 2014, when CIR received an email from him attaching a letter and a purported "professional opinion" of a "handwriting expert" claiming that Ms. Almeciga's signature on the Release was forged.  Burke Decl. ¶ 12.  Mr. Landau enclosed a "Questioned Document Examiner Letter" from a Mr. Curt Baggett of ExpertDocumentExaminer.com, dated August 20, 2014.  In his letter, Mr. Baggett purports to compare the signature on the Release with five "known signature[s]" of Ms. Almeciga.  Three of these so-called "known signatures" (K-1, K-2 and K-3) are dated within a week of Mr. Baggett's report (on August 15 and 18, 2014).  The remaining two are undated. None are notarized.  *Id*.

Plaintiff commenced this action in the Supreme Court, New York County, on April 23, 2015, and served CIR with the Summons and Complaint on May 7, 2015.[4]  CIR removed the action to this Court on May 27, 2015.  Plaintiff filed a motion to remand, which was denied, and Defendant Univision was dismissed from this case on the basis of fraudulent joinder.  Doc. No. 49.  In her briefs, Plaintiff has continued to represent to the Court that the Release bearing her signature was forged and that she had an oral agreement with CIR to conceal her identity.  *See,*

---

[4] As of today, September 14, 2015, Plaintiff has yet to serve Defendants Livesey and Hooper with either the Complaint or the Amended Complaint.

*e.g.*, Doc. No. 28, at 1; Doc. No. 37, at 4, 9, 14.  Plaintiff has reiterated these false representations in her Amended Complaint, filed in this Court July 24, 2015.  *See, e.g.*, Am. Compl. ¶¶ 14, 16, 34, 37, 39, 41, 44, 46, 50, 53, 54, 92, 93.

On July 20, 2015, CIR obtained certified copies of court documents that were publicly filed by Plaintiff in the Superior Court of Gwinnett County, State of Georgia, between June 19, 2013 and June 28, 2013 (the "Georgia Documents").  The Georgia Documents contain numerous examples of Plaintiff's signature.  *See, e.g.*, Burke Decl. Ex. 15 at CIR000468, CIR000470-72, CIR000480.  It is plain from even a cursory comparison of the Release and the Georgia Documents that Plaintiff's signature is ***identical*** to the signature on the Release – and certainly is not "forged."  Burke Decl. ¶¶ 14, 15.  Furthermore, the address and phone number provided by petitioner Erica Almeciga in the Georgia Documents matches Plaintiff's address and phone number at the time, as evidenced by Plaintiff's sworn statements in this action and contemporaneous emails by Plaintiff.  Burke Decl. ¶ 17.

After being confronted with the Georgia Documents in CIR's Notice of Motion for Sanctions, Plaintiff's counsel abandoned his first "expert" (Mr. Baggett) and retained a second handwriting "expert," Wendy Carlson.  Despite being in possession of the Georgia Documents, Plaintiff's counsel chose not to provide Ms. Carlson with these documents for her handwriting analysis.  Instead, Ms. Carlson was provided only with the same five purported "known signatures" provided to Plaintiff's previous expert, Mr. Baggett.  Burke Decl. ¶ 16.

Plaintiff's allegation that the Canadian Broadcasting Corporation ("CBC") concealed her face in an earlier interview "per [her] demand" (Am. Compl. ¶ 11) is also false.  This is clear from Plaintiff's own correspondence with CBC, which she has produced in discovery.  In June 2014, apparently in preparation for this lawsuit, Plaintiff emailed CBC producer Carmen

Merrifield to ask: "What made you decide to interview me in shadow?  Which I greatly

appreciate."[5]  Obviously, if Plaintiff's face was concealed in connection with an express oral

agreement – as she has alleged in her Amended Complaint – there would be no reason to ask this

question.  Burke Decl. ¶ 23.

