UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------x

ERICA ALMECIGA,

       Plaintiff,

- against -

CENTER FOR INVESTIGATIVE
REPORTING, INC., UNIVISION
COMMUNICATIONS, INC., UNIVISION
NOTICIAS, BRUCE LIVESEY, JOSIAH
HOOPER,

       Defendants.

------------------------------------------------------------x

Case No.: 1:15-cv-04319-JSR

Hon. Jed S. Rakoff

## DECLARATION OF THOMAS R. BURKE

I, THOMAS R. BURKE, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a partner of the firm Davis Wright Tremaine, LLP, counsel for defendant Center for Investigative Reporting, Inc. ("CIR") in the above-captioned action, and admitted *pro hac vice* in this matter. I submit this declaration in support of CIR's Motion for Sanctions, dated September 14, 2015. I submit this declaration to annex exhibits and to state facts of which I have personal knowledge that are relevant to the motion. Everything contained in this declaration is based on my personal knowledge, except as otherwise indicated.

2. On August 14, 2015, CIR served Plaintiff with a Notice of Motion for Sanctions Pursuant to Fed. R. Civ. P. 11(c). The Notice of Motion was supported by my August 14, 2015 declaration, the substance of which is included in this declaration. A true and correct copy of the papers served upon Plaintiff on August 14, 2015, including the Notice of Motion; the Declaration of Thomas R. Burke, dated August 14, 2015, and accompanying exhibits; and the Certificate of Service, is attached hereto as **Exhibit 1**.

1

3.  As set forth in the accompanying declarations of Bruce Livesey and Josiah Hooper, Plaintiff Erica Almeciga, who has been known previously as Eryca Almeciga-Reta, was interviewed by CIR in Woodland, Texas, in August 2012, along with her then-husband, Rosalio Reta. Both interviews were filmed. While Ms. Almeciga-Reta was still in Woodland, she executed a Standard Appearance Release (the "Release"), signing her name and printing her name and address on the lines provided at the bottom of the Release. By executing the Release, Plaintiff authorized CIR to record and use her persona (including her name, image and voice) and released "any and all claims whatsoever" in connection with the use of her persona. A true and correct copy of the executed Release is attached hereto as **Exhibit 2**.

4.  A true and correct copy of the video footage from Plaintiff's interview, which was produced to Plaintiff bearing the Bates number CIR000623, is attached hereto as **Exhibit 3**. A true and correct copy of CIR's transcription of the interview, which was produced to Plaintiff bearing the Bates range CIR000032-46, is attached hereto as **Exhibit 4**.[1] During the nearly 45 minutes of video footage from Plaintiff's interview, there is no reference whatsoever to shielding Plaintiff's identity, or to Plaintiff's fears about being identified. To the contrary, when asked whether she is frightened of retribution from the cartel for her affiliation with Reta, she responds:

> I am not scared about it, because I didn't commit the crimes. I don't have blood on my hands I have no ties to the cartel, the only tie I have to the cartel is I married a former cartel member and for them to come and hurt me I don't believe I would be, even worth their time to come hurt because it's not going to do anything for them, what is hurting me, what are they going to get out of that?

Ex. 3 at 22:42; Ex. 4 at CIR000040. During the videotaped interview, Plaintiff is also repeatedly reminded to look at the interviewer when giving her answers, rather than speaking directly to the

---

[1] By filing these documents, CIR does not enact a general waiver of its rights and privileges concerning unpublished newsgathering materials, including but not limited to the rights set forth in the California shield law (Cal. Const. art I, § 2(b)), the New York shield law (N.Y. Civ. Rights Law § 79-h), and any other applicable state or federal provisions, and expressly reserves those rights.

2

camera – a direction that would be irrelevant had the parties intended to conceal Plaintiff's face or identity in the final footage. *See* Ex 3 at 10:02, 30:15; Ex. 4 at CIR0000035, CIR0000042.

