UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERICA ALMECIGA,

                                               Case No. 15-CV-04319

           Plaintiff,

                                               Hon. Jed S. Rakoff

      -   against -

CENTER FOR INVESTIGATIVE
REPORTING, INC.,
BRUCE LIVESEY, JOSIAH HOOPER,

           Defendants.
------------------------------------------------------------X

## PLAINTIFF ERICA ALMECIGA'S MEMORANDUM OF LAW IN OPPOSITION TO CIR DEFENDANTS MOTION FOR JUDGMENT ON THE PLEADINGS

Kevin A. Landau
The Landau Group, PC
1221 Ave. of the Americas, 42nd Floor
New York, New York 10020
212.537.4025

*Attorneys for Plaintiff Erica Almeciga*

**TABLE OF CONTENTS**

**PAGE(S)**

Table of Authorities Cited                                                    ii-iv

I.      Factual Background                                                      1

II.     Applicable Standard Of Review                                          2

III.    Arguments                                                              3

    A.   Ms. Almeciga's Oral Agreement With CIR Is Not Barred        3
        By The New York Statute Of Frauds.

    (i)  Case Law.                                                        6

IV. Plaintiff's Remaining Claims Are Not Duplicative Of Her
Breach Of Contract Claim.                                                      9

    A.   Plaintiff's Fraud Claims Are Not Premised On The Same        9
        Underlying Facts As Her Breach Of Contract Claim –
        And It Is An Issue Of Fact Whether The Release At Issue
        Was Forged By CIR Defendants.

    B.   Plaintiff Alleged A Duty To Disclose That Could Support     13
        Her Fraudulent Concealment Claim – And This Is Necessarily
        a Question of Fact.

    C.   Plaintiff's Unjust Enrichment Claim Is Not Duplicative And   15
        Barred By The Statute Of Frauds.

V. Conclusion.                                                                 15

Certificate of Service

# TABLE OF AUTHORITIES CITED

**PAGE(S)**

*Abrams v. Gen. Motors Corp.*, 120 Misc.2d 371 (N.Y.Sup.Ct.1983)     13

*Alan B. Greenfield, M.D., P.C. v. Long Beach Imaging…*,     16
114 A.D.3d 888, 889 (2014)

*Almeciga v. Center for Investigative Reporting, Inc.*,     12
--- F.Supp.3d ----; WL 4931148 (2015)

*Berkowitz By Berkowitz v. New York City Bd. of Educ.*,     3
921 F.Supp. 963 (E.D.N.Y. 1996)

*Black v. Chittenden*, 69 N.Y.2d 665, 668–669 (1986)     14

*Blake v. Voigt*, 134 N.Y. 69 (1892)     7-8

*Coinmach Inds. Corp. v. Domnitch*, 37 N.Y.2d 889 (1975)     8

*D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 455 (1984)     6-7

*Doehla Greeting Cards, Inc. v. Summerfield*, 116 F.Supp. 68 (D.C.D.C 1953)     3

*El Entertainment U.S. LP v. Real Talk Entertainment, Inc.*,     11
85 A.D.3d 561, 562 (1st Dept. 2011)

*First Bank of Ams. v. Motor Car Funding*, 257 A.D.2d 287, 291–292 (1999)     10, FN 3

*Freedman v. Chemical Constr. Co.*, 43 N.Y.2d 260, 265 (1977)     7

*Goldberg v. Select Indus., Inc.*, 202 A.D.2d 312, 314–15 (1st Dep't 1994)     8

*Gora v. Drizin*, 300 A.D.2d 139, 140, 752 N.Y.S.2d 297 (1st Dep't 2002)     12

*Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir.2005)     2

*Joseph Sternberg, Inc. v. Walber 36th Street Associates*,     15-16
 187 A.D.2d 225, 228 (1993)

*Kluz v. Oracle Corp.*, No. 1:07-CV-184; WL 2406915 *2  (N.D.N.Y. 2007)     9

*Madison Apparel Group Ltd. v. Hachette Filipacchi Presse, S.A.*,     14
52 A.D.3d 385 (1st Dept. 2008)

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,     13

244 F.R.D. 204, 212 (S.D.N.Y. 2007)

*Massey v Byrne*, 112 A.D.3d 532 (2013)    11

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*    11
, 87 A.D.3d 287, 293-294. (1st Dept. 2011)

*McKenna v. Double G Development Corp.*,    9-10
251 A.D.2d 202, 203 (1st Dept. 1998)

*Miele v. Am. Tobacco Co.*, 2 A.D.3d 799 (2d Dep't 2003)    13

*MP Innovations, Inc. v. Atl. Horizon Int'l, Inc.*,    12
72 A.D.3d 571, 573 (1st Dep't 2010)

