UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ERICA ALMECIGA,

              Plaintiff,

     -  against -

CENTER FOR INVESTIGATIVE
REPORTING, INC.,
BRUCE LIVESEY, JOSIAH HOOPER,

              Defendants.
-------------------------------------------------------------X

Case No. 15-CV-04319

Hon. Jed S. Rakoff

**PLAINTIFF ERICA ALMECIGA'S MEMORANDUM OF LAW IN OPPOSITION
TO CIR DEFENDANTS MOTION FOR SANCTIONS**

Kevin A. Landau
The Landau Group, PC
1221 Ave. of the Americas, 42nd Floor
New York, New York 10020
212.537.4025

*Attorneys for Plaintiff Erica Almeciga*

**TABLE OF CONTENTS**

**PAGE(S)**

Table of Authorities Cited                                                                    ii

I.       Factual Background                                                                   1

A.       The Generation Z Story; Cir's Awareness Of The Dangers They Had Placed
Plaintiff In; And CIR's Withholding Of The Generation Z Story.                 1

B.       Forged Release.                                                                      5

C.       Bruce Livesey.                                                                       7

II.      LEGAL STANDARD                                                                       10

III.     THERE IS NO BASIS WHATSOEVER FOR CIR DEFENDANTS RULE 11
MOTION FOR SANCTIONS; AND THE COURT SHOULD IMPOSE SANCTIONS
AGAINST CIR DEFENDANTS, AND ITS COUNSEL, FOR FILING SUCH A
FRIVILOUS AND BASELESS MOTION PURSUANT TO RULE 11.                            10

A.       Plaintiff's Claims Are Well Grounded In Fact And Law And Supported By A
Substantial Amount Of Evidence As Demonstrated Herein; Counsel For CIR Defendants
Is Not The Jury Or The Judge Of Plaintiff's Credibility; There Is No Basis To Impose
Sanctions Against Plaintiff Or Her Counsel.                                    10

B. CIR Defendants Counsel's Assertion That Plaintiff's Counsel Failed To Undertake A
Reasonable Investigation, And That The Claim Asserted Against Cir Defendants Is
Frivolous Is Patently Absurd, And The Court Should Sanction Counsel For Cir
Defendants Accordingly Pursuant To Rule 11(C)(1)(A).                           15

IV.      CONCLUSION.                                                                          18

# TABLE OF AUTHORITIES CITED

**PAGE(S)**

*Almeciga v. Center for Investigative Reporting, Inc.,*                                    17
 --- F.Supp.3d ----; WL 4931148 (2015)

*Calloway v. Marvel Entertainment Group*, 138 F.R.D. 646 (S.D.N.Y. 1991),
*aff'd in relevant part*, 9 F.3d 237 (2d Cir. 1993)                                13, FN3

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)                           14-15

*DeNovellis v. Shalala*,124 F.3d 298, 305–306 (1st Cir. 1997)                        15

*Draper and Kramer, Inc. v. Baskin–Robbins, Inc.*,
690 F.Supp. 728, 732 (N.D.Ill. 1988)                                              10-11

*Local 106 v. Homewood Memorial Gardens, Inc*., 838 F.2d 958 (7th Cir.1988)      11

*Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir 2001)                   16

*Safe-Strap Co., Inc. v. Koala Corp.*,                                    10-11, 14-17, FN 4
270 F.Supp.2d 407, 412 (SDNY 2003)

## COURT RULES AND STATUTES

Fed.R.C.P. 11                                                         10-11, 14-15

Fed.R.C.P. 11(c)(1)(A)                                                       15-16

Fed.R.C.P. 11(b)(3)                                                            10

Fed.R.C.P .37(b)(2)(a)                                                       5, FN2

## OTHER AUTHORITY

Advisory Committee Note for Rule 11                                            14

Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments)            15-16, 17 FN4

Fed.R.Civ.P. 56(e) advisory committee's note (1963 Amendments)                 15

*Georgene M. Vairo,* Rule 11 Sanctions: Case Law Perspectives              15-16
And Preventive Measures § 4.01[c][3][F] (2d ed. Supp.1994)

Plaintiff Erica Almeciga ("Plaintiff" or "Almeciga") respectfully submits this Memorandum of Law in opposition to Defendants' Center for Investigative Reporting, Inc., Bruce Livesey and Josiah Hooper ("CIR Defendants") Motion For Sanction, pursuant to Fed.R.C.P. 11, as follows:

## I.      FACTUAL BACKGROUND

### a.  <u>The Generation Z Story; CIR's Awareness Of The Dangers They Had Placed Plaintiff In; And CIR's Withholding Of The Generation Z Story.</u>

CIR Defendants start their Motion with the video of Plaintiff's interview:

"Starting from the video itself, it is plain that Plaintiff's interview was recorded in full light – not behind a screen, in shadow, or with any indication whatsoever that reflected a prearranged understanding to conceal her identity." CIR Memorandum of Law in Support of Motion for Sanctions, p. 1 ("Memo.") (Doc #55).