      Plaintiff has also confirmed in online comments that she never asked the CBC to blur her

face.  After the CBC report was broadcast, it was posted to the discussion forum

WorldStarHipHop.com in a post titled "Prison Interview: Mexican Drug Cartel Trained This

Former Zeta Hitman From Texas at 13-Years-Old!  (Got Paid $10,000 to $50K Per Killing)."[6]

Under the Disqus profile name "retaswifey," Plaintiff made numerous comments on the video

post, including the following (emphasis added):

- July 6, 2012:  In response to a comment stating "Hmmm, so they publicly state your name, and you're insisting on blurring your face, why?", Plaintiff stated:  "<u>I didn't insist the producers did it on their own</u>."

- October 30, 2012:  "Yea i did marry him and <u>i am no [*sic*] hiding my face that's just wjat [*sic*] the producers decided to do</u>."

- November 7, 2012:  "I am not the 1 2 play with show ur face bitch <u>I didn't choose 2 hide my face the producers did.  But its not hard to find of [*sic*] me</u>."

- April 12, 2013:  "<u>if ppl want 2 c my face they can go 2 twitter</u>"[7]

- April 19, 2013:  "<u>if ppl wanna c my face they can go 2 twitter</u>"

---

[5] As is clear from the CBC video, Plaintiff was not in fact interviewed in shadow (which would have required advance setup).  A separate male interviewee was interviewed in shadow.  Plaintiff's interview took place next to a light and during a daytime car ride, and her face was blurred at some later point in time.  *See* CBC News, "Mexican Drug Cartel Groomed Texas Teen as Killer at 13," *available at* http://www.cbc.ca/news/world/mexican-drug-cartel-groomed-texas-teen-as-killer-at-13-1.1164119, at 12:39-13:46 (interview of Plaintiff), 13:46-14:21 (interview of anonymous male in shadow).

[6] Available at the URL http://www.worldstarhiphop.com/videos/video.php?v=wshh20Xr87Y187HwF934.

[7] As can be seen in Burke Decl. Ex. 8, Plaintiff's Twitter account (@eryca_reta) featured a picture of Plaintiff's face and torso, taken in a mirror.

Burke Decl. ¶ 18, Ex. 19.  Plaintiff emailed Mr. Livesey a link to the comments on this web page on November 14, 2012.  Burke Decl. ¶ 19, Ex. 20.[8]

The comments on WorldStarHipHop.com and PrisonTalk.com were brought to the attention of Plaintiff and her counsel on numerous occasions in the course of this litigation, including in Univision's motion to dismiss (*see* Doc. 21 at 9-10).  Predictably, Plaintiff now claims that she never made these comments and never used the social media handle "retaswifey." Burke Decl. ¶ 22.[9]

CIR served Plaintiff with a Notice of Motion for Rule 11 Sanctions on August 14, 2015. The Notice of Motion was accompanied by the Declaration of Thomas R. Burke, which explained the basis for the motion and attached numerous documents – including the Georgia Documents.  Burke Decl. ¶ 2.  More than twenty-one days have now elapsed since service of the Rule 11 notice of motion.  In that time, Plaintiff has refused to withdraw the Amended Complaint or to disclaim her false allegation that her signature on the Release is a "forgery." Instead, she offered an affidavit in which she claims that she never filed the Georgia Documents. Burke Decl. ¶¶ 27-28, Ex. 28.

This is plainly a lie.  Plaintiff's new affidavit fails to provide any plausible basis for claiming that the June 2013 Georgia court documents were not filed by her.  In addition to the

---

[8] Plaintiff has also commented under the name "retas_wifey" on the online forum PrisonTalk.com.  Burke Decl. ¶ 20.  The profile photograph for "retas_wifey" on PrisonTalk.com matches a picture that Plaintiff sent to Mr. Livesey in February 2012 so that Mr. Livesey would "have a face [with] a name" for her.  Burke Decl. ¶ 21, Ex. 22.