5.  The CIR Report was published online on July 16, 2013. On July 17, 2013, Mr. Livesey and Mr. Hooper each emailed Plaintiff a link to the CIR Report online. Attached hereto as **Exhibit 5** is a true and correct copy of a July 17-18, 2013 email exchange in which Bruce Livesey sends Plaintiff (identified as Eryca Reta at the email address eryca2323@gmail.com) a link to the CIR Report, which was produced in this action bearing the Bates number CIR000209. Attached hereto as **Exhibit 6** is a true and correct copy of a July 17-18, 2013 email exchange in which Josiah Hooper sends Plaintiff (identified as Eryca Reta at the email address eryca2323@gmail.com) a link to the CIR Report in Spanish and in English, which was produced in this action at the Bates range CIR000149-50. Mr. Hooper also sent Plaintiff a second email on July 17, 2013, alerting her to the expected broadcast time for Univision's Spanish-language version of the report. A true and correct copy of this email, produced at the Bates range CIR000139-40, is attached hereto as **Exhibit 7**. In that email, Mr. Hooper also tells Plaintiff that he "apologizes for the misspelling of your name" in the Spanish version, which displays her name as "Eryka" Reta. This contemporaneous email exchange further demonstrates that there was no agreement between the parties not to identify Plaintiff in the report; otherwise, there would be no reason to apologize for the misspelling of Plaintiff's name.

6.  On July 22, 2013, Plaintiff tweeted a link to the YouTube video on her Twitter profile, ERYCA LEE (@eryca_reta), exhorting her followers to watch the "new interview of myself and my husband Rosalio Reta." Plaintiff's Twitter account featured both her full name and her photograph – the same photograph that still appears on other social media profiles associated with her. *See infra* ¶¶ 24, 25. As evidenced by contemporaneous correspondence

produced by CIR in this matter, CIR first discovered Plaintiff's July 22, 2013 tweet on June 11, 2014 – shortly after Plaintiff contacted CIR to raise for the first time the claims that became the basis of this action. Attached hereto as **Exhibit 8** is a true and correct copy of a June 11, 2014 email from Steve Talbot to Bruce Livesey and Josiah Hooper attaching a screenshot of Plaintiff's July 22, 2013 tweet, produced in this action at the Bates range CIR000553-55. This screenshot demonstrates that as of June 11, 2014, the Twitter account was named "ERYCA LEE (@eryca_reta)" and included a picture of Plaintiff, which appears to have been taken in a mirror.

7.  As set forth in contemporaneous internal correspondence produced by CIR, the July 22, 2013 tweet was brought to Plaintiff's attention on June 12, 2014. In response, Plaintiff claimed that the tweet – along with her Twitter and Facebook accounts – was created by "someone else." Attached hereto as **Exhibit 9** is a true and correct copy of a June 12, 2014 email from Steve Talbot to Bruce Livesey, Josiah Hooper, and Daffodil Altan, describing Mr. Talbot's conversation with Plaintiff, which was produced in this action bearing the Bates number CIR000601.

8.  At some point after the June 12, 2014 conversation with Mr. Talbot, Plaintiff apparently changed the name of her Twitter account from "ERYCA LEE" to "hacked" and removed her picture from the Twitter profile. Her Twitter handle remains @eryca_reta and the July 22, 2013 tweet remains on her profile. Attached hereto as **Exhibit 10** is a true and correct copy of the July 22, 2013 tweet from @eryca_reta, as accessed on September 11, 2015.

9.  The July 22, 2013 tweet was brought to the attention of Plaintiff and her counsel on numerous occasions in the course of this action, including in Univision's May 20, 2015 motion to dismiss the Complaint filed in state court (*see* Doc. No. 1-7, at 3); Univision's renewed motion to dismiss in this Court (*see* Doc. No. 22, at 3); Univision's Reply to Plaintiff's

Supplemental Memo of Law (Doc. No. 42, at 2-3); and in both parties' Requests for Production. In response to CIR's discovery requests, Plaintiff stated that she "has not had a Twitter account and has never posted anything under the user handle @eryca_reta." A true and correct copy of Plaintiff's supplemental responses to CIR's discovery requests is attached hereto as **Exhibit 11**. To date, Plaintiff has produced absolutely no evidence that the Twitter account did not belong to her or was "hacked."

10. On July 11, 2014 – nearly a year after the CIR Report was published – CIR received a demand letter from Kevin Landau, counsel for Plaintiff in this matter. In that letter, Mr. Landau claimed that Ms. Almeciga had only agreed to participate in the August 2012 interview "on the condition of anonymity, for preservation of her personal safety and that of her family members." Mr. Landau demanded that CIR "remove all photos, videos and references of any kind of Ms. Almeciga that appear online or any other media forums," and instructed CIR to contact his office to discuss settlement. A true and correct copy of the July 11, 2014 demand letter is attached hereto as **Exhibit 12**.