*Nasaba Corp. v. Harfred Realty Corp.*, 287 N.Y. 290, 293 (1942)    13

*Nat. Nal Serv. Stas. v. Wolf*, 304 N.Y. 332 (1952)    7

*North Shore Bottling Co. v. Schmidt & Sons*, 22 N.Y.2d 171 (1968)    9

*Ohanian v. Avis Rent A Car System, Inc.*, 779 F.2d 101, 106 (2d Cir.1985)    6

*Rabin v. MONY Life Ins. Co.*, No. 06 Civ. 775(LTS),    16
2007 WL 737474, at *1 (S.D.N.Y. Mar.8, 2007)

*Rabus v. Silentradio*, No. 90 Civ. 5037,    8
1992 WL 84586, *2 (S.D.N.Y. April 13, 1992

*Riley v. N.F.S. Serv., Inc.*, 891 F.Supp. 972, 975 (S.D.N.Y.1995)    4

*Robins v. Zwirner*, 713 F.Supp.2d 367 (2010)    6, FN 1, 8 FN 2

*Schara v. Commercial Envelope Mfg. Co., Inc.*,    8
321 F.3d 240, 243-244 (1st Cir. 2003)

*Super v. Abdelazim,* 108 A.D.2d 1040, 1041–42 (3d Dep't 1985)    8

*Sussex Leasing Corp. v. US West Fin. Servs., Inc.*,    8
877 F.2d 200, 202–03 (2d Cir.1989)

*TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 90 (2d Cir. 2005)    15

*Tomkins PLC v. Bangor Punta Consol. Corp.*, 194 A.D.2d 493, 493–94    10

*Trustees of First Baptist Church v. Brooklyn Fire Ins. Co.*,    6

iii

19 N.Y. 305, 307 (1859)

*Union Bank, N.A. v. CBS Corp.,* WL 1675087 (S.D.N.Y. 2009)                 16

*Watson* v. *MTV Network Enter., Inc.*, No. 156523-2012,                    12
2013 WL 5885726 (Sup. Ct. N.Y. Cty. Oct. 30, 2013)

*Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 462 (1982)                    7

*Wyle Inc. v. ITT Corp.*, 130 A.D.3d 438 (1st Dept. 2015)                 11

*Zaitsev v. Salomon Bros., Inc.*, 60 F.3d 1001, 1003 (2d Cir.1995)          3, 7

*Zuccarini v. Ziff-Davis Media, Inc.*, 306 A.D.2d 404 (2003)               15

**COURT RULES AND STATUTES**

Fed.R.C.P. 12(b)(6)                                                         2

Fed.R.Civ.P 12(f)(1)                                                        4

N.Y. GEN. OBLIG. LAW.. § 5-701(a)(1)                                        3

Plaintiff Erica Almeciga ("Plaintiff" "Almeciga") respectfully submits this Memorandum of Law in opposition to Defendants' Center for Investigative Reporting, Inc., Bruce Livesey and Josiah Hooper ("CIR Defendants") Motion For Judgment on the Pleadings, pursuant to Fed.R.C.P. 12(c), as follows:

## I.     FACTUAL BACKGROUND

Plaintiff exchanged a series of emails with Defendant Livesey about her interview with Defendant CIR, and the logistics concerning the interview.  Based upon this correspondence, CIR Defendants set Plaintiff's interview up for two days in August 2012 in Woodville, Texas where Mr. Reta was located, and provided Plaintiff with a plane ticket and accommodations to Woodville, Texas so she could be interviewed for the Report in August 2012.  On or about July 2012, Defendant Livesey informed Reta and Ms. Almeciga that Defendant CIR agreed to produce the Report. Compl.  ¶13. As required with the CBC interview, the Plaintiff's involvement with CIR was also conditioned upon the explicit requirement that Ms. Almeciga's identity be concealed. Compl ¶14.  On or about August 14, 2012, Ms. Almeciga travelled to Woodville, Texas to meet Defendant Livesey and his CIR co-producer, Defendant Hooper, and the interviews proceeded accordingly. Compl. ¶ 15-16.

Moreover, although Plaintiff did not receive any financial compensation for the interviews from CIR, she was supplied with an airline ticket, food and hotel so she could perform her end of the agreement, and participate in the interview. Compl. ¶ 18. Therefore, Plaintiff and Defendant CIR entered into a legally binding agreement, whereby Plaintiff agreed to participate in an interview, provided, that, her identity be concealed. Compl. ¶ 37.  Plaintiff did in fact participate in said interview, however,

1

Plaintiff's identity was not concealed by Defendant CIR as they had promised. Compl. ¶ 38. Plaintiff fully performed her services under this contract. Compl. ¶ 40.