Likewise, in his Affidavit, Defendant Livesey, states as follows:

"Had Ms. Almeciga-Reta asked for her identity to be obscured in the CIR Report, I would have set up the interview conditions to reflect that request. For example, I would have arranged for the interview footage to be shot with Ms. Almeciga-Reta in shadow or behind a screen, rather than conducting a face-to-face interview with standard lighting." Livesey Aff. ¶ 4 (Doc #56).

Unbeknownst to Plaintiff, or her counsel, and never disclosed by CIR Defendants during this litigation or any of the prior correspondence exchanged between the parties before this litigation ever began, was a story produced by CIR Defendants, entitled "Generation Z: Child Soldier's of the Zetas."

In the Generation Z story, portions of Plaintiff's interview appear.  However, unlike the previous story ("I Was a Hitman For Miguel Trevino"), in the Generation Z story, Plaintiff's face is blocked out.  See for instance at minute 1:55.  Further, in the Generation Z story, unlike the previous story, Plaintiff's name is also concealed; instead

she is only referred to as the "Ex-wife of Rosalio Reta." See for instance, at minute 25:03. A copy of the Generation Z story is available at:

https://www.youtube.com/watch?v=np1TF91d85s

https://www.revealnews.org/?s=josiah%20hooper (CIR Defendants website)

Plaintiff has also attached screen shots of the story to this Response, and has requested a copy of this story from CIR, however, they have been unwilling to provide it to Plaintiff, therefore, Plaintiff was forced to download the story from You Tube in order to provide a copy of it to the Court. Attached hereto as **Exhibit One**. [1]

Therefore, starting from the interview of Plaintiff, and the portions of it featured in the Generation Z story, it is clear that there was "a prearranged understanding to conceal her identity."

The Generation Z story plainly establishes that there was an understanding between CIR and Plaintiff that her identity would be concealed – otherwise, why would CIR block Plaintiff's face out, and conceal her identity in the Generation Z story?

Further, and as conceded by CIR, Plaintiff began communicating her concerns to CIR directly in at least June 2014 – nearly a year before her initial Complaint was filed. CIR never informed Plaintiff of the Generation Z story, even though she demanded that the other story be taken down, and explained how this story was destroying her life because her identity was not concealed as agreed with CIR. For instance, on June 10, 2014, Andrew Becker, a staff reporter at CIR, recounted in an email to Robert Salladay of CIR, that he received a phone message from Plaintiff where she claimed as follows:

"She claims that her face was supposed to be blurred out in the video. She claims that her entire name was not supposed to be shown. She claims that she was supposed to

---

[1] See Kevin Landau Affirmation, ¶ 4-5.

get a transcript of the interview but wasn't. She claims that she was never notified that the interview aired or was to air as was originally agreed upon. She claims that she has faced retribution since the video aired. Among her claims – her house in Norcross, Georgia, was broken into and vandalized, with the letter "Z" spray painted on the wall. She claims that she has received dead rats in the mail and that her email has been hacked and phone tapped/hacked as her conversations have been recorded and shared with Reta in prison. She also claims that she has been 'greenlighted', meaning she is a target for execution…" **Ex. 2:** Becker email, 6-10-2014.

Therefore, CIR Defendants were plainly aware of the dangers, and heartache, Plaintiff faced as a result of CIR publishing the story without her identity being concealed – she explained to CIR that she was a target for execution from the most sophisticated and technologically advanced drug cartel on earth because of it!

Further, Mr. Becker even states that Plaintiff "didn't want any legal troubles, but that she wanted 'resolution.'" See Becker email, 6-10-2014.

However, resolution from CIR was not forthcoming, and Plaintiff was forced to retain counsel to get the story removed from You Tube. Subsequently, counsel for Plaintiff sent counsel for CIR a cease and desist letter, which again explained that "Ms. Almeciga's safety and the security of her loved ones have been placed in extreme peril" because of the broadcast, and requested of CIR to immediately:

> i.     ***Cease and Desist*** with former, current and future broadcasts of any nature revealing Ms. Almeciga's identity, forthwith. Please make immediate efforts to remove all photos, videos and references of any kind of Ms. Almeciga that appear online or any other media forum. **Ex. 3:** Cease and Desist Letter, 7-11-2014.