[9] Plaintiff has numerous social media accounts with her name and face publicly available, further undercutting any plausible basis for this suit.  Indeed, simply searching for "Erica Almeciga" or "Eryca Reta" brings up numerous pictures of Plaintiff in various social media accounts.  When questioned about some of these accounts – for example, a LinkedIn account which touts her modeling career – Plaintiff claimed that they were not hers.  She has produced no evidence to support this allegation.  Moreover, since bringing this lawsuit, Plaintiff has created new social media accounts under the name "alxyianna duarte" (which corresponds to her current email address), using a profile photo nearly identical to the accounts she insists are not hers.  Burke Decl. ¶¶ 24, 25.

identical signatures on the Release and the Georgia Documents, numerous other identifying

details underscore that the Georgia Documents were filed by Plaintiff.  For example:

- Petitioner Erica Almeciga in the Georgia Documents lists her address as 2630 Windsor Woods Lane, Norcross, Georgia.  *See* Burke Decl. Ex. 15 at CIR000470, CIR000478.  Plaintiff has since submitted a sworn affidavit in this action in which she states that she was living at 2630 Windsor Woods Lane as of April 2013.  Burke Decl. ¶¶ 27-28, Ex. 28.

- Petitioner Erica Almeciga in the Georgia Documents lists her phone number as 857-333-4838.  *See* Burke Decl. Ex. 15 at CIR000470, CIR000478.  This is the same phone number Plaintiff provided to Bruce Livesey several weeks earlier, in an email dated May 30, 2013.  Burke Decl. Ex. 17.  This same phone number also appears on the promotional website for Isaac "The Element" Duarte, who has submitted an affidavit in this action as Plaintiff's current boyfriend.  Under the "contact" section of his website, Mr. Duarte writes: "If people would like to contact me they can call my manager Eryca Reta at 888-522-7689 or 857-333-4838 or they may email her at eryca2323@gmail.com."  Burke Decl. Ex. 18.

- The target of the restraining order, Rosendo Gutierrez, is described as residing at 2580 Windsor Woods Lane, Apt. F, in Norcross, Georgia.  Plaintiff has since submitted a sworn affidavit in this action in which she states that she was living at 2580 Windsor Woods Lane, Apt. J between December 2011 and April 2013 – making Mr. Gutierrez her former neighbor.  Burke Decl. ¶¶ 27, 28.  And tellingly, Plaintiff also listed her address as 2580 Windsor Woods Lane, Apt. J, in the Release.  *See* Burke Decl. Ex. 2.

- Even a cursory comparison of the other handwriting on the Georgia Documents with a document submitted by Plaintiff to both her original and new "experts," labeled by Plaintiff as "[t]he way I write my letters," should erase any doubt that it was Plaintiff who filed the Georgia Documents and signed the release.  For example, the way Plaintiff writes Mr. Gutierrez's apartment number as "# F" in the Georgia Documents is *exactly* the unusual way that Plaintiff writes her uppercase-case "F" on Exhibit K2.  *Compare* Burke Decl. Ex. 14 at QDE Exhibit K2, Burke Decl. Ex. 16 at QDE Exhibit K2 *with* Burke Decl. Ex. 15 at CIR000471, CIR000478.

Burke Decl. ¶ 17.

Based upon the foregoing, CIR believes that Plaintiff has repeatedly made false

allegations under oath in this Court, and is pressing a matter which she knows to be without any

basis in fact.  CIR further believes, based upon the foregoing, that Plaintiff's counsel has

presented pleadings, motions and other papers in this action that are a) unwarranted by law and

b) premised upon false factual contentions, and that Plaintiff's counsel has failed at multiple

junctures to make a reasonable inquiry into the basis for his client's claim as required by Rule

11.  Having complied with the safe harbor period set forth in Rule 11(c), CIR now brings this

motion for sanctions against Plaintiff and her counsel.  CIR seeks sanctions including but not

limited to dismissal of this action with prejudice and payment of CIR's attorney fees and costs

for defending against this meritless suit.

## ARGUMENT

### I.   LEGAL STANDARD

#### A.   Rule 11 Allows the Imposition of Sanctions for Bringing Claims That Are Objectively Unreasonable and for Failure to Conduct a Reasonable Inquiry

Rule 11(b) of the Federal Rules of Civil Procedure provides, in pertinent part:

> By presenting to the court a pleading, written motion, or other
> paper, . . . an attorney . . . certifies that to the best of the person's
> knowledge, information, and belief, formed after an inquiry
> reasonable under the circumstances: . . . the claims, defenses, and
> other legal contentions are warranted by existing law or by a
> nonfrivolous argument for the extending, modifying, or reversing
> of existing law or for establishing new law [and] the factual
> contentions have evidentiary support or, if specifically so
> identified, will likely have evidentiary support after a reasonable
> opportunity for further investigation or discovery. . . .