11. On July 16, 2014, I informed Mr. Landau that I had been retained to respond to his correspondence and would do so by the end of the month when I returned from Brazil. On August 5, 2014, I spoke with Mr. Landau by phone concerning his demand letter. In that conversation, I informed him that CIR had a signed release from Ms. Almeciga. Mr. Landau stated that he was not aware of the release and requested a copy, which I sent by email later that day.

12. The next time I heard from Mr. Landau was on August 28, 2014, when I received an email from him attaching a letter and a purported "professional opinion" of a "handwriting expert" claiming that Ms. Almeciga's signature on the Release was forged. A true and correct

5

copy of the August 28, 2014 letter is attached hereto as **Exhibit 13**. Mr. Landau enclosed a "Questioned Document Examiner Letter" from a Mr. Curt Baggett of ExpertDocumentExaminer.com, dated August 20, 2014. In his letter, Mr. Baggett purports to compare the signature on the Release with five "known signature[s]" of Ms. Almeciga. Three of these so-called "known signatures" (K-1, K-2 and K-3) are dated within a week of Mr. Baggett's report (on August 15 and 18, 2014). The remaining two are undated. None are notarized. A true and correct copy of the August 20, 2014 "Questioned Document Examiner Letter" is attached hereto as **Exhibit 14**. Mr. Landau also called me on August 28, 2014, to state that it was his position that the signature on the release was a "fraud."

13. Plaintiff commenced this action in the Supreme Court, New York County, on April 23, 2015, and served CIR with the Summons and Complaint on May 7, 2015. CIR removed the action to this Court on May 27, 2015. Plaintiff filed a motion to remand, which was denied, and Defendant Univision was dismissed from this case on the basis of fraudulent joinder. Doc. No. 49. In her briefs, Plaintiff has continued to represent to the Court that the Release bearing her signature was forged and that she had an oral agreement with CIR to conceal her identity. *See, e.g.*, Doc. No. 28, at 1; Doc. No. 37, at 4, 9, 14. Plaintiff has reiterated these false representations in her Amended Complaint, filed in this Court July 24, 2015. *See, e.g.*, Am. Compl. ¶¶ 14, 16, 34, 37, 39, 41, 44, 46, 50, 53, 54, 92, 93.

14. On July 20, 2015, I obtained certified copies of court documents that were publicly filed by Plaintiff in the Superior Court of Gwinnett County, State of Georgia, between June 19, 2013 and June 28, 2013 (the "Georgia Documents"), in a domestic violence matter. True and correct copies of the certified Georgia Documents, which were produced in this action at the Bates range CIR000468-81, are attached hereto as **Exhibit 15**.

15.     The Georgia Documents contain numerous examples of Plaintiff's signature. *See, e.g.,* Ex. 15 at CIR000468, CIR000470-72, CIR000480. It is plain from even a cursory comparison of the Release and the Georgia Documents that Plaintiff's signature is identical to the signature on the Release, and certainly is not "forged."

16.     After being confronted with the Georgia Documents in CIR's Notice of Motion for Sanctions, Plaintiff's counsel abandoned his first "expert" (Mr. Baggett) and retained a second handwriting "expert," Wendy Carlson. Plaintiff's counsel informed CIR that he was retaining a new expert by email dated August 18, 2015, in connection with seeking an extension of time to serve the new expert's disclosures. A true and correct copy of Ms. Carlson's Rule 26(a)(2) report, dated August 20, 2015, and served upon CIR on August 22, 2015, is attached hereto as **Exhibit 16**. As is evident from Ms. Carlson's report, despite being in possession of the Georgia Documents, Plaintiff's counsel chose not to provide Ms. Carlson with these documents for her handwriting analysis. Instead, Ms. Carlson was provided only with the same five purported "known signatures" provided to Plaintiff's previous expert, Mr. Baggett. Tellingly, Plaintiff's new "expert" notes that the so-called "known" signatures submitted by Plaintiff appear to have been painstakingly crafted, "display[ing] a slower, more methodical and unrefined style of writing," while the signature on the Release "is written with great fluidity and a faster speed." Exhibit 16, at 9.