In August 2014, Plaintiff's counsel sent Defendant CIR's attorneys a demand to Cease and Desist continuing to show Ms. Almeciga's interview without her identity being concealed. Defendant CIR refused. Instead, in August 2014, Defendant CIR provided Plaintiff with a Release, which Defendant CIR represented was purportedly signed by Plaintiff.  Compl. ¶ 33.  Ms. Almeciga adamantly denied having ever seen the proffered Release, much less having signed it. As such, Plaintiff submitted the proffered signature to a handwriting expert, who verified that it was indeed a forgery. Compl. ¶ 34. Plaintiff supplied counsel for CIR Defendants with her Affidavit adamantly denying that she ever signed the Release proffered by CIR, as well as a Report from an expert verifying that the Release was indeed a forgery.  Therefore:

"Defendants illegally obtained a signature by someone other than the Plaintiff, and offered said signature as if Ms. Almeciga had signed it herself. This forgery was purportedly then used by Defendant CIR as authorization to use the unconcealed interview of Plaintiff in their Report, and so that Defendant CIR could sell, and/or license, the Report to Univision. Compl. ¶ 46.

Moreover, Defendant CIR purportedly has an additional 5 hours of footage which they may attempt to use for additional stories and/or licensing fees because this report has been so successful. Compl. ¶ 101.

## II.    APPLICABLE STANDARD OF REVIEW

In deciding a Rule 12(c) motion for judgment on the pleadings, the court applies the same standard as is used in deciding a motion to dismiss pursuant to Fed.R.C.Pro. 12(b)(6). See *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir.2005).  A District court should grant a motion to dismiss under Rule 12(b) only if it is

clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, reading the facts alleged in the compliant in the light most favorable to plaintiff, and accepting those allegations as true. *Berkowitz By Berkowitz v. New York City Bd. of Educ.*, 921 F.Supp. 963 (E.D.N.Y. 1996). Motion to dismiss does not call for an adjudication on the merits of the case. *Doehla Greeting Cards, Inc. v. Summerfield*, 116 F.Supp. 68 (D.C.D.C 1953).

### III. ARGUMENTS

A. **Ms. Almeciga's Oral Agreement With CIR Is Not Barred By The New York Statute Of Frauds.**

Under the New York Statute of Frauds:

a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime. N.Y. GEN. OBLIG. LAW.. § 5-701(a)(1).

A contract that is "capable" of being performed within one year of its making is outside the statute. See *Zaitsev v. Salomon Bros., Inc.*, 60 F.3d 1001, 1003 (2d Cir.1995).

In the instant case, the facts alleged in Plaintiff's Complaint – some of which were admitted by Defendants in their Answer – plainly establishes that the contract at issue was not only "capable" of being performed within one year, but that the contract was actually performed by Plaintiff within one year of its making.

The intent of the parties agreement was clearly for Plaintiff to be flown down to Texas in August 2012 so that she could be interviewed by CIR. Plaintiff did in fact fly down to Texas for the interview based on the plane ticket and accommodations provided to her by CIR, and upon the condition that her identity would be protected in the

interview.   This was an exceptionally simple and straightforward transaction and agreement between Plaintiff and CIR.  See Compl. ¶¶ 13-18 (above).

In their Motion, CIR Defendants initially acknowledge this and begin their argument stating that:

"Plaintiff claims that the parties orally agreed that she would participate in the interview with the CIR Defendants in exchange for the CIR Defendants concealing her identity…"  Defendant CIR Memorandum of Law, 8-24-2015, p. 9 (Doc #52) (hereafter, "CIR Memo.").

This allegation alone precludes the application of the Statute of Frauds because it demonstrates that Plaintiff agreed to perform services (i.e. participate in the interview) for CIR Defendants on the condition that her identity would be concealed in the interview. It is well-settled that "for a contract to fall within this provision of the Statute of Frauds, there must be absolutely no possibility of performance of the contract within one year." *Riley v. N.F.S. Serv., Inc*., 891 F.Supp. 972, 975 (S.D.N.Y.1995).

However, instead of accepting this well established rule, CIR wishes to muddy the waters of this case with an esoteric and nebulous argument that completely misrepresents the intentions of the parties, and the facts alleged in Plaintiff's Complaint. For instance, CIR Defendants state that:

"Here, there is no question that Plaintiff contends this alleged oral agreement was meant to apply in perpetuity." CIR Memo, p. 6.