Once counsel for Plaintiff got involved, neither CIR nor its counsel advised counsel for Plaintiff of the Generation Z story, even though CIR had been made aware on multiple occasions of the dangers Plaintiff was in as a result of her interview. Further, neither CIR, nor its counsel, disclosed the Generation Z story during discovery, and made no mention of it throughout this case, even though the discovery period is about to end,

and trial is scheduled for late November.  CIR Defendants clearly did not disclose the Generation Z story because they wanted to license the story to PBS (which they did) and were hoping that Plaintiff would not discover it because it would have jeopardized CIR's transaction with PBS.  For instance, on July 16, 2014, after CIR had already spoken with Plaintiff, Steven Talbot and Susanne Reber of CIR exchanged a series of emails regarding the Generation Z story and Plaintiff.   **Ex. 4**: Emails between Steve Talbot and Susanne Reber, 7-16-2014.  In these emails, Mr. Talbot explains that the Generation Z story was "all the more relevant and current" because of "the drug gang violence in Honduras and forced recruitment of kids by the cartels."  Ms. Reber responds to Mr. Talbot that she "agree[s] that it would be great to get Generation Z up on I Files, but that she was waiting "to find out Judy's assessment on…" [Which for some reason the rest of this sentence has been redacted by CIR].  Mr. Talbot then responds that "Yes, Gen Z must be legally cleared by Judy re: the Eryca issues…But then putting it online makes sense to me."

Less than 2 weeks later, and regardless of the foregoing, it was announced – at least as early as July 25, 2014 - , that CIR was partnering with PBS to air the story Generation Z: Child Soliders of the Zetas, on PBS affliates throughout the country. See **Ex. 5**: Reveal Press Release story, 7-25-2014.

An associate attorney from Plaintiff's law firm, who has been intimately involved in this litigation since its inception, found the Generation Z story on You Tube while researching and investigating Plaintiff's case (on or about September 12, 2015).  First thing on September 16, 2015, this associate attorney sent counsel for CIR a letter.  See **Ex. 6:** Zachary Landau Letter, 9-16-2015.

4

Only after counsel for Plaintiff brought the Generation Z story to counsel for CIR's attention did CIR acknowledge its existence, and absurdly contend in response that CIR "do[es] not agree that it is relevant to your client's claims and do not agree that it would be admissible at trial. " See **Ex. 7**: Schary Email, 9-16-2015. [2] Further, the footage of Plaintiff used in both stories is from the same interview, which means that CIR changed the interview to comply with the terms of its agreement with Plaintiff, which demonstrates that they were plainly in breach and had no right to sell or license the interview of Plaintiff if her identity was not concealed (which they had already done with Univision).

Notwithstanding the foregoing, the damage had already been done, and millions of people had already viewed the interview of Plaintiff denouncing Los Zetas.

b. **Forged Release.**

CIR Defendants did not even produce the forged Release to Plaintiff until August 2014 – less than a month after it had announced its partnership with PBS, and that the Generation Z story would be airing as a result.

When CIR Defendants originally sent the forged Release to Plaintiff's counsel, in response to the Cease and Desist Letter that Plaintiff's counsel sent to CIR, Plaintiff adamantly denied that she signed the Release produced. Plaintiff provided CIR with an Affidavit attesting to this fact. **Ex. 8:** Erica Almeciga Affidavit, 8-18-2014. Further, and as an added level of precaution and verification, a Report from a handwriting expert that

---

[2] The fact that Plaintiff's identity was unconcealed in one story, and protected in the other, is the most relevant fact of this entire case; and renders CIR Defendants instant Motion patently ridiculous and sanctionable to the point of the Court entering a Default Judgment against them (and for CIR's wanton and deliberate withholding of material evidence). See Fed.R.C.P 37(b)(2)(a).

had evaluated Plaintiff's signature in comparison to the Release, who gave an opinion that the Release was forged – Plaintiff supplied her Affidavit and the Expert's Report to CIR accordingly.

Once the discovery period commenced Plaintiff engaged the services of a different handwriting expert who again analyzed Plaintiff's signatures and handwriting in comparison to the Release, and opined that the Release was "not signed by Erica Almeciga.  The Erica Almeciga signature on the question document does not match the known signature of Erica Almeciga, thereby revealing that someone did indeed forge the Erica Almeciga signature on the questioned document." See **Ex. 9:** Wendy Carlson Rule 26 Report, 8-20-2015, p. 8.