Rule 11(c) provides for the imposition of "appropriate sanctions" upon any "attorney, law

firm, or party" that violates Rule 11(b), including, *inter alia*, "an order directing payment to the

movant of part or all of the reasonable attorney's fees and other expenses directly resulting from

the violation."  Fed. R. Civ. P. 11(c).  As the Supreme Court has noted, "the central purpose of

Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and

procedure of the federal courts."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

The Court emphasized that an attorney who signs and submits papers to a court manifests his belief that the papers are "well grounded in fact, legally tenable, and 'not interposed for any improper purpose." *Id.* (citation omitted).

The standard for assessing sanctionable conduct under Rule 11 is an objective one. *Caisse Nationale de Credit Agricole-CNCA v. Valcorp*, 28 F.3d 259, 264 (2d Cir. 1994)).  Under this objective standard, it is not sufficient for an attorney "to claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim." *Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 253 (2d Cir. 1985).  Instead, "Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Id.  See also Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) (Rule 11 employs an objective standard, "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments").  Furthermore, an attorney must not persist in pursuing a claim that he later learns has no merit either in law or fact.  Failing to withdraw such baseless claims is further ground for sanctions.  *See O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) ("[A] litigant's obligations with respect to the contents of . . . papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.") (quoting Advisory Committee's Notes to 1993 amendment of Rule 11); *Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 230 (E.D.N.Y. 2002) (counsel must "conduct a reasonable inquiry before filing the [] complaint and also [] withdraw any claims that bec[o]me unsupportable later").

**B.      The Court's Inherent Powers Permit the Imposition of Sanctions for Fraud Upon the Court, Including Dismissal of the Action**

In addition to Rule 11, courts have an inherent power to sanction where a party commits a fraud upon the court.  Such a fraud may be found where, as here, "a party lies to the court and [her] adversary intentionally, repeatedly, and about issues that are central to the truth-finding process."  *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002).  The Court has "inherent authority 'to conduct an independent investigation in order to determine whether it has been the victim of fraud.'"  *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)).

Where a fraud upon the court is shown by clear and convincing evidence, courts consider five factors to determine an appropriate sanction: "(i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the injured party; (iii) whether there is a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; and (v) whether further misconduct is likely to occur in the future."  *Id.*  Appropriate sanctions may include the imposition of attorney fees and even "entry of judgment against the offending party."  *Id.* (quotation marks and citation omitted).

Dismissal with prejudice is an appropriate remedy under both Rule 11 and the court's inherent powers where a litigant abuses the judicial process.  As the Supreme Court has explained, dismissal in appropriate circumstances serves "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."  *NHL v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).  Indeed, "'[l]itigants must know that the courts are not open to persons who would seek justice by fraudulent means.'"  *Brady v. United States*, 877 F. Supp. 444, 453 (C.D. Ill. 1994) (citation omitted).

14

## II.    THIS COURT SHOULD IMPOSE SANCTIONS AGAINST BOTH PLAINTIFF AND PLAINTIFF'S COUNSEL

### A.    Sanctions against Plaintiff are appropriate because she has made knowingly false allegations of fact and pursued claims that she knows to be baseless

In this case, there are no questions of fact as to which reasonable minds may differ.  CIR is in possession of a Release bearing Plaintiff's signature, which was personally signed by Plaintiff in the presence of CIR's freelance producers.  Plaintiff plainly knows whether she signed that Release, and Plaintiff knows what her own handwriting looks like.  If the signature is indeed Plaintiff's – which is clear from the copious evidence in the record to date – then she has made knowingly false allegations to this Court.