17.     In addition to the identical signatures on the Release and the Georgia Documents, numerous other identifying details underscore that the Georgia Documents were filed by Plaintiff. For example:

      a.    Petitioner Erica Almeciga in the Georgia Documents lists her address as 2630 Windsor Woods Lane, Norcross, Georgia. *See* CIR000470, CIR000478. Plaintiff has since submitted a sworn affidavit in this action

7

in which she states that she was living at 2630 Windsor Woods Lane as of April 2013. *See infra* ¶¶ 27, 28.

b. Petitioner Erica Almeciga in the Georgia Documents lists her phone number as 857-333-4838. *See* CIR000470, CIR000478. This is the same phone number Plaintiff provided to Bruce Livesey several weeks earlier, in an email dated May 30, 2013. A true and correct copy of that email, produced at the Bates range CIR000145-146, is attached hereto as **Exhibit 17**. This same phone number also appears on the promotional website for Isaac "The Element" Duarte, who has submitted an affidavit in this action as Plaintiff's current boyfriend. Under the "contact" section of his website, Mr. Duarte writes: "If people would like to contact me they can call my manager Eryca Reta at 888-522-7689 or 857-333-4838 or they may email her at eryca2323@gmail.com." A true and correct copy of a screenshot of this web page, available at http://isaac.thefanbase.net/contact, is attached hereto as **Exhibit 18**.

c. The target of the restraining order, Rosendo Gutierrez, is described as residing at 2580 Windsor Woods Lane, Apt. F, in Norcross, Georgia. Plaintiff has since submitted a sworn affidavit in this action in which she states that she was living at 2580 Windsor Woods Lane, Apt. J between December 2011 and April 2013 – making Mr. Gutierrez her former neighbor. *See infra* ¶¶ 27, 28. And tellingly, Plaintiff also listed her address as 2580 Windsor Woods Lane, Apt. J, in the Release. *See* Ex. 2.

d. Even a cursory comparison of the other handwriting on the Georgia Documents with a document submitted by Plaintiff to both her original and new "experts," labeled by Plaintiff as "[t]he way I write my letters," should erase any doubt that it was Plaintiff who filed the Georgia Documents and signed the release. For example, the way Plaintiff writes Mr. Gutierrez's apartment number as "# F" in the Georgia Documents is *exactly* the unusual way that Plaintiff writes her uppercase-case "F" on Exhibit K2. *Compare* Ex. 14 at QDE Exhibit K2 and Ex. 16 at QDE Exhibit K2 *with* Ex. 15 at CIR000471, CIR000478.

18. Plaintiff's allegation that the Canadian Broadcasting Corporation ("CBC") concealed her face in a report published on or about July 4, 2012 (the "CBC Report") "per [her] demand" (Am. Compl. ¶ 11) is also false. After the CBC Report was broadcast, it was posted to the discussion forum WorldStarHipHop.com in a post titled "Prison Interview: Mexican Drug Cartel Trained This Former Zeta Hitman From Texas at 13-Years-Old! (Got Paid $10,000 to $50K Per Killing)," available at the URL

8

http://www.worldstarhiphop.com/videos/video.php?v=wshh20Xr87Y187HwF934. Under the Disqus profile name "retaswifey," Plaintiff made numerous comments on the video post, including the following (emphasis added):

    a.    July 6, 2012: In response to a comment stating "Hmmm, so they publicly state your name, and you're insisting on blurring your face, why?", Plaintiff stated: "<u>I didn't insist the producers did it on their own</u>."

    b.    October 30, 2012: "Yea i did marry him and <u>i am no [sic] hiding my face that's just wjat [sic] the producers decided to do</u>."

    c.    November 7, 2012: "I am not the 1 2 play with show ur face bitch <u>I didn't choose 2 hide my face the producers did. But its not hard to find of [sic] me</u>."

    d.    April 12, 2013: "<u>if ppl want 2 c my face they can go 2 twitter</u>"

    e.    April 19, 2013: "<u>if ppl wanna c my face they can go 2 twitter</u>"

A true and correct copy of these comments available through Ms. Reta's linked Disqus profile at https://disqus.com/by/retaswifey/ is attached hereto as **Exhibit 19**.

19.    Plaintiff emailed Bruce Livesey a link to these comments on WorldStarHipHop.com on November 14, 2012. Attached hereto as **Exhibit 20** is a true and correct copy of the November 14, 2012 email from Plaintiff (identified as Eryca Reta at the email address eryca2323@gmail.com) to Bruce Livesey, produced in this action bearing the Bates number CIR000199.