Plaintiff's agreement with CIR was for services, which she performed based upon CIR's offer.  Plaintiff performed the services over a 2 day period in Texas in August 2012 by giving said interviews.  The interviews were given after a series of communications were exchanged between Plaintiff and CIR Defendants to set the logistics of the interview up.  CIR provided Plaintiff with airfare to the interview, and

4

with accommodations during the period of time she was giving the interview.

CIR Defendants also contend that:

*"First*, Plaintiff does not allege that this purported oral confidentiality agreement was restricted to one year only."  CIR Memo, p. 6.

What alleged oral confidentiality agreement is CIR referring too?

Plaintiff did not allege an oral confidentiality agreement, therefore, CIR's argument relative to a non-existent oral confidentiality agreement is baseless and frivolous.

In her Complaint, Plaintiff alleged that she agreed to participate in the interview with CIR, on the explicit condition that her identity be concealed.  Pursuant to this agreement, Plaintiff traveled to Woodville, Texas, on or about August 14, 2012, and was interviewed accordingly. As such, Plaintiff performed the agreement with CIR within one year of the agreement's making.

As such, the facts alleged in Plaintiff's Complaint clearly demonstrate that Plaintiff's agreement with CIR was "capable" of being performed within one year of its making as CIR agreed to produce the Report in July 2012, and Plaintiff agreed to be interviewed for the Report thereafter - on condition that her identity be concealed -  and Plaintiff was actually interviewed in August 2012.

Therefore, Plaintiff and Defendant CIR entered into a legally binding agreement, whereby Plaintiff agreed to participate in an interview, provided, that, her identity be concealed. Compl. ¶ 37.  Plaintiff did in fact participate in said interview, however, Plaintiff's identity was not concealed by Defendant CIR as they had promised. Compl. ¶ 38. Plaintiff bargained with Defendant CIR for this condition, which the parties mutually agreed to and accepted. Compl. ¶ 39. Plaintiff fully performed her services under this

contract. Compl. ¶ 40.  Defendant CIR's failure to conceal Plaintiff's identity in the interview, and subsequent report, was a breach of contract. Compl. ¶ 41.

As such, Plaintiff has stated a cause of action for Breach of Contract against CIR Defendants that is not barred by the Statute of Frauds.  Further, CIR Defendants defense premised on the Statute of Frauds has absolutely no factual support as indicated above, and is devoid of legal analysis or logic.  The Statute of Frauds has nothing to do with the instant case, and CIR Defendants defense is frivolous and should be stricken by the Court pursuant to Fed.R.Civ.P 12(f)(1).

**(i)**      **Case Law.**

New York case law has consistently applied the same rules to the issue raised by CIR Defendants for over 150 years, and the one case that CIR Defendants solely rely on is a UCC case, not even under the same law or legal standard as the instant case, and is simply inapplicable. [1]

"[i]t is not the meaning of the statute that the contract must be performed within a year. If it can be so performed consistently with the language in which the parties have expressed themselves, in other words, if the obligation of the contract is not, by its very terms, or necessary construction, to endure for a longer period than one year, it is a valid agreement, although it may be capable of an indefinite continuance." *Trustees of First Baptist Church v. Brooklyn Fire Ins. Co.*, 19 N.Y. 305, 307 (1859); *D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 455 (1984).

"The one-year provision has been held not to preclude an oral contract unless there is 'not ... the slightest possibility that it can be fully performed within one year'." *Ohanian v. Avis Rent A Car System, Inc.*, 779 F.2d 101, 106 (2d Cir.1985).

In other words, a contract that is "capable" of being performed within one year of

---

[1] *Robins v. Zwirner,* 713 F.Supp.2d 367 (2010*), involved the sale of three original and unique paintings by the famed artist Marlene Dumas.  The Dumas paintings were unique works of art, and the Court discussed the UCC's application of the Statute of Frauds to the original works of art, and the case in general.  See *Robins, supra* at 374 ("Original works of art are within the small category of intrinsically unique goods for which a specific performance remedy is appropriate. See N.Y. U.C.C. § 2–716 & cmt. 2). Also, the Court noted "That art sales are not covered by the standards applicable to most sale-of-goods contracts [as] demonstrated by New York's enactment of special rules governing fine art transactions. See N.Y. Arts & Cult. Aff. L. § 1.01 et seq." *Robins, supra* at 374.

its making is outside the Statute. See *Zaitsev, supra* at 1003.

Consistent with this narrow interpretation, the New York Court of Appeals has:

"continued to analyze oral agreements to determine if, according to the parties' terms, there might be any possible means of performance within one year." *D & N Boening, Inc., supra* at 455.