Plaintiff also provided CIR Defendants with the Affidavit of Rosalio Reta the main subject of the stories at issue, attesting that his agreement with CIR was that he would participate in the stories on the condition that Plaintiff's identity be concealed and protected – and that Plaintiff's agreement with CIR was that she would participate in the interview on the condition that her identity be concealed:

"I agreed to let Mr. Livesey interview my fiancé Ms. Almeciga on one condition (her identity not disclosed) for fear of putting a target on her head. Mr. Livesey accepted an drew out a contract stating that the interview was to be conducted in a secure area and have my Fiance face blurred out for fear of reprisal." See **Ex. 10**: Reta Affidavit, 12-21-2014.

Moreover, Plaintiff supplied CIR Defendants with additional affidavits from Plaintiff, and an uninterested party, that expressly refuted that Plaintiff had ever filed the Restraining Order, which CIR Defendants, through their counsel's affidavit now claim proves that Plaintiff signed the Release at issue.  Plaintiff explained in this Affidavit that someone broke into her house, and stole her identification, passport, social security card,

her children's birth certificates, and a police report was filed accordingly documenting the incident (which Plaintiff also supplied to CIR Defendants). Further, Mr. Duarte confirmed Plaintiff's statements in his Affidavit, that he was with her during this period of time, and that she never filed the TRO that CIR Defendants point to. Further, Mr. Duarte attested that he had personally witnessed Plaintiff sign her name thousands of times and that the signature on the Release was not hers. See **Ex.: 11:** Affidavit(s) of Erica Almeciga and Issac Duarte.

Moreover, if counsel for CIR Defendants had actually read the Court papers that they rely so heavily on, they would have noticed the fraudulent nature of them as well. For instance, in the Petitioner's Voluntary Dismissal of Family Violence Petition, it states as follows:

"Our daughter was born 3 months premature and may need blood from her father as well as I am leaving / moving back to Mass on 6/30/2013. My daughter just had open heart surgery and she is 8 days old. And I was told that she may not make it. And I feel that he will be of no harm to her or myself at this point. So I please ask you to dismiss this order. As we will be thousands of miles away. Thank you." See CIR Defendants Exhibit F (Doc #53-5); See Kevin Landau Affirmation, ¶ 17.

Plaintiff does not have a daughter that was born 3 months premature; nor does Plaintiff have a daughter that was born in 2013, and had open heart surgery when she was 8 days old. Further, Plaintiff moved back to Massachusettes in October of 2013, not in June of 2013. Moreover, on page 3 of the Petition for Relief under the Stalking Statute, it states that: "He [Respondent] is an illegal alien and he becomes extremely violent when he is intoxicated." However, on the Respondent's Identifying Fact Sheet it states that Rosendo Gutierrez's social security number is "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."

   c. **Bruce Livesey.**

Since CIR Defendants have so maliciously and wantonly raised issues of credibility in their Motion, the Court should also be made aware that Mr. Livesey was fired from his position at Global News, in April 2015, as a result of "journalistic responsibility" and because Livesey's work "didn't meet our standards for balance." Therefore, Global News fired Livesey and cancelled 2 other upcoming reports he had scheduled because that was "what responsible journalists had to do when faced with his imbalanced journalism." **Ex. 12:** Canadaland story, 4-13-2015, URL: http://canadalandshow.com/article/global-news-kills-koch-brothers-story-fires-journalist#. Mr. Livesey has also written multiple stories that demonstrate his "imbalanced journalism" and his disregard for facts in his reporting, and the subjects he has written about. For instance, in one piece, entitled "Just How Stupid is Niall Ferguson? Very Stupid", Mr. Livesey calls Dr. Ferguson "a cocky often nasty piece of business" and "an academic fraud." Further, in the same piece he calls Henry Kissinger "one of the West's greatest unconvicted war criminal…"See **Ex. 13**. Plaintiff could also point to an editorial by Mr. Livesey which demonstrates how defensive and vindictive Mr. Livesey can become when anyone criticizes or challenges his work. See **Ex. 14:** "Intellectual Dishonesty at the Ivey Business Journal" 1-3-2014: A 6 page singled spaced diatribe vehemently attacking the Ivey Business Journal, and its editor, Thomas Watson, because they criticized a book Mr. Livesey had written 2 years earlier.  Mr. Livesey also gave an interview following his termination from Global News, which demonstrates the desperate situation that Mr. Livesey found himself in because of the termination:

"I thought Global was the last place I could do this work and still get paid a living wage.  It was disheartening to get canned there.  Before Linda came along with this offer I was looking at a possibly very bleak existence in the media." **Ex. 15:** Livesey Interview with the National Observer, April 22, 2015.

This interview demonstrates that Mr. Livesey has admittedly had a career where he is used to getting away with his reporting tactics:

"Actually, I've had a career where I'm kind of shocked half the time at what I get away with."