Plaintiff has offered absolutely no evidence, beyond her own self-serving insistence, to plausibly claim that the Release is a forgery.  The reports of her "handwriting experts" are probative of nothing beyond the fact that the carefully drawn "signatures" and "handwriting samples" that Plaintiff created in August 2014 for the first "expert" look different from the signature on the Release – hardly surprising, given that Plaintiff hired these experts for the express purpose of obtaining an opinion that the Release was a forgery.[10]  According to their

---

[10] Moreover, to the extent Plaintiff and her counsel were relying on Mr. Baggett's "expert" opinion of forgery as the basis for this case, such reliance is hardly reasonable.  Mr. Baggett has been repeatedly disqualified as a handwriting expert by numerous courts, who have found his analysis speculative and unsupported by any scientific basis or method.  *See, e.g., Rodriguez v. U.S. Bank, N.A.*, Civ. No. SA-12-CV-345-XR, 2013 WL 3146844, at *4-5 (W.D. Tex. June 18, 2013) (finding Mr. Baggett's testimony to be inadmissible under Fed. R. Evid. 702); *Dracz v. Am. Gen. Life Ins. Co.*, 426 F. Supp. 2d 1373, 1379 (M.D. Ga.) *aff'd*, 201 F. App'x 681 (11th Cir. 2006) (granting motion to exclude Mr. Baggett as an expert witness); *Brown v. Primerica Life Ins. Co.*, No. 02 C 08175, 2006 WL 5153076, at *1 (N.D. Ill. Apr. 29, 2006) (granting motion to exclude Mr. Baggett as an expert witness); *Routh v. Bank of Am., N.A.*, No. SA-12-CV-244-XR, 2013 WL 4040753, at *6 (W.D. Tex. Aug. 7, 2013), *appeal dismissed* (Sept. 17, 2014) (excluding Mr. Baggett as an expert witness, finding his testimony to be "unreliable" because, *inter alia*, he offered no basis for why the purportedly "known" signature he used as a comparison was in fact authentic); *Wheeler v. Olympia Sports Ctr., Inc.*, No. 03-265-P-H, 2004 WL 2287759, at *4 (D. Me. Oct. 12, 2004) (granting motion to exclude Mr. Baggett as an expert witness, finding that "Baggett's presentation does not begin to meet the indicia of reliability" required by federal law); *see also Abdin v. Abdin*, 94 Ark. App. 12, 19, 223 S.W.3d 60, 65 (2006) (affirming trial court's decision not to credit Mr. Baggett's testimony, given that he was "not board certified," taught document examination through a "mail-order school" owned by his son, "had taken no continuing education classes, had never published in any trade journals, and … had once been convicted of felony theft").  Indeed, a Texas appellate court held that a prosecutor's description of Baggett as a "charlatan" "was proper as a reasonable

15

reports, neither "expert" observed Plaintiff writing her signature, nor did they review any contemporaneously dated documents bearing Plaintiff's signature, such as court documents, lease agreements, or contracts.  Instead, they simply allowed Plaintiff to submit her own selected documents for review via the Internet.  Tellingly, Plaintiff's new "expert" – retained after Plaintiff's counsel received CIR's Rule 11 notice – notes that the so-called "known" signatures submitted by Plaintiff appear to have been "methodical[ly]" drawn, while the signature on the Release "is written with great fluidity and a faster speed."  Burke Decl. Ex. 16, at 9.

But the most glaring evidence of Plaintiff's fraud upon this Court is that her signature on the Release matches her signature on certified court documents filed a year later in an unrelated domestic violence matter.  Lacking any rejoinder to these documents, Plaintiff claims that she did not file them.  But this is clearly a lie.  If not her, then who filed a temporary restraining order in her local court, in her name, at her admitted address, listing her phone number, against a man who was her neighbor?  Plaintiff has no plausible answer.