20.    Plaintiff has also commented under the name "retas_wifey" on the online forum PrisonTalk.com. Attached hereto as **Exhibit 21** are two November 20, 2012 posts by Plaintiff under the name "retas_wifey" on PrisonTalk.com. Under the thread titled "Introduce Yourself!" Plaintiff writes: "Hi my name is erica I am new on here and could really use some advice, my husband is locked up in texas a[n]d he is a very high profile inmate. His old lawyer said it would b great if we did an interview together so we did 1 and now every1 is saying horrible things

9

about me online . . . ." On the same day, under the thread titled "Marriage by Proxy," Plaintiff commented: "I married my husband by proxy while he was in ad[ministrative] seg[regation]. And I was told that the notary in the prison could not deny 2 notarize anything that is a legal document. And the marriage by proxy form is a legal document. Good luck."

21. The profile photograph for "retas_wifey" on PrisonTalk.com is the same picture that Plaintiff sent to Mr. Livesey in February 2012 so that Mr. Livesey would "have a face [with] a name" for her. A true and correct copy of this February 29, 2012 email from Plaintiff (identified as Erica Almeciga at the email address eryca2323@gmail.com) to Bruce Livesey, produced in this action at the Bates range CIR000152-53, is attached hereto as **Exhibit 22**.

22. The comments on WorldStarHipHop.com and PrisonTalk.com were also brought to the attention of Plaintiff and her counsel on numerous occasions in the course of this litigation, including in Univision's May 20, 2015 motion to dismiss the Complaint filed in state court; Univision's Reply to Plaintiff's Supplemental Memo of Law (Doc. No. 42, at 2-3); and in both parties' Requests for Production. In response to CIR's discovery requests, Plaintiff stated that she "did not create the 'retas wifey' account, nor did she post anything under the username @retaswifey." *See* Ex. 11.

23. Plaintiff's allegation that the CBC concealed her identity in its report "per [her] demand" (Am. Compl. ¶ 11) is also demonstrably false based on her own produced documents. On June 12, 2014 – the day after she spoke with Steve Talbot, as evidenced by CIR's internal communications – Plaintiff emailed CBC producer Carmen Merrifield, producer of the CBC Report to ask: "What made you decide to interview me in shadow? Which I greatly appreciate." A true and correct copy of this June 12, 2014 email from Plaintiff (identified as "alxyianna

duarte," at the email address alixyanna34@gmail.com[2]) to Carmen Merrifield, produced by Plaintiff in this action, is attached hereto as **Exhibit 23**. Obviously, if Plaintiff had indeed "demand[ed]" as a condition of the CBC interview that her identity be concealed – as she alleges in the Amended Complaint – there would be no reason to ask this question two years later.

24. Furthermore, Plaintiff's numerous online accounts publicly displaying her name and image undercut any plausible basis for this suit. Indeed, a simple search for Plaintiff's name online brings up numerous pictures of her in various social media accounts. Attached hereto as **Exhibit 24** is a true and correct copy of a screenshot of Plaintiff's profile (including a headshot) on the casting website ClaimFame.com, available at https://www.claimfame.com/members/erica-almeciga/. Attached hereto as **Exhibit 25** are true and correct copies of screenshots of Plaintiff's profile on LinkedIn, available at https://www.linkedin.com/pub/eryca-reta/57/221/515, and produced in this action at the Bates range CIR000220-24. The LinkedIn account has the same profile picture (a self-portrait taken in a mirror) that appeared on Plaintiff's Twitter account (@eryca_reta) as of June 11, 2014, the day before CIR alerted Plaintiff to her incriminating tweet. Plaintiff's LinkedIn profile also promotes a music album by Isaac Duarte, Plaintiff's current boyfriend who has submitted an affidavit in this matter. Plaintiff also promotes her modeling career in her LinkedIn profile, announcing that she "[s]tarted modeling again for GTO Productions and is now represented by Starz on the rize... Look for the up and coming 2014/2015 Low Rider calendar that I will be featured in." In response to CIR's discovery requests, Plaintiff now claims that the LinkedIn account "was not created by Erica Almeciga," that she "did not post this information," and that she is "unaware of" the calendar featuring her modeling work.

---

[2] Plaintiff follows up her initial email to Ms. Merrifield to clarify her identity, explaining "Hi Carmen its *[sic]* Eryca."

*See* Ex. 11 at Response No. 60.  To date, Plaintiff has produced absolutely no evidence that the LinkedIn account did not belong to her or was "hacked."

25. Since bringing this action, Plaintiff appears to have created new social media profiles under the name "Alxyianna Duarte."  This alias matches the email address Plaintiff used to contact CBC producer Carmen Merrifield, as evidenced by Plaintiff's production of documents.  *See supra* ¶ 23, Ex. 23.  Attached hereto as **Exhibit 26** are true and correct copies of screenshots from "Alxyianna Duarte's" Google-plus profile.  The profile picture for this account, taken in a mirror, is nearly identical to the profile picture on the LinkedIn account and the former profile picture on Plaintiff's Twitter account.