"Wherever an agreement has been found to be susceptible of fulfillment within that time, in whatever manner and however impractical, this court has held the one-year provision of the Statute to be inapplicable, a writing unnecessary, and the agreement not barred." *Id.*

In the following situations, the oral agreements which were challenged under the

Statute of Frauds were all upheld as fully performable within one year:

Where either party had the option to terminate the agreement on seven months' notice. *Blake v. Voigt*, 134 N.Y. 69 (1892);

Where the agreement merely set the terms of anticipated prospective purchases but did not bind either party to any particular transaction. *Nat. Nal Serv. Stas. v. Wolf*, 304 N.Y. 332 (1952);

Where defendant had the option to discontinue at any time the activities upon which the agreement was conditioned. *North Shore Bottling Co. v. Schmidt & Sons*, 22 N.Y.2d 171 (1968);

Where defendant had the option of selling at any time the property on lease to plaintiff for four years. *Coinmach Inds. Corp. v. Domnitch*, 37 N.Y.2d 889 (1975);

Where no provision in the agreement directly or indirectly regulated the time for performance despite the extreme unlikelihood of its completion within one year. *Freedman v. Chemical Constr. Co.,* 43 N.Y.2d 260, 265 (1977);

Where employment was terminable for any just and sufficient cause wherever dismissal was deemed necessary for the welfare of the company. *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 462 (1982).

Performance, if it means anything at all, is "carrying out the contract by doing

what it requires or permits." *Blake v. Voigt, supra*, 134 N.Y. at p. 72.

Likewise, a motion for summary judgment based on the Statute of Frauds should

be denied where issues of material fact exist with respect to whether a particular contract

is covered by, or falls within, the Statute of Frauds. See, *Sussex Leasing Corp. v. US West Fin. Servs., Inc.*, 877 F.2d 200, 202–03 (2d Cir.1989) (reversing summary judgment because there was an issue of fact regarding whether the plaintiff was a finder or a principal for purposes of the Statute of Frauds); See *Rabus v. Silentradio*, No. 90 Civ. 5037, 1992 WL 84586, *2 (S.D.N.Y. April 13, 1992) (Keenan, J.) (denying summary judgment on the basis of the Statute of Frauds where the "murky" record did not sufficiently demonstrate that the contract could not be performed within one year); See *Goldberg v. Select Indus., Inc*, 202 A.D.2d 312, 314–15 (1st Dep't 1994) (questions of fact pertaining to whether the alleged contract could be performed within one year precluded summary judgment); See *Super v. Abdelazim,* 108 A.D.2d 1040, 1041–42 (3d Dep't 1985) (summary judgment denied where the trier of fact could conclude both that the oral contract between the plaintiff and the defendant did not involve merely compensation for the negotiation of a business opportunity and that the contract could be completed within a lifetime); See *Kluz v. Oracle Corp*., No. 1:07-CV-184; WL 2406915 *2 (N.D.N.Y. 2007), where the plaintiff alleged that since the oral contract at issue could be performed within 364 days the Statute of Frauds did not apply. See *Schara v. Commercial Envelope Mfg. Co., Inc*., 321 F.3d 240, 243-244 (1st Cir. 2003) ("Provision for payment of salary and bonus to national sales director in event company was sold removed employment agreement from ambit of New York statute of frauds, notwithstanding two year payout period for severance.") [2]

---

[2] Also, in *Robins*, the case CIR Defendants entirely rely on, the Court stated the general rule that New York courts look to "the main objective sought to be accomplished by the contracting parties" to determine whether a contract is for the sale of goods or rendition of services. *Robins, supra* at 375 (internal citations omitted). Contrary to CIR Defendants Motion, Ms. Almeciga is not a good, and therefore, her agreement with CIR was for the rendition of services.

**IV. PLAINTIFF'S REMAINING CLAIMS ARE NOT DUPLICATIVE OF HER
BREACH OF CONTRACT CLAIM.**

    **A.** <u>**Plaintiff's Fraud Claims Are Not Premised On The Same Underlying Facts
As Her Breach Of Contract Claim – And It Is An Issue Of Fact Whether The
Release At Issue Was Forged By CIR Defendants.**</u>

      As demonstrated by the foregoing, it is clear that Plaintiff's fraud claims are **<u>not</u>**

premised on the same underlying facts as her breach of contract claim.  See Compl. ¶¶

33-34, 46 above. Defendant CIR forged Plaintiff's signature to a Release, and then

offered said signature and Release as if Plaintiff had signed it herself.  Defendant CIR

then used this forged Release as authorization to use the interview of Plaintiff in their

Report, with her identity unconcealed, so that CIR could sell and/or license the Report to

Univision, as well as publish it on CIR's website and You Tube, and as justification to

avoid litigation with Plaintiff.