Moreover, Livesey knew precisely where Plaintiff lived in Georgia and had actually visited her residence in 2012 for no apparent reason. See **Ex. 16**: Livesey Email, 8-28-2014.   Plaintiff could point to the foregoing, and Livesey's dire situation, to explain that he had, and has, every incentive to lie to this Court about CIR's agreement with Plaintiff, and why her face was not concealed in the interview he conducted.  For instance, on July 10, 2012, he wrote Plaintiff an email commenting on the CBC story, where Plaintiff's identity was concealed. See **Ex. 17:** Livesey Email, 7-10-2012.  Or, an email he sent to Stephen Talbot of CIR, in response to whether he knew if Plaintiff "ever did any other media interviews?"  To which Livesey replied: "Yes, she did one with CBC Television in 2012, not long before we met her. **They blurred her out**. See **Ex. 18:** Livesey Email, 6-11-2014 (emphasis added). Also, in a letter that Livesey wrote to Reta on May 22, 2012, he states: "But Mexico is becoming increasingly lawless and the Zetas' propensity for violence, as you know, makes it not only a dangerous story to film, but difficult to get people to talk on camera."  **Ex. 19:** Livesey Letter, 5-22-2012.

Plaintiff supplied CIR Defendants counsel with all of the foregoing information and documentation. However, counsel for CIR Defendants did not have the courtesy or decency to inform counsel for Plaintiff that the Generation Z story even existed, and when confronted with it, counsel for CIR Defendants began double talking and tried to

find a way around it, instead of conceding its existence and relevance to the instant case,

withdrawing its motion, and trying to figure out a way to resolve this matter.

Notwithstanding the foregoing, CIR Defendants now move on the basis of their

counsel's affidavit to explain to the Court that this restraining order that counsel

miraculously discovered on July 20, 2015, nearly 3 months after this action was filed

(and after CIR Defendants had already answered the Complaint, filed a Notice of

Removal, and engaged in a lengthy motion and briefing period) proves that Plaintiff is

lying and CIR Defendants are not; and that counsel for Plaintiff failed to investigate

Plaintiff's case regardless of the foregoing.   The arrogance of CIR Defendants counsel,

and utter disrespect of this Court and counsel for Plaintiff, is remarkable.  Unfortunately

for CIR Defendants, there are Rules of Evidence and Civil Procedure, which render their

counsel's instant Motion baseless and entirely disingenuous.

## II.     LEGAL STANDARD

"Under Rule 11(b)(3), "sanctions may not be obtained unless a particular
allegation is utterly lacking in support." Courts typically look for statements which rise to
the level of direct falsehoods before they find that sanctions are warranted pursuant to
Rule 11(b)(3)."  (internal citations omitted).

## III.     THERE IS NO BASIS WHATSOEVER FOR CIR DEFENDANTS RULE 11 MOTION FOR SANCTIONS; AND THE COURT SHOULD IMPOSE SANCTIONS AGAINST CIR DEFENDANTS, AND ITS COUNSEL, FOR FILING SUCH A FRIVOLOUS AND BASELESS MOTION PURSUANT TO RULE 11.

### A.     Plaintiff's Claims Are Well Grounded In Fact And Law And Supported By A Substantial Amount Of Evidence As Demonstrated Herein; Counsel For CIR Defendants Is Not The Jury Or The Judge Of Plaintiff's Credibility; There Is No Basis To Impose Sanctions Against Plaintiff Or Her Counsel.

"Rule 11 is not a toy. A lawyer who transgresses the rule abuses the special role
our legal system has entrusted to him." *Draper and Kramer, Inc. v. Baskin–Robbins, Inc.*,
690 F.Supp. 728, 732 (N.D.Ill. 1988). When an attorney violates Rule 11, "he can suffer
severe financial sanctions." *Id.* Moreover, under certain extreme circumstances, serious
misconduct may justify the dismissal of his client's case. See *Marina Mgmt. Serv., Inc.,*

202 F.3d at 325. A Rule 11 violation is therefore "a serious thing, and an accusation of such wrongdoing is equally serious." *Draper and Kramer, Inc*., 690 F.Supp. at 732; *Safe-Strap Co., Inc. v. Koala Corp*., 270 F.Supp.2d 407, 421 (SDNY 2003).

"An unjustly accused attorney who argues a losing position may seek to demonstrate that, although his argument was unsuccessful, his opponents' Rule 11 accusation was frivolous. See *Local 106 v. Homewood Memorial Gardens, Inc*., 838 F.2d 958 (7th Cir.1988). When the accused attorney actually prevails on his underlying position, his effort to turn the tables on his accuser has particular strength. It will be a rare case indeed in which such an attorney cannot successfully show that the accusation lacked a reasonable basis in fact and law." *Draper and Kramer, Inc., supra* at 731.