The facts of *Calloway v. Marvel Entertainment Group*, 138 F.R.D. 646 (S.D.N.Y. 1991), *aff'd in relevant part*, 9 F.3d 237 (2d Cir. 1993), are particularly instructive.  As in this case, the plaintiff in *Calloway* falsely alleged that his signature was forged on the key documents in the case – a series of option agreements bearing his signature, which would vitiate his copyright claims.  Plaintiff's counsel relied solely on his client's assertions and failed to conduct a reasonable investigation of the documents' validity.  Finding that the plaintiff could not produce sufficient evidence to support the contention of forgery and that his counsel failed to conduct a

---

deduction from the evidence."  *Brown v. State*, No. 05-97-00289-CR, 1999 WL 61858, at *8 (Tex. App. Feb. 9, 1999).

reasonable inquiry, the court imposed a sanction of $200,000 for which plaintiff and his attorney were held jointly and severally liable.[11]

In sum, the record is clear that Plaintiff brought this suit based upon knowingly false allegations, and has continued to press false allegations in the course of this suit.  Where, as here, a plaintiff manufactures evidence and presses a knowingly false claim in court, courts do not hesitate to impose sanctions under Rule 11 as well as the Court's inherent powers.  *See, e.g.*, *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 444 (S.D.N.Y. 2002) (imposing sanctions, including award of attorney fees and costs, where plaintiff engaged in "a pattern of intentional bad faith conduct and failed to correct her fraudulent submissions, even when confronted with evidence undermining the validity of those submissions"), *aff'd*, 81 F. App'x 396 (2d Cir. 2003); *Shangold v. Walt Disney Co.*, 275 F. App'x 72, 73-74 (2d Cir. 2008) (affirming dismissal of complaint as sanction for fraud upon the court where plaintiffs submitted fabricated evidence in an attempt to manipulate the judicial process); *McMunn*, 191 F. Supp. 2d at 461 (dismissing plaintiff's claim and awarding costs and fees to defendant as a sanction where plaintiff lied under oath, withheld documentary evidence inconsistent with her claims, and, when, confronted with documentary evidence from third parties refuting her statements, falsely claimed that the documents were forged); *Ceglia v. Zuckerberg*, 600 F. App'x 34 (2d Cir. 2015) (affirming dismissal of action as a fraud on the court where plaintiff presented falsified evidence as the basis for his claim); *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652 (7th Cir. 2003)

---

[11] *Calloway* has a lengthy history.  Sanctions were originally imposed by the Southern District in 1986 against both plaintiff and his counsel, but the Second Circuit vacated the award of sanctions against the plaintiff.  854 F.2d 1452 (2d Cir. 1988).  The case was then appealed up to the Supreme Court on the question of whether the sanctions could be assessed against the attorney's law firm, or whether they must be assessed only against the individual attorney signing the papers.  The Supreme Court determined that sanctions could only be imposed against the attorney signing the pleadings but left intact the remainder of the court's sanction.  *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989).  On remand, the district court reinstated the sanction against the plaintiff and held the plaintiff and his counsel jointly and severally liable for the total amount.  138 F.R.D. 646 (S.D.N.Y. 1991).

(affirming dismissal of action as Rule 11 sanction where plaintiff relied on fabricated evidence as the basis for civil rights claim); *Pope v. Fed. Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (affirming Rule 11 sanction of dismissal with prejudice of plaintiff's lawsuit where plaintiff manufactured evidence and offered perjured testimony in support of her case).

Accordingly, this Court should sanction Plaintiff for her false allegations by awarding costs and fees to CIR and by dismissing this action with prejudice.

> **B.   Sanctions are appropriate against Plaintiff's counsel for failing to undertake a reasonable investigation and for failing to withdraw this action when faced with clear evidence of its frivolity**