26. Plaintiff has also served responses to CIR's interrogatories in which she now claims, for the first time, that she was never married to Reta but was instead simply his "close friend."  A true and correct copy of Plaintiff's sworn interrogatory responses is attached hereto as **Exhibit 27**.  This claim is at odds with Plaintiff's numerous references to Reta as her "husband," including during her recorded interview (*see* Ex. 3 at 7:04, 12:00, 22:42; Ex. 4 at CIR000034, CIR000036, CIR000040), as well as in contemporaneous emails with CIR – who described Plaintiff as Reta's wife because both she and Reta consistently represented her as such.

27. More than twenty-one days have elapsed since CIR served its Notice of Motion for Sanctions pursuant to Fed. R. Civ. P. 11(c).  In that time, Plaintiff has refused to withdraw the Amended Complaint or to disclaim her false allegation that her signature on the Release is a "forgery."  Instead, Plaintiff served two affidavits – one from her, and one from her "off and on" boyfriend, Isaac Duarte – purporting to respond to the Georgia Documents.  A true and correct copy of Plaintiff's August 27, 2015 affidavit is attached hereto as **Exhibit 28**.  A true and correct copy of Mr. Duarte's August 27, 2015 affidavit is attached hereto as **Exhibit 29**.

28. In Plaintiff's new affidavit, she claims that she "never filed" the Georgia Documents and that "do[es] not even know a man by the name of Rosendo Gutierrez," who is the subject of the temporary protective order sought – and then voluntarily dismissed – in the Georgia Documents. Ex. 28 at ¶¶ 1-3. Yet in that same affidavit, Plaintiff admits that when the Georgia Documents were filed in June 2013, she resided at 2630 Windsor Woods Lane in Norcross, Georgia – the same address listed by petitioner Erica Almeciga in the Georgia Documents. *Compare* Ex. 28 at ¶¶ 11-12 *with* Ex. 15 at CIR000470, CIR000478. Plaintiff further admits in her affidavit that at the time of the CIR interview in August 2012, she resided at 2580 Windsor Woods Lane, Apt. J – the same address she gave on the Release. *Compare* Ex. 28 at ¶¶ 4-5 *with* Ex. 2. Notably, Mr. Gutierrez, the target of the Georgia restraining order, is listed in those documents as residing at 2580 Windsor Woods Lane, Apt. F – which would have made him Plaintiff's neighbor, and calls into serious doubt her claim that she "do[es] not even know a man by the name of Rosendo Gutierrez." *See* Ex. 15 at CIR000471, CIR000473, CIR000476, CIR000478.

29. Based on the foregoing, CIR believes that Plaintiff made false and misleading representations to the Court, in violation of Rule 11, when she alleged (a) that she never saw or signed the CIR Release (*see, e.g.*, Am. Compl. ¶ 34); (b) that the signature on the Release is not her handwriting and is "forged" (*see, e.g.*, Am. Compl. ¶¶ 34, 44, 46); (c) that she had "demand[ed]" that her identity be concealed in the CBC report (*see, e.g.*, Am. Compl. ¶ 11); and (d) that she entered into an oral agreement with CIR whereby CIR promised to conceal her identity in the CIR Report (*see, e.g.*, Am. Compl. ¶¶ 14, 16, 37, 39, 41, 50, 53, 54, 92, 93).

30. Based on the foregoing, CIR also believes that Plaintiff's counsel violated Rule 11 by failing to undertake a reasonable pre-filing investigation of the facts, which would have

revealed that Plaintiff's factual contentions are false and her claims are wholly lacking in evidentiary support. Plaintiff's counsel has further violated Rule 11 by continuing to press these claims even after being confronted with evidence that Plaintiff was fully aware of – indeed, publicly promoted – her appearance in the CIR Report, and that she had denied asking for her identity to be concealed in the CBC report. *See* Ex. 2.

31. To date, CIR has had to expend tens of thousands of dollars in legal fees responding to Plaintiff's baseless – and knowingly false – allegations. By the present motion, CIR seeks sanctions against Plaintiff and Plaintiff's counsel, including dismissal of the action and an award of fees and costs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 13, 2015 in San Francisco, California.

_____
Thomas R. Burke