      For instance, in *McKenna v. Double G Development Corp.*, 251 A.D.2d 202, 203

(1st Dept. 1998), the court found an issue of fact as to whether the general release

allegedly signed by the plaintiff was forged, where the notary and witnesses to the release

were interested persons and there was no evidence of the plaintiff taking any action

consistent with his alleged execution of the release; in particular, the absence of any

consideration running to the plaintiff, warranted further exploration of its conscionability.

Specifically, in regards to the fraud cause of action, the Court in *McKenna*, stated that it

sufficed to give notice that the plaintiff was claiming that the defendants "arranged for a

false notarization of a release they knew to be forged, and that 'it [was] premature to

render an absolute determination at this preliminary stage as to what remedies are

available' for such wanton conduct, if true. Even if the claim for punitive damages can

only be said to arise from a breach of contract, an issue would still remain as to whether

defendants' alleged use of a falsely notarized forged release for the purpose of impeding a governmental investigation of a prevailing-wage claim should be categorized as an egregious independent tort that was part of a pattern of conduct directed at the public." *McKenna, supra* at 203.

As demonstrated by the above allegations from Plaintiff's Complaint, her claims for fraud are premised on substantially similar facts as those in *McKenna*.  Further, as demonstrated by the above allegations from Plaintiff's Complaint, she alleged that CIR Defendants misrepresented materials facts, and therefore stated a claim for fraud.

CIR Defendants contentions to the contrary are meritless.

It is well settled that if a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's breach of contract claim.  See *First Bank of Ams. v. Motor Car Funding*, 257 A.D.2d 287, 291–292 (1999) [3] ("Here, plaintiff's fraud claim is premised on allegations that defendants misrepresented various pertinent facts about the individual loans that plaintiff purchased under the Agreement. This cannot be characterized merely as an insincere promise of future performance.") See, *Tomkins PLC v. Bangor Punta Consol. Corp.*, 194 A.D.2d 493, 493–94, (where misrepresentation of specific product gave rise to fraud claim as well as breach of contract claim).  See *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.,* 87 A.D.3d 287, 293-294. (1st Dept. 2011), ("The motion court properly concluded that the fraud cause of action is not duplicative of the contract claim alleging breaches of certain representations and warranties." "It is of no consequence that some of the

---

[3] "Unlike a misrepresentation of future intent to perform, a misrepresentation of present facts is collateral to the contract..." *Id.*

allegedly false representations are also contained in the agreements as warranties and form a basis of the breach of contract claim.") See *Wyle Inc. v. ITT Corp*., 130 A.D.3d 438 (1st Dept. 2015) (where the buyer of subsidiary's stock adequately alleged seller's misrepresentation of present fact collateral to stock purchase agreement based on seller's intentional failure to disclose ongoing audit of subsidiary's government contract, as required to state cause of action for fraudulent inducement that was not duplicative of breach of contract cause of action; misrepresentations at issue were also subject of contractual warranty, but seller's failure to disclose audit directly resulted in buyer's alleged losses by causing it to pay more than it would have had it known of audit.) See *El Entertainment U.S. LP v. Real Talk Entertainment, Inc*., 85 A.D.3d 561, 562 (1st Dept. 2011) (Defendant's statement that he needed reserve monies to pay his personal expenses did not preclude fraud plaintiff from relying, over a year later, on defendant's later statements of using the monies for legitimate business purpose.)

Further, the case law asserted by Defendant CIR is not even remotely similar to the facts and allegations from Plaintiff's Complaint. *Massey v Byrne*, 112 A.D.3d 532 (2013), was a case that was barred by the Statute of Frauds because there was no agreement that existed in writing to convey half of the interest in the condominium at issue to the plaintiff. *Id* at 533.  The instant dispute does not concern real property, and therefore, it is completely inapplicable to the instant dispute.

Similarly, Defendant CIR cites to *MP Innovations, Inc. v. Atl. Horizon Int'l, Inc.*, 72 A.D.3d 571, 573 (1st Dep't 2010), where the plaintiff's claim for fraud was dismissed where the plaintiff's allegations were essentially that defendant never intended to honor its promise to pay plaintiff a commission for providing it with the marketing concept for

the product at issue.  Again, Plaintiff's case has nothing to do with a product or sales commissions, and Plaintiff's cause of action for fraud is not based on Defendant CIR failing to honor a promise; its based upon Defendant CIR forging Plaintiff's signature to a Release, and then using that Release to justify licensing and publishing the story.