"Rule 11 forces lawyers to think twice before filing; this mandate applies with equal force when the filing includes a Rule 11 claim. LaSalle's attorneys did not think twice, and they must pay for their error. *Draper and Kramer, Inc., supra* at 731.

Likewise, counsel for CIR did not think twice before filing their Rule 11 claim; and they must pay for their error.

Contrary to counsel for CIR Defendants, in this case, there are only questions of fact as to which reasonable minds may differ.  See CIR Memo., p. 15. CIR Defendants are in possession of a Release bearing a signature with Plaintiff's name, Plaintiff claims that this Release was forged, while CIR claims that it was not.  See CIR Memo., p. 15. CIR Defendants state:

"Plaintiff plainly knows whether she signed that Release, and Plaintiff knows what her own handwriting looks like." CIR Memo., p. 15.

Precisely, Plaintiff knows whether she signed this Release, and Plaintiff knows what her own handwriting looks like.  Plaintiff has adamantly contested that she signed the Release advanced by CIR; and Plaintiff has adamantly contested that the handwriting on the Release is her own.

Plaintiff offered her own Affidavit prior to this lawsuit commencing to establish both of these facts.  CIR disagreed with Plaintiff, and litigation thus became necessary.

During this litigation, Plaintiff has provided CIR Defendants with the following

11

documents, affidavits, and other evidence s set forth herein:

1. Multiple Affidavits from Plaintiff attesting that she did not sign the Release advanced by CIR, and that the parties agreed that Plaintiff's identity would be concealed in her interview;

2. Plaintiff provided CIR Defendants with the Affidavit of Rosalio Reta the main subject of the stories at issue, attesting that his agreement with CIR was that he would participate in the stories on the condition that Plaintiff's identity be concealed and protected – and that Plaintiff's agreement with CIR was that she would participate in the interview on the condition that her identity be concealed (as it had been in the CBC story);

3. Emails and letters from the CBC confirming that Plaintiff's identity was concealed in their story, as well as the actual story itself – Defendant Livesey also acknowledged that he was aware of the CBC story and that Plaintiff's identity was concealed therein (in various emails and letters exchanged with Plaintiff and representatives from CIR, Plaintiff also provided letters and emails from the CBC acknowledging this);

4. Plaintiff provided CIR Defendants with an Expert's Report from Wendy Carlson, a notable and credible handwriting expert, that analyzed Plaintiff's handwriting and signature in comparison to the signature on the Release and opined that the signature on the Release was not Plaintiff's;

5. Plaintiff provided CIR Defendants with the Generation Z story which blocked out Plaintiff's face, and concealed her name (pursuant to the parties agreement) – CIR Defendants never even mentioned this story before or during this litigation, until counsel for Plaintiff brought it to there attention, which means CIR Defendants deliberately concealed this fact for over a year in the hopes that Plaintiff would not discover it, and even when presented with it absurdly claimed that it was not relevant, even though it was from the same interview that is the subject of Plaintiff's claim (and was changed pursuant to the parties agreement) and is clearly the most relevant piece of evidence in this case;

6. In regards to the court documents that CIR Defendants now point to, Plaintiff provided her Affidavit, and the Affidavit of an uninterested party, attesting and explaining that her house was robbed, and her drivers license, social security card, passport, and her children's birth certificates were stolen; and that she did not create these documents or sign them; the uninterested party also explained that he had personally witnessed Plaintiff's signature and handwriting thousands of times, and that the signature on these court documents was not her own; and

7. Also, even a cursory review of the Release offered by CIR Defendants reveals that it is filled with inconsistencies indicative of a forgery – the handwriting on the Release is different in sections, and in different colors, the spelling of Plaintiff's

name is different "Erica" vs. "Eryca" and the name is in different handwriting as well; the date is crossed out at the top of the Release and replaced by a new date; the Release states that Plaintiff is Hispanic, however, Plaintiff is not Hispanic;

Counsel for CIR Defendants now states that "Plaintiff has offered absolutely no evidence, beyond her own self-serving insistence, to plausibly claim that the Release is a forgery." CIR Memo., p. 15.

How much more evidence or investigation could Plaintiff offer to CIR Defendants to support her contention that the Release is a forgery and that the agreement between the parties was that her identity would be concealed and protected?