It is similarly clear that Plaintiff's counsel should be held accountable for pressing this legally and factually insufficient claim, despite repeated warnings of its lack of merit.  "Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success." *Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991) (citations omitted).  This court has already found that Plaintiff's claim against Univision, one of the original defendants, had absolutely no chance of success – to the extent that Univision was fraudulently joined, and its citizenship was disregarded in CIR's notice of removal.  As set forth in Plaintiff's pending Rule 12(c) motion, filed on August 24, 2015, there is similarly no legal basis for any of the claims interposed against CIR.  Indeed, basic legal research by Plaintiff's counsel would have shown that the theories of recovery he chose to plead for his client's case are barred outright by New York precedent.  This failing alone is grounds for sanctions.  *See Gurary v. Winehouse*, 235 F.3d 792, 797-98 (2d Cir. 2000); *Brazilian Inv. Advisory Servs., Ltda. v. United Merchs. & Mfrs., Inc.*, 123 F.R.D. 477, 480 (S.D.N.Y. 1989) (imposing sanctions where "[t]he glaring lack of legally sufficient facts upon which to state a claim clearly indicates a total failure of [plaintiff]'s counsel to make either a reasonable inquiry as to the facts or to conduct rudimentary research of the law, both of which are required by Rule 11 prior to filing a complaint").  If this Court grants

CIR's Rule 12(c) motion, CIR seeks an award of sanctions for its costs and attorney fees in defending this action.

Furthermore, Plaintiff's counsel has failed to conduct a reasonable inquiry as to the basis for his client's factual allegations – and when faced with evidence contrary to her claim, he has failed to investigate further or to withdraw the claim.  In particular, Plaintiff's counsel has failed to investigate the June 2013 Georgia court documents.  Given that the petitioner, Erica Almeciga of  2630 Windsor Woods Lane in Norcross, Georgia, bears the same name and address as his client – and a signature matching the Release – Plaintiff's counsel's cannot satisfy Rule 11's duty of objectively reasonable inquiry simply by relying on his client's self-serving insistence that she did not file them.  *See Perry v. S.Z. Rest. Corp.*, 45 F. Supp. 2d 272, 275 (S.D.N.Y. 1999) (imposing Rule 11 sanctions against plaintiff and plaintiff's counsel where action was based solely on plaintiff's self-serving allegations and controverted by easily discoverable evidence, finding that plaintiff's counsel failed to conduct a reasonable inquiry); *Calloway*, 138 F.R.D. 646 (sanctioning plaintiff's counsel for failure to conduct a reasonable investigation as to client's false claim that key document was forged).

Nor can Plaintiff's counsel delegate his Rule 11 duties simply by hiring someone willing to submit an expert report with his client's desired outcome.  Moreover, counsel's reliance on purported experts is particularly egregious in this case, since it appears to be the only "evidence" in support of this claim other than Plaintiff's self-serving allegations.  The original and amended complaints expressly recite that this suit is based on the opinion of a "handwriting expert" that Plaintiff's signature on the release is a "forgery" – and yet even that original "expert" (whose opinion has been rejected and excluded by courts across the country) has now been abandoned by Plaintiff, replaced by someone new *after* CIR served its Rule 11 notice.  Plaintiff's decision to

19

switch experts at that point in time, and ***not*** to provide the new expert with the Georgia court documents that were now in his possession, renders his reliance on this expert woefully – and willfully – inadequate.

There can be no plainer evidence that Plaintiff's counsel failed to conduct a reasonable investigation than the evidence presented in support of this motion, which was discovered by CIR based on its research of publicly available websites and court records.  These resources are of course equally available to Plaintiff's counsel.  Had he performed a minimal – much less reasonable – investigation of his client's claims, he would have easily determined that she is not telling the truth and this suit is based upon false allegations.  Instead, CIR has been forced to spend tens of thousands of dollars defending a suit that never should have been brought in the first place.  Accordingly, sanctions are warranted against Plaintiff's counsel.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant Center for Investigative Reporting, Inc. respectfully requests that this Court grant its Motion for Sanctions.

Dated: September 14, 2015

DAVIS WRIGHT TREMAINE LLP

By: /s/ Alison Schary
Alison Schary
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006
Phone: (202) 973-4248
Fax: (202) 973-4448
alisonschary@dwt.com

Thomas R. Burke (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 400
San Francisco, CA 94111
Phone: (415) 276-6552
Fax: (415) 489-9052
thomasburke@dwt.com

Jeremy A. Chase
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Fax: (212) 489-8340
jeremychase@dwt.com

*Attorneys for Defendants Center for Investigative Reporting, Inc., Bruce Livesey, and Josiah Hooper*