Likewise, *Gora v. Drizin*, 300 A.D.2d 139, 140, 752 N.Y.S.2d 297 (1st Dep't 2002), is a case involving real property and bankruptcy, and has no application to the facts or law of the instant case.

Similarly, the issues raised in *Watson* v. *MTV Network Enter., Inc.*, No. 156523-2012, 2013 WL 5885726 (Sup. Ct. N.Y. Cty. Oct. 30, 2013), were previously raised by Defendant Univision, and this Court, in a well reasoned Order and Opinion explained why such issues were applicable to Defendant Univision, but not to Defendant CIR, and why Plaintiff could maintain claims against Defendant CIR and not Defendant Univision (mainly because, like MTV in *Watson*, here Defendant Univision was not a party to the agreement between CIR and Plaintiff).  See *Almeciga v. Center for Investigative Reporting, Inc.*, --- F.Supp.3d ----; WL 4931148 (2015).  Further, unlike the plaintiff in *Watson*, Plaintiff never signed the Release, and has consistently maintained that it was forged, and that such forgery was used by CIR as justification to license the Report to Univision, and to avoid a lawsuit from Plaintiff.  The other cases CIR cites to are equally inapplicable as the ones above, and also involve either real property or cases where the allegations from the plaintiff's complaint are based on the same facts and allegations as the plaintiff's breach of contract claim.

As demonstrated by the foregoing, Plaintiff's claim for fraud are based upon CIR forging Plaintiff's signature to a Release, and using said forgery as justification to license

the Report to Univision, and to avoid litigation with Plaintiff. This has nothing to do with

Plaintiff's breach of contract claim as outlined above.

**B.    Plaintiff Alleged A Duty To Disclose That Could Support Her Fraudulent Concealment Claim – And This Is Necessarily a Question of Fact.**

"A claim for fraud can also be based on concealment of information if the plaintiff, in addition to showing an intentional failure to disclose a material fact reasonably resulting in injury, can demonstrate that the defendant had a duty to disclose material information. Such a duty can arise in the course of negotiations pursuant to a business transaction in three situations— (3) "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 212 (S.D.N.Y. 2007) (internal citations omitted).

With respect to the duty to disclose, "New York recognizes a cause of action to recover damages for fraud based on concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair." *Miele v. Am. Tobacco Co.*, 2 A.D.3d 799 (2d Dep't 2003); see also *Abrams v. Gen. Motors Corp.*, 120 Misc.2d 371 (N.Y.Sup.Ct.1983) ("If one party has superior knowledge or has means of knowledge not available to both parties, then he is under a legal obligation to speak and the silence would constitute fraud."); *Nasaba Corp. v. Harfred Realty Corp.*, 287 N.Y. 290, 293 (1942) ("Concealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations of fact.").

Here, CIR Defendants knowingly concealed or suppressed a material fact from

Plaintiff with an intent to defraud her, which included, Defendant CIR using the forged

Release to license the Report to Univision, as well as Defendant CIR using the forged

Release in an attempt to avoid litigation with Plaintiff, which on its own would support a

cause of action for fraud.  Compl. ¶¶ 46, 64.  Defendants were under a duty to disclose

this fact to Plaintiff based upon their relationship with Ms. Almeciga regarding her

appearance in the Report.  Compl. ¶ 65.  The information that Defendants' gave to

Plaintiff was likely to mislead her for want of communication of that fact. Compl. ¶ 66.

Defendants' had exclusive knowledge of material facts regarding publication of the

Report, and Ms. Almeciga's appearance in it, that were not otherwise known to Plaintiff

until after the broadcast.  Compl. ¶ 67.

CIR Defendants plainly had superior knowledge or means of knowledge not available to Plaintiff relative to CIR Defendants use of the forged Release with Univision, and relative to CIR Defendants use of the forged Release in its attempts to avoid litigation with Plaintiff.   CIR Defendants concealed both of these facts from Plaintiff with an intent to defraud her. CIR Defendants were duty bound in honesty to disclose these facts to Plaintiff, and their failure to do so represents a classic case of fraudulent concealment (as well as a factual issue).