Counsel for Plaintiff has invested thousands of dollars and dozens of man hours investigating and researching Plaintiff's case. This research and investigation includes: Plaintiff's expert, multiple witnesses (who submitted affidavits) – one of which was the main subject of the stories at issue – Plaintiff herself (in multiple affidavits), and numerous documents with her own handwriting on it, the numerous inconsistencies on the Release (and in the court documents presented by CIR), as well as the CBC story (with Plaintiff's identity concealed) and the Generation Z story (with Plaintiff's identity concealed, which CIR Defendants withheld from Plaintiff). A jury or a mediator may view the foregoing testimony and evidence differently, however, that is for them to decide – it is not for counsel for CIR Defendants to decide, nor is it for the Court or Plaintiff's counsel to decide. [3]

The Advisory Committee Notes for Rule 11 explain that "Rule 11 motions...should

---

[3] Furthermore, the majority of the foregoing documentation and information was gathered by Plaintiff's counsel prior to filing suit, therefore, to contend that Plaintiff's counsel did not conduct a reasonable investigation before filing suit is ridiculous. Moreover, in *Calloway v. Marvel Entertainment Group*, 138 F.R.D. 646 (S.D.N.Y. 1991), *aff'd in relevant part*, 9 F.3d 237 (2d Cir. 1993), the case which CIR Defendants rely on, the plaintiff's counsel relied solely on his client's assertions and failed to conduct a reasonable investigation of the documents' validity. See CIR Memo., p. 16. This is night and day from the instant case. Here, counsel for Plaintiff certainly did **not** only rely on Plaintiff, and instead, conducted its own research and investigation, which included the numerous items listed in 1-7 above.

not be employed...to test the sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." See *Safe-Strap Co., Inc., supra* at 416 (internal citations omitted). In essence, "Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss, a motion for a more definite statement, or a motion for summary judgment." *Id*. "[C]laims that are plainly meritless should be disposed of early in the course of litigation through summary judgment or other pretrial motion[s]...As a general matter, dismissal of a frivolous...case on the merits should be a first option, whereas imposition of sanctions should be a matter of last resort." Hence, a Rule 11 motion for sanctions is not a proper substitute for a motion for summary judgment. See *Safe-Strap Co., Inc., supra* at 416 (internal citations omitted).

Counsel for CIR Defendants must understand that she is not the trier of fact, and that that is the job of the jury. Counsel for CIR Defendants belief that Plaintiff is lying is not sufficient for this case to be dismissed, or for sanctions to be imposed against Plaintiff. If that was the standard then any lawyer representing an adverse party could simply claim that their adversary was lying, and the case would be dismissed. Our legal system is an adversarily one, comprised of well established Rules of Evidence and Civil Procedure, which counsel for CIR Defendants attempts to side-step and disregard. In *Cooter*, the Supreme Court noted that Rule 11 must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, any interpretation must give effect to the Rule's central goal of deterrence. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

CIR Defendants instant Motion – which is 20 pages in length, and filed a day after

Plaintiff's Response to their Motion on the Pleadings was due - is exactly the kind of disingenuous filings that the Supreme Court was concerned about that would spawn satellite litigation, and attempt to chill vigorous advocacy. Counsel for CIR Defendants must be aware that Rule 11 applies equally to them, as the central goal of Rule 11 is to deter frivolous pleadings and motions, such as the instant Motion filed by CIR Defendants, which attempts to usurp the power of the Court and the role of the jury, and establish a new standard of law that renders well established rules of Evidence and Civil Procedure discretionary and obsolete.

In contrast to a Rule 11 Motion, the "mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala*,124 F.3d 298, 305–306 (1st Cir. 1997) (quoting Fed.R.Civ.P. 56(e) advisory committee's note (1963 Amendments); *Safe-Strap Co., Inc., supra* at 419.

Here, recognizing that they would be unsuccessful with a Summary Judgment Motion, CIR Defendants have decided to instead challenge the factual basis of Plaintiff's claims through a Rule 11 Motion for Sanctions, which is not a proper substitute for a motion for summary judgment. See *Safe-Strap Co., Inc., supra* at 416.