For instance, in *Madison Apparel Group Ltd. v. Hachette Filipacchi Presse, S.A.*, 52 A.D.3d 385 (1st Dept. 2008), the complaint alleged that the defendants had peculiar and superior knowledge of their ongoing negotiations with a third-party licensee, that the plaintiff was unable to discern such negotiations through the use of reasonable intelligence or due diligence, and that the defendants were aware that plaintiff sought to terminate the parties' agreement at least in part due to its lack of knowledge about the negotiations; defendants had a duty to disclose the negotiations (Motion to Dismiss denied).  See *Black v. Chittenden*, 69 N.Y.2d 665, 668–669 (1986), where the New York Court of Appeals held that whether the condition of bowling lanes was a matter peculiarly within bowling alley seller's knowledge and whether buyers could have discovered truth about condition through exercise of ordinary intelligence constituted genuine issues of material fact precluding summary judgment for seller in buyers' action for fraudulent misrepresentation.

In *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 90 (2d Cir. 2005), the case CIR Defendants cite to, the defendant did not conceal any information that, if known

by the plaintiff, would have made its obligations under the SLA – Service Level Agreement less valuable to the plaintiff. "It simply failed to perform."  *Id* at 92.

Here, CIR Defendants and Plaintiff both performed, and CIR Defendants did in fact conceal information from Plaintiff, that if known by Plaintiff, would have made its obligations under the Release less valuable to Plaintiff – and in fact substantially increased Plaintiff's suffering because it exposed her to millions of more people, and CIR Defendants attempted to assuage their guilt and fraud by presenting the forged Release to Plaintiff in hopes that it would prevent litigation.

As such, Plaintiff can clearly maintain her cause of action for fraudulent concealment against CIR Defendants.

### C.  Plaintiff's Unjust Enrichment Claim Is Not Duplicative And Barred By The Statute Of Frauds.

It is well settled that where there is a bona fide dispute as to the existence of a contract, or where the contract does not cover the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as contract, and will not be required to elect his or her remedies.  See *Joseph Sternberg, Inc. v. Walber 36th Street Associates*, 187 A.D.2d 225, 228 (1993); *Zuccarini v. Ziff-Davis Media, Inc*., 306 A.D.2d 404 (2003).

In the instant case, there is clearly a bona fide dispute concerning the existence of the contract at issue, and what the contract in dispute covers, therefore, Plaintiff is not required to elect her remedies, and may proceed on her unjust enrichment claim as well as her breach of contract claim.[4] See *Alan B. Greenfield, M.D., P.C. v. Long Beach Imaging*…,114 A.D.3d 888, 889 (2014) (Allegations that radiology clinic used corporation's files and records to enrich itself at the corporation's expense, were adequate

---

[4] For instance, Defendant CIR purportedly has an additional 5 hours of footage which they may attempt to use for additional stories and/or licensing fees because this report has been so successful. Compl. ¶ 101.

to state a cause of action against radiology clinic to recover damages for unjust enrichment.) See *Joseph Sternberg, Inc*., supra,at 228 (the trial court erred in dismissing Plaintiff's quasi-contract claim where the contract was silent as to plaintiff's entitlement to a commission in the event a sale of the building occurred for a lesser price.) Similarly, see *Rabin v. MONY Life Ins. Co*., No. 06 Civ. 775(LTS), 2007 WL 737474, at *1 (S.D.N.Y. Mar.8, 2007), and *Union Bank, N.A. v. CBS Corp.,* WL 1675087 (S.D.N.Y. 2009), ("it is not appropriate for this Court to rule—at the inception of this case and as a matter of law—that the parties' agreements govern the instant dispute.")

Therefore, Plaintiff may proceed on her unjust enrichment claim as well as her breach of contract claim.

## V. CONCLUSION.

As demonstrated by the foregoing, Plaintiff respectfully submits that CIR Defendants Motion for Judgment on the Pleadings pursuant to Fed.R.C.P. 12(c) must be denied in its entirety. Plaintiff should be entitled to proceed with discovery and develop her case against CIR Defendants.

Dated: September 15, 2015
New York, New York

Respectfully submitted,

**THE LANDAU GROUP, PC**

By: _____
Kevin A. Landau (pro hac vice admitted)
1221 Ave. of the Americas, 42nd Floor
New York, NY 10020
Phone: 212.537.4025/248.671.0884 (fax)
Email: kevin@thelandaugroup.com
*Counsel for Plaintiff Erica Almeciga*

16

## CERTIFICATE OF SERVICE

This is to certify that the foregoing papers have been electronically filed with the Clerk of the Court on September 15, 2015. Notice of this filing is sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's ECF System.

Respectfully submitted,

**THE LANDAU GROUP, PC**

By:

Kevin A. Landau
1221 Ave. of the Americas, 42nd Floor
New York, NY 10020
Phone: 212.537.4025/248.671.0884 (fax)
Email: kevin@thelandaugroup.com
*Counsel for Plaintiff Erica Almeciga*

23

17