**B. CIR Defendants Counsel's Assertion That Plaintiff's Counsel Failed To Undertake A Reasonable Investigation, And That The Claim Asserted Against CIR Defendants Is Frivolous Is Patently Absurd, And The Court Should Sanction Counsel For CIR Defendants Accordingly Pursuant To Rule 11(C)(1)(A).**

Rule 11(c)(1)(A) allows a court, "[i]f warranted,...[to] award to the party prevailing on the motion [for sanctions] the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed.R.Civ.P. 11(c)(1)(A). In short, "the filing of a motion for sanctions is itself subject to the requirements of Rule 11 and can

lead to sanctions." Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments). "Thus, where a party's motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose, a court my find itself in the position of imposing Rule 11 sanctions on the moving party and/or her attorney." *Georgene M. Vairo,* Rule 11 Sanctions: Case Law Perspectives And Preventive Measures § 4.01[c][3][F] (2d ed. Supp.1994). See *Safe-Strap Co., Inc., supra.*

In *Safe-Strap,* this Court also reiterated the well established rule that "[a] party defending a Rule 11 motion need not comply with the separate document and safe harbor provision when counter-requesting sanctions." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir 2001); see also Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments) ("[S]ervice of a cross-motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion."); Georgene M. Vairo, Rule 11 Sanctions § 7.03(d)(1)(C) (Richard G. Johnson ed., 3d ed. forthcoming 2003) ("The safe-harbor provision need not be complied with if a party seeking sanctions is responding to a motion for sanctions.").

As demonstrated by the foregoing, counsel for Plaintiff undertook an exhaustive investigation costing thousands of dollars and dozens of man hours and that consisted of Expert Reports, multiple Affidavits from Plaintiff and uninterested parties, video footage of the actual interview at issue, the inconsistencies of the Release, and of the court documents that CIR relies on, the credibility of Bruce Livesey, etc…(See 1-7 above).

Conversely, counsel for CIR Defendants relies on one document that is suspicious,

and her own personal subjective judgments of Plaintiff.

Moreover, in support of its contention that the Court should also sanction counsel for Plaintiff under Rule 11, counsel for CIR Defendants asserts patently frivolous claims, including: That because Univision was dismissed, there is similarly no legal basis for any of the claims interposed against CIR. [4]

Not only is this claim devoid of any legal or factual basis whatsoever, but it has already been addressed by the Court, and is the subject of a pending motion that CIR Defendants filed before the instant Motion.  For instance, after a lengthy briefing schedule in this case, the Court submitted a lengthy and well reasoned order and opinion that thoroughly explained why Plaintiff could not assert claims against Univision, but why it could assert claims against Defendant CIR. See *Almeciga v. Center for Investigative Reporting, Inc.,* --- F.Supp.3d ----; WL 4931148 (2015); and Plaintiff's Memorandum of Law in Opposition to CIR Defendants Motion for Judgment on the Pleadings (Doc # 59).

Therefore, this Court should sanction CIR Defendants, and its counsel, pursuant to Rule 11(C)(1)(a), including reasonable attorney fees, for bringing a patently frivolous Motion for Sanctions, that is devoid of arguable legal merit or factual support, but which is 20 pages in length, and which counsel for Plaintiff was forced to vigorously defend.

## IV.   CONCLUSION.

---

[4] The Advisory Committee Notes for Rule 11 explain that "Rule 11 motions...should not be employed...to test the sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." In essence, "Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss, a motion for a more definite statement, or a motion for summary judgment." ("[C]laims that are plainly meritless should be disposed of early in the course of litigation through summary judgment or other pretrial motion[s]...As a general matter, dismissal of a frivolous...case on the merits should be a first option, whereas imposition of sanctions should be a matter of last resort.").Hence, a Rule 11 motion for sanctions is not a proper substitute for a motion for summary judgment.  See *Safe-Strap Co., Inc., supra* at 416 (internal citations omitted).

As demonstrated by the foregoing, Plaintiff respectfully submits that CIR Defendants Motion for Sanctions pursuant to Fed.R.C.P. 11 must be denied in its entirety; and pursuant to Fed.R.C.P. 11(C)(1)(a), the Court should sanction CIR Defendants, and their counsel, and award Plaintiff her reasonable attorney fees and costs for having to defend CIR's instant Motion for Sanctions, which lacks a reasonable basis in fact and law.

Dated: September 25, 2015
New York, New York

Respectfully submitted,

**THE LANDAU GROUP, PC**

By:

_____
Kevin A. Landau (pro hac vice admitted)
1221 Ave. of the Americas, 42nd Floor
New York, NY 10020
Phone: 212.537.4025/248.671.0884 (fax)
Email: kevin@thelandaugroup.com
*Counsel for Plaintiff Erica Almeciga*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing papers have been electronically filed with the Clerk of the Court on September 25, 2015. Notice of this filing is sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's ECF System.                    23

Respectfully submitted,

**THE LANDAU GROUP, PC**

By:

_____
Kevin A. Landau
1221 Ave. of the Americas, 42nd Floor

New York, NY 10020
Phone: 212.537.4025/248.671.0884 (fax)
Email: kevin@thelandaugroup.com
*Counsel for Plaintiff Erica Almeciga*